```
                    UNITED STATES DISTRICT COURT          RECEIVED
                    FOR THE DISTRICT OF COLUMBIA
                                                          SEP 2 0 2006
TOOLASPRASHAD,                      :
        Plaintiff,                  :   CIVIL NO. 06-1187-ESH  NANCY MAYER WHITTINGTON, CLERK
                                    :                               U.S. DISTRICT COURT
     v.                             :
                                    :
BUREAU OF PRISONS,                  :
        Defendant                   :
```

PLAINTIFF'S COMBINED AFFIDAVIT, OBJECTIONS TO DEFENDANT'S
MOTION TO DISMISS, DEFENDANT'S STATEMENT OF MATERIAL FACTS
NOT IN GENUINE DISPUTE, AND DEFENDANT'S MEMORANDUM

Plaintiff files this combined affidavit and objections and states:

On September 14, 2006 about 5:15 p.m., after the prison 4:00 p.m. count, plaintiff received the following documents:

1. Defendant's Motion to Dismiss or, In the Alternative For summary Judgment
2. Statement of Material Facts Not in Genuine Dispute
3. Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss or, in the Alternative for summary Judgment
4. Declaration of Kathleen Quigley

Plaintiff will address each of the above referenced documents:

I.

Defendant indicated plaintiff failed to state a claim upon which relief may be granted or for summary judgment. The BOP is not only mistaken with its baseless assertions, but is misplaced with the Rules. That is, plaintiff has clearly presented the facts in his three paragraphs Complaint (Doc # 1).

The BOP cited Fox v. Strickland, 837 F.2d 507, 509 (D.C.Cir. 1988) that if plaintiff fails to respond and address the factual assertions defendant's motion will be accepted as true.

Therefore, plaintiff is challenging the bald assertions by the BOP, as there is absolutely no accountability by the BOP and its guards, as they lie and

cover-up at all levels.[1]

II.

Defendant's statement of material facts must fail and plaintiff is addressing each ¶¶ in order as listed by the BOP.

In ¶ 1 the BOP indicated that plaintiff requested a copy of the psychological report which is incorrect. However, in the fn defendant correctly noted that plaintiff requested a copy of "... the entire file...." BOP guard-Quigley at her Dec ¶ 3 indicated that the BOP Central Office received plaintiff's request on or about April 5, 2006. This being the case a reply to plaintiff's request would due on or about April 19, 2006, or 10 working days in which none was received by plaintiff and the BOP violated the FOIA/PA statutory provision.

In ¶ 2 the BOP indicated plaintiff's request was forwarded to the BOP Northeast Regional Office. Quigley's Dec ¶ 4 indicated that plaintiff's request was forwarded to the Northeast Regional Office on or about April 7, 2006. Even if the request was received by the Central Office on or about April 5, 2006 a response was due April 19, 2006, or assuming as Quigley's date of receiving by the Regional Office on April 7, 2006 a response would still be due April 21, 2006, yet none was received by plaintiff.

In ¶ 3 the BOP is correct that plaintiff's April 19, 2006 letter to the BOP General Counsel **(Doc # 1 at Exhibit 2)**, placed the BOP on notice that their refusal to respond was a denial of complying with the FOIA/PA, and plaintiff noted that the BOP had 20 days from receipt to respond to the Appeal. Since there is no accountability by the BOP and its guards plaintiff received no response to the

---

[1] During plaintiff's almost 21 years of confinement and at 14 of the BOP gulags, plaintiff experienced the open lies, cover-ups, and criminal activities by BOP guards at all levels, as it takes a group of criminals to watch criminals. That said, plaintiff is openly saying that the keepers are worse criminals than what they are keeping, as plaintiff watched how guards covered-up murders of prisoners, stabbing of prisoners, prostitution between guards/prisoners, drugs introduction by guards, forgery/falsification of official documents by guards, and many other activities.

2

appeal. Hence, plaintiff's appeal was received by the BOP on April 28, 2006 **(See, Doc # 1, Exhibit 3)**, and 20 days from April 28, 2006 would be May 18, 2006 and, still, no response was received.

