UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TOOLASPRASHAD,
    Plaintiff,

v.

BUREAU OF PRISONS,
    Defendant

CIVIL NO. 06-1187-ESH

PLAINTIFF'S COMBINED AFFIDAVIT, OBJECTIONS TO DEFENDANT'S
MOTION TO DISMISS, DEFENDANT'S STATEMENT OF MATERIAL FACTS
NOT IN GENUINE DISPUTE, AND DEFENDANT'S MEMORANDUM

Plaintiff files this combined affidavit and objections and states:

On September 14, 2006 about 5:15 p.m., after the prison 4:00 p.m. count, plaintiff received the following documents:

1. Defendant's Motion to Dismiss or, In the Alternative For summary Judgment
2. Statement of Material Facts Not in Genuine Dispute
3. Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss or, in the Alternative for summary Judgment
4. Declaration of Kathleen Quigley

Plaintiff will address each of the above referenced documents:

I.

Defendant indicated plaintiff failed to state a claim upon which relief may be granted or for summary judgment. The BOP is not only mistaken with its baseless assertions, but is misplaced with the Rules. That is, plaintiff has clearly presented the facts in his three paragraphs Complaint (Doc # 1).

The BOP cited <u>Fox v. Strickland</u>, 837 F.2d 507, 509 (D.C.Cir. 1988) that if plaintiff fails to respond and address the factual assertions defendant's motion will be accepted as true.

Therefore, plaintiff is challenging the bald assertions by the BOP, as there is absolutely no accountability by the BOP and its guards, as they lie and

cover-up at all levels.[1]

## II.

Defendant's statement of material facts must fail and plaintiff is addressing each ¶¶ in order as listed by the BOP.

In ¶ 1 the BOP indicated that plaintiff requested a copy of the psychological report which is incorrect. However, in the fn defendant correctly noted that plaintiff requested a copy of "... the entire file...." BOP guard-Quigley at her Dec ¶ 3 indicated that the BOP Central Office received plaintiff's request on or about April 5, 2006. This being the case a reply to plaintiff's request would due on or about April 19, 2006, or 10 working days in which none was received by plaintiff and the BOP violated the FOIA/PA statutory provision.

In ¶ 2 the BOP indicated plaintiff's request was forwarded to the BOP Northeast Regional Office. Quigley's Dec ¶ 4 indicated that plaintiff's request was forwarded to the Northeast Regional Office on or about April 7, 2006. Even if the request was received by the Central Office on or about April 5, 2006 a response was due April 19, 2006, or assuming as Quigley's date of receiving by the Regional Office on April 7, 2006 a response would still be due April 21, 2006, yet none was received by plaintiff.

In ¶ 3 the BOP is correct that plaintiff's April 19, 2006 letter to the BOP General Counsel **(Doc # 1 at Exhibit 2)**, placed the BOP on notice that their refusal to respond was a denial of complying with the FOIA/PA, and plaintiff noted that the BOP had 20 days from receipt to respond to the Appeal. Since there is no accountability by the BOP and its guards plaintiff received no response to the

---

[1] During plaintiff's almost 21 years of confinement and at 14 of the BOP gulags, plaintiff experienced the open lies, cover-ups, and criminal activities by BOP guards at all levels, as it takes a group of criminals to watch criminals. That said, plaintiff is openly saying that the keepers are worse criminals than what they are keeping, as plaintiff watched how guards covered-up murders of prisoners, stabbing of prisoners, prostitution between guards/prisoners, drugs introduction by guards, forgery/falsification of official documents by guards, and many other activities.

appeal. Hence, plaintiff's appeal was received by the BOP on April 28, 2006 **(See, Doc # 1, Exhibit 3)**, and 20 days from April 28, 2006 would be May 18, 2006 and, still, no response was received.

In ¶ 4 the BOP indicated that on June 5, 2006 the Northeast Region sent a request to the Federal Correctional Institution at Fort Dix, New Jersey for responsive records. Although plaintiff specifically noted that the documents/records under request was located at FCI petersburg, Virginia, **(Doc # 1 at Exhibit 1)**, the Regional OPffice apparently has a problem interpreting the English language as to the location of the documents/records. still, plaintiff received no response from any of the BOP offices. Again, plaintiff's appeal was received by the BOP on April 28, 2006 and a due date for a response was May 18, 2006, but according to Quigley's Dec ¶ 4 indicated not until June 5, 2006 the Northeast Region requested the records from FCI Fort Dix, when in fact the records/documents are located at FCI Petersburg, Virginia. This is tardiness at best and bald excuses.