In ¶ 4 the BOP indicated that on June 5, 2006 the Northeast Region sent a request to the Federal Correctional Institution at Fort Dix, New Jersey for responsive records. Although plaintiff specifically noted that the documents/ records under request was located at FCI petersburg, Virginia, **(Doc # 1 at Exhibit 1)**, the Regional OPffice apparently has a problem interpreting the English language as to the location of the documents/records. still, plaintiff received no response from any of the BOP offices. Again, plaintiff's appeal was received by the BOP on April 28, 2006 and a due date for a response was May 18, 2006, but according to Quigley's Dec ¶ 4 indicated not until June 5, 2006 the Northeast Region requested the records from FCI Fort Dix, when in fact the records/documents are located at FCI Petersburg, Virginia. This is tardiness at best and bald excuses.

In ¶ 5 the BOP indicated that plaintiff filed his complaint on June 30, 2006. Plaintiff mailed his complaint to the Court on June 14, 2006.

In ¶ 6 the BOP indicated that by letter dated august 15, 2006, forty-six (46) pages of responsive records were sent to the forensic psychologist identified by plaintiff. Quigley's Dec ¶ 7 indicated that the 46 pages were sent to the expert identified by plaintiff, without any of the documents sent to plaintiff. The BOP in its August 15, 2006 letter **(Exhibit 1)** failed to identify the

documents sent to the expert, thus the Court's inquiry isn't ended.[2]

### III.

Defendant's memorandum of points for summary judgment must fail.  The BOP indicated that because on August 15, 2006, the BOP provided Dr. Hilkey with the requested documents summary judgment should be granted.

The fact of the matter is the defendant failed to comply with the FOIA/PA statutory provisions and this material fact cannot be disputed by the defendant and judgment is in order for plaintiff, as he had to initiate this action to even get an answer from the BOP.

The plaintiff has clearly prove that the BOP failed to copmply with statutory provisions by not timely responding to the request and appeal and only, for the first time, filed any response after initiation of this action and the August 15, 2006 letter.  **(exhibit 1).**  This fact is obvious that the defendant failed to

---

[2]   The expert, Dr. James Hilkey, is retired chief forensic psychologist of FCI Butner, NC, familiar with plaintiff's criminal case and, in fact, examined plaintiff at FCI Fort Dix, NJ, on June 2, 2006, after a long and protracted battle with plaintiff's keepers to approve the visit to aid in plaintiff's parole presentation. After plaintiff threatened legal action the incompetent and abusive criminal keepers approved the visit.  Dr. Hilkey had to conduct an independent report without the responsive records and, still, without the documents contradicted the psychology intern's report conducted at FCI Petersburg.  Hence, the U.S. Parole Commission used the intern's report to deny plaintiff parole although a forensic psychiatrist, Dr. Daniel Schwartz, who personally examined more then one-thousand (1000) murderers contradicted the intern's report.  Plaintiff is attaching a copy of both Dr. schwartz and Dr. Hilkey's reports, two forensic experts, merely so that this Court could see how the BOP performs its statutory duties **(Exhibits 2 and 3, Schwartz and Hilkey** respectively).  Both experts, Dr. Hilkey and Dr. Schwartz, noted that plaintiff suffered from post-traumatic stress disorder (PTSD) from his military service, yet the psychology intern couldn't even come up with this diagnosis. Moreover, plaintiff contends that the psychology intern used plaintiff's criminal conviction as his thrust and fabricated his report because plaintiff challenged the corrupt BOP, as well as the FCI Petersburg and FCI Fort Dix's psychology guards' violation of policies and procedures -- and strong armed plaintiff into submitting to their coercion under duress.  Thus, because the BOP previously deliberately and knowingly fabricated and falsified plaintiff's record he had to sue the BOP.  See, <u>Toolasprashad v. Bureau of Prisons</u>, 286 F.3d 576 (D.C.Cir. 2002).

comply with statutory provisions governing time limits.

The facts in plaintiff's complaint **(Doc # 1)** cannot be disputed as the BOP completely failed to acknowledge plaintiff's request and/or the appeal **(Doc # 1, Exhibits 1, 2 and 3)**.

Genuine dispute exists in this case because the defendant failed to respond, then for the first time in its August 15, 2006 letter indicated that 46-pages of documents has been released to Dr. Hilkey. This fact does not end the Court's inquiry because plaintiff is openly accusing the BOP of withholding documents, ie, plaintiff had provided more than 500 plus documents to the psychology intern of his military service, community service, BOP program completions/memorandums of commendations, etc. Releasing 46 pages of 500 plus documents could hardly end this Court's inquiry as to existence of additional documents.[3] Therefore, the burden lies with the BOP to prove that the documents does not exist. Plaintiff is accusing the BOP of hiding and covering up to protect the psychology intern's credibility of fabricating the report and/or either destroyed the documents and/or not acknowledging that additional documents exists.