In ¶ 5 the BOP indicated that plaintiff filed his complaint on June 30, 2006. Plaintiff mailed his complaint to the Court on June 14, 2006.

In ¶ 6 the BOP indicated that by letter dated august 15, 2006, forty-six (46) pages of responsive records were sent to the forensic psychologist identified by plaintiff. Quigley's Dec ¶ 7 indicated that the 46 pages were sent to the expert identified by plaintiff, without any of the documents sent to plaintiff. The BOP in its August 15, 2006 letter **(Exhibit 1)** failed to identify the

3                                                3

documents sent to the expert, thus the Court's inquiry isn't ended.[2]

### III.

Defendant's memorandum of points for summary judgment must fail. The BOP indicated that because on August 15, 2006, the BOP provided Dr. Hilkey with the requested documents summary judgment should be granted.

The fact of the matter is the defendant failed to comply with the FOIA/PA statutory provisions and this material fact cannot be disputed by the defendant and judgment is in order for plaintiff, as he had to initiate this action to even get an answer from the BOP.

The plaintiff has clearly prove that the BOP failed to copmply with statutory provisions by not timely responding to the request and appeal and only, for the first time, filed any response after initiation of this action and the August 15, 2006 letter. **(exhibit 1).** This fact is obvious that the defendant failed to

---

[2]    The expert, Dr. James Hilkey, is retired chief forensic psychologist of FCI Butner, NC, familiar with plaintiff's criminal case and, in fact, examined plaintiff at FCI Fort Dix, NJ, on June 2, 2006, after a long and protracted battle with plaintiff's keepers to approve the visit to aid in plaintiff's parole presentation. After plaintiff threatened legal action the incompetent and abusive criminal keepers approved the visit. Dr. Hilkey had to conduct an independent report without the responsive records and, still, without the documents contradicted the psychology intern's report conducted at FCI Petersburg. Hence, the U.S. Parole Commission used the intern's report to deny plaintiff parole although a forensic psychiatrist, Dr. Daniel Schwartz, who personally examined more then one-thousand (1000) murderers contradicted the intern's report. Plaintiff is attaching a copy of both Dr. schwartz and Dr. Hilkey's reports, two forensic experts, merely so that this Court could see how the BOP performs its statutory duties **(Exhibits 2 and 3, Schwartz and Hilkey** respectively). Both experts, Dr. Hilkey and Dr. Schwartz, noted that plaintiff suffered from post-traumatic stress disorder (PTSD) from his military service, yet the psychology intern couldn't even come up with this diagnosis. Moreover, plaintiff contends that the psychology intern used plaintiff's criminal conviction as his thrust and fabricated his report because plaintiff challenged the corrupt BOP, as well as the FCI Petersburg and FCI Fort Dix's psychology guards' violation of policies and procedures -- and strong armed plaintiff into submitting to their coercion under duress. Thus, because the BOP previously deliberately and knowingly fabricated and falsified plaintiff's record he had to sue the BOP. See, <u>Toolasprashad v. Bureau of Prisons</u>, 286 F.3d 576 (D.C.Cir. 2002).

comply with statutory provisions governing time limits.

The facts in plaintiff's complaint **(Doc # 1)** cannot be disputed as the BOP completely failed to acknowledge plaintiff's request and/or the appeal **(Doc # 1, Exhibits 1, 2 and 3)**.

Genuine dispute exists in this case because the defendant failed to respond, then for the first time in its August 15, 2006 letter indicated that 46-pages of documents has been released to Dr. Hilkey. This fact does not end the Court's inquiry because plaintiff is openly accusing the BOP of withholding documents, ie, plaintiff had provided more than 500 plus documents to the psychology intern of his military service, community service, BOP program completions/memorandums of commendations, etc. Releasing 46 pages of 500 plus documents could hardly end this Court's inquiry as to existence of additional documents.[3] Therefore, the burden lies with the BOP to prove that the documents does not exist. Plaintiff is accusing the BOP of hiding and covering up to protect the psychology intern's credibility of fabricating the report and/or either destroyed the documents and/or not acknowledging that additional documents exists.