There is no doubt that genuine issue of material facts exist because the psychology intern fabricated the report and retried plaintiff's criminal case, which was contradicted by two leading forensic experts (Schwartz and Hilkey). Rather, the intern extracted contents directly from plaintiff's criminal conviction and used it arbitrarily and incorrectly in the report which the one-person parole board used to deny parole -- although contradicted by two leading forensic experts (Hilkey and Schwartz).

---

[3] The 500 plus pages of documents doe snot exist in plaintiff's prison Central File, although provided to the psychology intern. The BOP and its guards are notoriously tardy in the maintenance of maintaining positive documents on prisoners as such of plaintiff who sues the BOP and its guards to expose their corruption.

Defendant did not indicated whether or not additional documents other than the 46-pages exists, rather merely indicated that 46 pages of records had been received in the Regional Office and 46 pages released. again, this does not end the Court's inquiry. What happen to the 500 plus pages of other documents as noted above?

In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness. International Trade Overseas, Inc. v. Agency for International Development, 688 F.Supp. 33, 36 (D.D.C. 1988) (citing Weisberg v. United States Department of Justice, 745 F.2d 1476, 1485 (D.C.Cir. 1984). The agency is required "to make a good faith effort to conduct a search for the requested records, using methods which can reasonable be expected to produce the information requested." Id. (quoting Marrera v. United States Department of Justice, 622 F.Supp. 51, 54 (D.D.C. 1985)). Because the agency is the possessor of the records and is responsible for conducting the search, the Court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C.Cir. 1999) (citing Oglesby v. United States Department of the Army, 920 F.2d 57, 68 (D.C.Cir. 1990); Kowalezyk v. Department of Justice, 73 F.3d 386, 388 (D.C.Cir. 1996); Weisburg v. Department of Justice, 705 F.2d 1344, 1351 (D.C.Cir 1983)). Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search. Id (citing Founding Church of Scientology v. National Security Agency, 610 F.2d 824, 837 (D.C.Cir. 1979)).

The Regional Office merely indicated that 46 pages of documents received and 46 pages reelased, nothing more **(Exhibit 1).** The BOP did not make clear whether or not additional documents exist. So what happens to the 500 plus documents used by the so-called psychology intern to prepare his fabricated report?

6

IV.

Because of this inaccurate and fabricated psychology intern's report plaintiff is still sitting in prison, when two leasing experts contradicted the report in its entirety, one of whom (Hilkey) initially worked on plaintiff's criminal case.

The plaintiff indeed has proved that the BOP psychology intern fabriacted the report, as contradicted by two leading experts: Daniel Schwartz, MD, forensic psychiatrist; and James Hilkey, PhD, forensic psychologist and former chief forensic psychologist of FCI Butner, NC. Plaintiff has proved that the BOP failed to respond to his FOIA/PA request and appeal. Defendant acknowledge 46 pages of documents was released, yet omitted any reference of the approximately 500 pages of documents, as "the entire file" was under request, not the 46 pages, as the other documents are not in plaintiff's central file.

The plaintiff has stated his claims against the BOP upon which relief can be granted and the Court should reject the BOP claim and allow further proceedings to determine the existence of additional documents beyond the 46 pages of released documents, as well as allowing plaintiff to seek his filing fees and reasonable costs. If the Court believes defendant has respond adequately, although the approximately 500 pages of documents was never mentioned by defendant the search is not reasonable, then plaintiff wishes an opportunity so that he may file for reasonable costs.

Pursuant to 28 U.S.C. § 1746, I decelrae under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

*/s/ Latchmie Toolasprashad*

Latchmie Toolasprashad #10975-056
FCI Fort Dix
Building 5803
PO Box 7000
Fort Dix, NJ  08640

Dated:  September 16, 2006

CERTIFICATE OF SERVICE

I hereby certify that a copy of "Plaintiff'sCombined Affidavit, Objections to Defendant's Motion to Dismiss, Defendant's Statement of material Facts Not in Genuine Dispute, and Defendant's Memorandum" has been mailed postage prepaid by depositing same in the U.S. Mail on this the 16th day of September, 2006, addressed as follows:

>    Mariam L. Borum
>    Assistant U.S. Attorney
>    Judiciary Center, Civil Division
>    555 Fourth Street, NW
>    Washington, DC  20530

_____
Latchmie Toolasprashad