There is no doubt that genuine issue of material facts exist because the psychology intern fabricated the report and retried plaintiff's criminal case, which was contradicted by two leading forensic experts (Schwartz and Hilkey). Rather, the intern extracted contents directly from plaintiff's criminal conviction and used it arbitrarily and incorrectly in the report which the one-person parole board used to deny parole -- although contradicted by two leading forensic experts (Hilkey and Schwartz).

---

[3]   The 500 plus pages of documents doe snot exist in plaintiff's prison Central File, although provided to the psychology intern. The BOP and its guards are notoriously tardy in the maintenance of maintaining positive documents on prisoners as such of plaintiff who sues the BOP and its guards to expose their corruption.

Defendant did not indicated whether or not additional documents other than the 46-pages exists, rather merely indicated that 46 pages of records had been received in the Regional Office and 46 pages released. again, this does not end the Court's inquiry. What happen to the 500 plus pages of other documents as noted above?

In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness. International Trade Overseas, Inc. v. Agency for International Development, 688 F.Supp. 33, 36 (D.D.C. 1988) (citing Weisberg v. United States Department of Justice, 745 F.2d 1476, 1485 (D.C.Cir. 1984). The agency is required "to make a good faith effort to conduct a search for the requested records, using methods which can reasonable be expected to produce the information requested." Id. (quoting Marrera v. United States Department of Justice, 622 F.Supp. 51, 54 (D.D.C. 1985)). Because the agency is the possessor of the records and is responsible for conducting the search, the Court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C.Cir. 1999) (citing Oglesby v. United States Department of the Army, 920 F.2d 57, 68 (D.C.Cir. 1990); Kowalezyk v. Department of Justice, 73 F.3d 386, 388 (D.C.Cir. 1996); Weisburg v. Department of Justice, 705 F.2d 1344, 1351 (D.C.Cir 1983)). Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search. Id (citing Founding Church of Scientology v. National Security Agency, 610 F.2d 824, 837 (D.C.Cir. 1979)).

The Regional Office merely indicated that 46 pages of documents received and 46 pages reelased, nothing more **(Exhibit 1)**. The BOP did not make clear whether or not additional documents exist. So what happens to the 500 plus documents used by the so-called psychology intern to prepare his fabricated report?

6

IV.

Because of this inaccurate and fabricated psychology intern's report plaintiff is still sitting in prison, when two leasing experts contradicted the report in its entirety, one of whom (Hilkey) initially worked on plaintiff's criminal case.

The plaintiff indeed has proved that the BOP psychology intern fabriacted the report, as contradicted by two leading experts: Daniel Schwartz, MD, forensic psychiatrist; and James Hilkey, PhD, forensic psychologist and former chief forensic psychologist of FCI Butner, NC. Plaintiff has proved that the BOP failed to respond to his FOIA/PA request and appeal. Defendant acknowledge 46 pages of documents was released, yet omitted any reference of the approximately 500 pages of documents, as "the entire file" was under request, not the 46 pages, as the other documents are not in plaintiff's central file.

The plaintiff has stated his claims against the BOP upon which relief can be granted and the Court should reject the BOP claim and allow further proceedings to determine the existence of additional documents beyond the 46 pages of released documents, as well as allowing plaintiff to seek his filing fees and reasonable costs. If the Court believes defendant has respond adequately, although the approximately 500 pages of documents was never mentioned by defendant the search is not reasonable, then plaintiff wishes an opportunity so that he may file for reasonable costs.

Pursuant to 28 U.S.C. § 1746, I decelrae under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

*[signature]*

Latchmie Toolasprashad #10975-056
FCI Fort Dix
Building 5803
PO Box 7000
Fort Dix, NJ  08640

Dated:   September 16, 2006

7

CERTIFICATE OF SERVICE

I hereby certify that a copy of "Plaintiff'sCombined Affidavit, Objections to Defendant's Motion to Dismiss, Defendant's Statement of material Facts Not in Genuine Dispute, and Defendant's Memorandum" has been mailed postage prepaid by depositing same in the U.S. Mail on this the 16th day of September, 2006, addressed as follows:

>Mariam L. Borum
>Assistant U.S. Attorney
>Judiciary Center, Civil Division
>555 Fourth Street, NW
>Washington, DC 20530

Latchmie Toolasprashad



U.S. Department of Justice

Federal Bureau of Prisons

*Northeast Regional Office*

---

*U.S. Custom House-7th Floor*
*2nd & Chestnut Streets*
*Philadelphia, PA. 19106*

August 15, 2006

James Hilkey, Forensic Psychologist
3326 Durham Chapel Hill Boulevard
Suite B-121
Durham, North Carolina 27707

RE: Freedom of Information Request No. 2006-06400
    Latchmie Narayan Toolasprashad, Reg. No. 10975-056

Dear Mr. Hilkey:

This is in response to a request received by federal inmate Latchmie Narayan Toolasprashad, Reg. No. 10985-056. He asks that a copy of his psychology records maintained by the Federal Bureau of Prisons be forwarded to you.

Forty-six (46) pages of records were received in this office for a release determination. Upon review, it has been determined these 46 pages are disclosable to you in their entirety and are enclosed herein.

I trust that this has been responsive to your request.

Sincerely,

Henry J. Sadowski
Regional Counsel

cc: Latchmie Narayan Toolasprashad, Reg. No. 10975-056

Enclosure: 46 pages

Exhibit 1

# DANIEL W. SCHWARTZ, M.D., L.F.A.P.A.

DIPLOMATE, AMERICAN BOARD OF
FORENSIC PSYCHIATRY

949 CENTRAL AVENUE, SUITE 205
WOODMERE, NEW YORK 11598
(516) 295-2779

July 25, 2001

Todd D. Greenberg, Esq.
Addabbo & Greenberg
118-21 Queens Blvd., Suite 306
Forest Hills, NY 11375

Re: LATCHMIE TOOLASPRASHAD
No. 10975-056

Dear Mr. Greenberg:

At your request I have performed a psychiatric examination on this 37-year-old man to evaluate his emotional suitability for being released on parole.

He has been convicted of Aiding and Abetting in Murder, in that he arranged for the shotgun murder of SP4 Beverly Ann Dozier at Ft. Bragg on December 15, 1985. After pleading guilty, he was sentenced to 30 years to life and is currently being considered for parole.

Mr. Toolasprashad was examined on July 20, 2001 at Ft. Dix for a total of 4 hours. In addition, I conferred at length with his older brother, Surg.

I have also studied various case material, including:

1. Psychiatric report of Dr. Daly (Fayetteville, NC), dated 3/5/86
2. Psychiatric and psychological report of Drs. O'Brien and Hilkey (FCI Butner), dated 4/29/86
3. Psychological report of Dr. Echols (FMC Rochester), dated 10/17/86
4. Psychological report of Dr. Berry (Petersburg, VA), dated July, 2000, and
5. Various documents, including positive reports by his supervisors and counselors, and FCI Progress Reports, dated 5/6/2000 & 6/1/01

**SIGNIFICANT PAST HISTORY:** Mr. Toolasprashad was born on September 7, 1963 in Guyana, South America and raised in an intact family. He is one of six children, with two brothers and three sisters, all of whom live in reasonable proximity and are emotionally close. The entire family immigrated in May 1979. His parents, in their 60's, are not well physically, and currently reside with one of his brothers.

Exhibit 2

LATCHMIE TOOLASPRASHAD                                July 25, 2001

In 1981, about three months after graduating high school, Mr. Toolasprashad enlisted in the Army, feeling that he owed something to this country and hoping for an education towards a career. To this end, he served as a combat medical specialist. Eager to enter the Uniformed Service School of Health Services following his discharge from service, he applied for citizenship but missed the scheduled naturalization date because he was in the field.

In 1983 he saw action in Grenada, caring for the wounded amidst the death of 19 American soldiers. He has a particularly vivid memory of seeing the body of an infantryman who had been cut to pieces in a helicopter crash. The next year he reenlisted and was involved in covert action in Central America, an experience that he describes as "very scary." In March 1985, a fiery helicopter crash at Ft. Bragg took the lives of all 11 men; almost all the bodies were severely burned, and the two pilots had been very close friends of his.

Mr. Toolasprashad may well have suffered a Posttraumatic Stress Disorder, feeling "torn to pieces" at the time and experiencing subsequent nightmares of this aircraft and the bodies burning. Reportedly, the Army psychiatrist from whom he sought help dismissed him, telling him that he should be able to handle it himself.

At the time he was still seeing Beverly. She, however, was also of no emotional help, looking up to him as a strong leader and insisting that he could cope with the stress. "She never gave me the comfort and reassurance I needed." Soon enough he terminated the relationship. Reportedly, it was the fury of a woman scorned that led to his premature honorable discharge from the service shortly before the present offense.

**MENTAL STATUS:** On examination Mr. Toolasprashad shows no indication of psychosis or even mental illness. He is fully alert and quite cooperative. He is a good historian, with no evidence of organic mental illness. His statements are always responsive, coherent and relevant, with no suggestion of delusions, hallucinations or otherwise disordered thinking. He is initially resentful of the fact that it has taken ten months for this examination to be allowed, but once he has ventilated such understandable feelings his mood is best described as neutral. His display of feelings is of normal intensity and always appropriate.

In regard to the present offense, he makes it perfectly clear that he feels responsible for what happened. No discussion of the facts leading up to the crime relieves him of any responsibility.

**DIAGNOSIS:**   No Mental Illness
                 No Personality Disorder
                 No Physical Disorder



LATCHMIE TOOLASPRASHAD                                    July 25, 2001


**RECOMMENDATION:** It is respectfully recommended to the Court that, from a psychiatric point of view, it would be most appropriate to release Mr. Toolasprashad on parole.


**DISCUSSION:** For over 26 years I was the director of a forensic psychiatry service that examined thousands of criminal defendants a year. As such I myself have probably seen over a thousand murderers, and have necessarily had to pass judgment as to their dangerousness. I have often rendered pre-sentence recommendations, and have also examined many psychiatric patients who have been found not responsible because of mental illness (NGRI) as to possible release; in both cases, the most important question is their dangerousness.

There is nothing in my examination (or that of Dr. Berry's a year ago) that suggests any risk to the community. There are no paranoid, grandiose or vengeful thoughts or feelings. What happened in this case was between two people, and there is no indication that Mr. Toolasprashad represents a danger to anyone else on Earth.

(With all due respect to Dr. Berry's diagnosis of Narcissistic Personality Disorder, the findings he reports on the psychological tests he administered do not seem consistent with a *personality disorder.* Such a problem, by definition, "leads to clinically significant distress or impairment in social, occupational, or other important areas of functioning," [Diagnostic and Statistical Manual — Fourth Edition, p. 633.] and the prison records show just the opposite. Dr. Berry himself writes that Mr. Toolasprashad's test performance "is not suggestive of any form of significant psychological impairment" [p. 4]).

Beyond my examination is the record of Mr. Toolasprashad's behavior, both before and subsequent to the present offense. As far as we know, there has never been another act of violence, or even a threat of violence. Most experts in forensic psychiatry consider one's history, or absence, of violent behavior as the best basis for predicting the future — and here his past performance is exemplary. He has been repeatedly noted to have made "outstanding progress" in the Federal Bureau of Prisons, to have maintained "an above-average rapport" with the staff, and to have been no management problem.

Nor is there any indication that psychiatric treatment or psychotherapy need be a condition of parole. If Mr. Toolasprashad is released from prison, he will probably be deported because of lack of citizenship. In that case, his brother, a bachelor, informs me that he will return to Guyana with him, to spare him the anguish of being completely separated from his entire family. Otherwise, if he is allowed to remain in this country, he can live with his brother and their parents, and one of his brothers-in-law, a physician, will provide employment.

3



LATCHMIE TOOLASPRASHAD                                     July 25, 2001

In conclusion, there is every indication that if Mr. Toolasprashad is released, he will be a law-abiding, safe and productive member of the community.

Sincerely yours,

*Daniel W. Schwartz*

DANIEL W. SCHWARTZ, M.D.
Assoc. Professor (Ret.), Psychiatry
   State University of New York
   Health Science Center at Brooklyn
Director (Ret.), Forensic Psychiatry
   Kings County Hospital Center

# JAMES H. HILKEY, Ph.D.
Licensed Practicing Psychologist
3326 Durham-Chapel Hill Blvd. Suite B-121
Durham, North Carolina, 27707
Ph. (919) 493-1110 – Fax (919) 932-1734

---

PSYCHOLOGICAL EVALUATION

CLIENT:                Latchmie Narayan Toolasprashad
REGISTRATION NUMBER:   10975-056
DATE OF BIRTH:         September 7, 1963
DATE OF REPORT:        June 3, 2006

    Latchmie Toolasprashad was referred for psychological evaluation by his attorney Susan James. The purpose of this evaluation is to assess his psychological suitability for release on parole. This is actually a reevaluation of Mr. Toolasprashad as I initially completed a forensic psychological in March 1986, in my capacity of as the Chief, Psychological Services at the Federal Correctional Institution, Butner, North Carolina. I retired from Federal service in May 1996, and completed this evaluation as an independent examiner; a current copy of my curriculum vita is attached to this report. At that time of commitment to the Federal Correctional Institution at Butner, North Carolina, in 1986, Mr. Toolashprahad was also examined by forensic staff psychiatrist Dennis O'Brien, M.D. It was our mutual opinion that Mr. Toolasprashad suffered from significant mental illness, was considered incapable to proceeding to trial, and was treated with psychotropic medications. There was some questions as to the exact diagnostic impressions at that time; however, it was clear Mr. Toolashprahad exhibited psychotic symptoms, was depressed with suicidal ideation and a suicide attempt, displayed symptoms consistent with the diagnosis of Posttraumatic Stress Disorder from events experienced while serving in the United States Army. Both Dr. O'Brien and I questioned whether Mr. Toolasprashad was exhibiting early signs of a schizophrenic disorder as reflected in our 1986 report. Following a second evaluation and additional treatment at the Federal Medical Center in Rochester, Minnesota Mr. Toolashprashad entered a guilty plea before the Honorable Terrance Boyle in the Eastern District of North Carolina, on January 20, 1987. Mr. Toolashprashad is scheduled for review by the United States Parole Commission on June 4, 2006.

    Mr. Toolashprashad was reexamined on June 2, 2006, at the Federal Correctional Institution, Fort Dix, New Jersey. Over the course of approximately four hours of examination, Mr. Toolashprashad was given a mental status examination, completed the *Millon Clinical Multiaxial Personality Inventory, Third Edition,* and was interviewed. I also had a chance to review a number of documents and conduct several phone interviews with staff members familiar

Exhibit 3

Latchmie N. Toolashprashad
Psychological Evaluation
Page Two

with Mr. Toolashprashad's institutional adjustment. The documents reviewed included prior mental health evaluations, Federal Bureau of Prison accomplishments and institutional adjustment records, and his most recent progress report completed by Case Manager Robert Ferretti. I also reviewed a Notice of Action on Appeal from the United States Parole Commission at August 23, 2004.

Mr. Toolashprashad presented as a neatly groomed and fully oriented individual. He seemed genuinely pleased to see me, grateful I had agreed to examine him, and was friendly and cooperative. He provided a detailed account of his activities and accomplishments since our last meeting some twenty years ago. Mr. Toolashprashad voiced some frustrations over some of the events he had experienced; however, he was able to acknowledge positive interactions and benefits he had received. His comments were appropriate and without delusional content. Mr. Toolashprashad was unabashedly proud of his accomplishments which contributed to an air of self-confidence. Although I had not seen Mr. Toolashprashad for some time some of his personality characteristics remained constant over time. In particular, he remained obsessive in his thoughts and compulsive in many of his behaviors. Because he is not particularly flexible in his thinking he tends to view things in concrete terms or as issue of either "black or white." I suspect this analytical thinking process may contribute to some interpersonal difficulties and occasional conflicts with those in authority; this should not be viewed as characteristics of malignant narcissism or of an Antisocial Personality Disorders. As evidenced in both the materials he forwarded for my review and in his conversations, Mr. Toolasprashad has devoted a great deal of time in legal research regarding his case. Despite the time invested in these activities, he continues to be extremely active in institutional programming and has earned high regard for his work performance by those staff who has supervised him. There is ample evidence of these accomplishments referenced in his progress report and by letters of commendation. Mr. Toolashprashad, although not clinically paranoid, he is highly focused and ever vigilant to rules and it is probable the attention devoted to this order diverts his attention from experiencing underlying feelings of anxiety, tension, and some depression. It is difficult for Mr. Toolashprashad to deal with the affective or feeling side of his personality which contributes to his perception as an individual who is much more attuned "how things should be" rather than exhibit sensitivity to the emotional aspects of his personality. Despite these observations Mr. Toolashprashad does readily acknowledge and is deeply appreciative of the sacrifices his family had made in their continued support of him and fully recognizes that his behaviors contributed to the death of Beverly Dozier.

The psychiatric symptoms present during my initial evaluation of Mr. Toolashprahad have largely resolved. There are no evidences of psychosis present at the time of his evaluation in 1987. I would take exception with the statement in paragraph one, page two of the Parole Commission Notice of Action Report dated August 23, 2004, that Mr. Toolashprashad, "feigned mental incompetency." Although the initial concerns that Mr. Toolashprashad may be suffering from a schizophrenic disorder have not been supported the psychotic symptoms observed were genuine and were consistent with the diagnoses of a Posttraumatic Stress Disorder and a Major Depressive Disorder. This opinion was supported by two independent mental health professional (Hilkey and O'Brien) and reviewed by a panel of other mental health professionals during the initial assessment at FCI Butner. There are no overt signs of a Major Depressive Disorder evident during the recent examination. Mr. Toolasprashad's affect was appropriate to situation. Both suicidal and homicidal ideations were denied.

Latchmie N. Toolashprashad
Psychological Evaluation
Page Three

Prior evaluations have referenced an Antisocial Personality Diagnosis. Again, Mr. Toolashprashad does not meet the criteria established for this diagnosis at this current time nor at the time of prior assessments; he has no history of conduct disorder as a child or adolescent required for this diagnosis. Mr. Toolashprashad has the capacity for sensitivity for the needs and feelings of others. Furthermore, his behavior while in prison and prior to the offense behavior has not included violent or aggressive behavior; he has the capacity for empathy as evidenced in his repeated concerns for the memory of the victim of this crime and his immediate family. The results of objective personality testing recently administered do not support an Antisocial Personality Disorder diagnosis.

Mr. Toolashprashad does exhibit some symptoms of a lingering Posttraumatic Stress Disorder as manifested in recurrent troubling dreams from past service related incidents. These impressions are confirmed by objective psychological testing. It should also be noted that IQ scores recorded by prior evaluation are not accurate reflections of Mr. Toolashprahad's cognitive abilities. He is clearly functioning in a range above an average range of intelligence and is not consistent with reported IQ scores in the Low Average range as reported in the psychological evaluation author by psychology intern Berry at FCI Petersburg.

Based on impressions obtained from this most recent examination of Mr. Toolashprashad I find no reasons to suggest that he would pose a future active or passive risk to others and in my opinion is a suitable candidate for release. Based on this current examination I find that Mr. Toolashprashad fits the Axis I criteria for Posttraumatic Stress Disorder, in partial remission, and an Axis II impression of Obsessive Compulsive Disorder. These impressions are based on the most recent clinical interview and from result of psychological testing. As indicated in Mr. Toolashprahad's progress report, his release plans are unclear and complicated by his immigration status. I trust these findings are useful and I can be available to answer specific questions should they arise.

James H. Hilkey, Ph.D.
Licensed Psychologist

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TOOLASPRASHAD,
    Plaintiff,

v.

BUREAU OF PRISONS,
    Defendant

CIVIL NO. 06-1187-ESH

ORDER

Upon consideration of defendant's motion to dismiss and plaintiff's combined affidavit and objections in opposition to defendant's motion to dismiss, it is

ORDERED that defendant's motion to dismiss is DENIED; and it is

FURTHER ORDERED that defendant shall file within 30 days from date of this order a responsive motion to plaintiff's assertions about the adequacy of the search and withholding of approximately 500 plus pages of documents that was turned over to the psychology intern, and specifically describe the search methods, files searched and records located pursuant to <u>Vaugh v. Rosen</u>, 484 F.2d 820, 826 (D.C.Cir 1973); and it is

FURTHER ORDERED that the plaintiff will get an opportunity to seek reasonable costs within 30 days upon resolution of this action.


This the _____ day of _____, 2006.


                                                      HONORABLE ELLEN S. HUVELLE
                                                    UNITED STATES DISTRICT JUDGE