# EXHIBIT 1

The following records have been requested under the Freedom of Information/Privacy Act.

**Latchmle Narayan Toolasprashad, Reg. No. 10975-056;** "Between June 23, 2000 and July 11, 2000, a psychological report was prepared at FCI Petersburg regarding inmate Toolasprashad for the U.S. Parole Commission. The inmate is requesting a copy of this report as well as the entire psychological file.

***If the materials requested are over two inches thick or require more than two hours to locate, please contact me before processing this request.***

If you have any questions regarding this FOIA Request, please feel free to contact me at: 215-521-7380.

Kathy Quigley
Paralegal Trainee
Northeast Regional Office
U.S. Custom House, 7th Floor
2nd & Chestnut Streets
Philadelphia, PA 19106

# EXHIBIT 2

Here's ALL the data from the Psychology Data System (PDS). I don't see an entry that matches you below criteria....

Thanks! Jeff Hibbs 202-514-3105

>>> Kathleen G. Quigley 6/5/2006 9:19:20 AM >>>
Hi Jeff,

The following records have been requested under the Freedom of Information/Privacy Act.

**Latchmie Narayan Toolasprashad, Reg. No. 10975-056;** "Between June 23, 2000 and July 11, 2000, a psychological report was prepared at FCI Petersburg regarding inmate Toolasprashad for the U.S. Parole Commission. The inmate is requesting a copy of this report as well as the entire psychological file.

***If the materials requested are over two inches thick or require more than two hours to locate, please contact me before processing this request.***

If you have any questions regarding this FOIA Request, please feel free to contact me at: 215-521-7380.

Kathy Quigley
Paralegal Trainee
Northeast Regional Office
U.S. Custom House, 7th Floor
2nd & Chestnut Streets
Philadelphia, PA 19106

**EXHIBIT 3**

Can you have someone check inmate Toolasprashad's Central File and Medical File - Trying to locate the following document;

**"Between June 23, 2000 and July 11, 2000, a psychological report was prepared at FCI Petersburg regarding inmate Toolasprashad for the U.S. Parole Commission."**

This document could not be found in his psychology records.

Thanks.
Kathy

**EXHIBIT 4**



# The Largest Federal Correctional Institution
### Fax:(609) 723-6847
### Phone:(609) 723-1100

**Executive Staff**
Charles E. Samuels Jr., Warden                                    Ext. 100
Carla Wilson, Executive Assistant/Camp Administrator             Ext. 104
Jacqueline Nichols, Associate Warden (Operations)                Ext. 108
Robert L. Farley, Associate Warden (Custody)                     Ext. 106
Claude Maye, Associate Warden (Programs)                         Ext. 103
David Huerta, Associate Warden (I&E)                             Ext. 107

Date: _7-26-06_

To: _Kathy Quigley_

From: _Ava Ward_

No. of Pages:

(Includes This Page)

Message: _Too los praghed_

This transmission from the Bureau of Prisons is intended only for the use of the person or entity listed on this transmittal cover sheet and may contain privileged and sensitive information. If you are not an intended recipient of this facsimile, the DISSEMINATION, DISTRIBUTION, COPYING, or USE of the information it contains is prohibited. If this transmission has been sent or directed to you in error, please call the sender IMMEDIATELY at (609) 723-1100, to arrange for its return.

SENSITIVE - "Limited Official Use"

## "We Help Each Other Succeed"

# EXHIBIT 5

August 15, 2006

James Hilkey, Forensic Psychologist
3326 Durham Chapel Hill Boulevard
Suite B-121
Durham, North Carolina 27707

RE:  Freedom of Information Request No. 2006-06400
     Latchmie Narayan Toolasprashad, Reg. No. 10975-056

Dear Mr. Hilkey:

This is in response to a request received by federal inmate
Latchmie Narayan Toolasprashad, Reg. No. 10985-056.  He asks that
a copy of his psychology records maintained by the Federal Bureau
of Prisons be forwarded to you.

Forty-six (46)pages of records were received in this office for a
release determination.  Upon review, it has been determined
these 46 pages are disclosable to you in their entirety and are
enclosed herein.

I trust that this has been responsive to your request.

Sincerely,

Henry J. Sadowski
Regional Counsel

cc:  Latchmie Narayan Toolasprashad, Reg. No. 10975-056

Enclosure: 46 pages

# EXHIBIT 6

# Change Notice

DIRECTIVE BEING CHANGED: 5800.11
CHANGE NOTICE NUMBER: 01
DATE: 12/31/97

1. <u>PURPOSE AND SCOPE</u>. This Change Notice incorporates an Executive Staff decision and amends the filing requirements for documents to be contained in the Inmate Central File.

2. <u>SUMMARY OF CHANGES</u>. The September 1997 Executive Staff meeting approved the maintenance of inmate cenral files at High security level facilities in either a centralized location or within the functional unit with Regional Director approval.

The Central Inmate Monitoring White Card has been reinserted as a document to be filed in Section One of the Inmate Central File. The "White Card" is also a core document that is to be included in the establishment of a second volume of an inmate's central file.

The filing requirement for an inmate's telephone list has also been clarified.

3. <u>TABLE OF CHANGES</u>

| <u>Remove</u> | <u>Insert</u> |
|---|---|
| Pages 5 - 8 | Pages 5 - 8 |
| Pages 15 - 16 | Pages 15 - 16 |

4. <u>ACTION</u>. File this Change Notice in front of PS 5800.11, Inmate Central File, Privacy Folder, and Parole Mini-Files.

/s/
Kathleen M. Hawk
Director

# Program Statement

Case 1:06-cv-01187-ESH    Document 20-81    Filed 12/13/2006    Page 13 of 40

OPI: CPD
NUMBER: 5800.11
DATE: September 8, 1997
SUBJECT: Inmate Central File, Privacy Folder, and Parole Mini-Files

1. <u>PURPOSE AND SCOPE</u>.  The Bureau of Prisons maintains complete information on all inmates confined in Bureau institutions. Staff use the Inmate Central File, Privacy Folder, and Parole Mini-file to maintain pertinent information regarding a detainee, unsentenced and sentenced offenders.

The Bureau of Prisons has had numerous policy sources on all facets of the Inmate Central File System.  This Program Statement consolidates many of these sources for easier reference.  This issuance sets forth guidelines in the following areas:

a.  Inmate Record Functions,
b.  Inmate Central Files,
c.  Standardization of Inmate Central File Material,
d.  Maintenance, Security, and Access Responsibilities and Procedures,
e.  Routine Uses of Inmate Central File,
f.  Disclosure of Inmate Central File Materials,
g.  Inmate Review of Inmate Central File,
h.  Documentation of Oral Disclosure,
i.  Transfer of Records Between Bureau Facilities,
j.  Requests for Forwarding of Inmate Files,
k.  Retirement of Inmate Central File, and
l.  Parole Mini-files.
m.  Pretrial Inmate File Material/Immigration & Naturalization Service (INS) Detainees

2.  <u>PROGRAM OBJECTIVES</u>.  The expected results of this program are:

a.  Inmate files will be maintained with complete information on each inmate confined in a Bureau of Prisons institution.

b.  U.S. Parole Mini-Files will be completed and accessible to the U.S. Parole Commission for all inmates specified in this Program Statement.

b.  **Directives Referenced**

|   |   |
|---|---|
| PS 1330.13 | Administrative Remedy Program (12/22/95) |
| PS 1351.04 | Release of Information (12/5/96) |
| PS 5100.06 | Security Designation and Custody Classification Manual (6/7/96) |
| PS 5180.04 | Central Inmate Monitoring System (8/16/96) |
| PS 5310.12 | Psychology Services Manual (8/30/93) |
| PS 5321.06 | Unit Management (7/31/96) |
| PS 5800.07 | Inmate Systems Management Manual (12/24/91) |
| PS 7331.03 | Pretrial Inmates (11/22/94) |
| | |
| TRM 5802.01 | SENTRY General Use Technical Reference Manual (06/01/94) |

Federal Register, Volume 41, Number 181 (9/16/76)

4.  **STANDARDS REFERENCED**

a.  American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4092, 3-4093, 3-4095,3-4096, 3-4233, 3-4234.

b.  American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF-1E-05, 3-ALDF-1E-01, 3-ALDF-1E-02, 3-ALDF-1E-04, 3-ALDF-1E-05, 3-ALDF-1E-06, 3-ALDF-IF-08, 3-ALDF-3C-19, 3-ALDF-3C-20.

c.  American Correctional Association 2nd Edition Standards for Administration of Correctional Agencies: 2-CO-1E-01, 2-CO-1E-02, 2-CO-1E-03, 2-CO-1E-04, 2-CO-1E-06, 2-CO-1E-07, 2-CO-1E-08, 2-CO-1E-09.

d.  American Correctional Association Standards for Adult Correctional Boot Camp Programs: 1-ABC-1E-04, 1-ABC-1E-05, 1-ABC-1E-06, 1-ABC-1E-07, 1-ABC-1E-08, 1-ABC-3C-13.

5.  **PRETRIAL PROCEDURES**.  File materials for pretrial inmates shall be kept in letter size, straight cut, drop file folders. The location of the folders shall be identified in the local Institution Supplement at the Warden's discretion.  Depending on where the pretrial file is maintained will determine the appropriate accountability procedures.  For example, if the file is maintained in Inmate Systems Management (ISM), ISM will account for the file folders according to the ISM Department

accountability procedures shall be established and outlined in the Institution Supplement.

Case 1:06-cv-01171 Document 20-3    Filed 12/13/2006    Page 15 of 40

Staff shall adhere to the general requirements concerning the handling of inmate files addressed in this Program Statement. Pretrial file material shall include any documentation normally retained for a sentenced inmate.  FOI Exempt material shall be placed in the drop file folders appropriately stamped "FOI Exempt."

6.   DETAINEES (INS).  Institution staff shall maintain the Inmate Central File on an inmate who completes his/her sentence and is reclassified as an INS detainee.  The existing Inmate Central File shall incorporate any documents accumulated during his/her status as an INS detainee.  The existing Inmate Central File shall be maintained active until the inmate is removed from the institution by INS officials.

For inmates who are initially classified as INS detainees and therefore have had no previous Inmate Central File created, institution staff shall adhere to Section 5 (Pretrial Procedures) of this Program Statement on specific instructions on file materials for INS detainees.  The Institution Supplement shall address the location of the files and establish file accountability procedures.

6.   WITNESS SECURITY FILES.  Because of the sensitivity of Witness Security Cases, procedures for handling these files may differ.  For specific instructions refer to the Central Inmate Monitoring Manual and/or the Protective Custody Unit Manual.

7.   INMATE RECORD FUNCTIONS.  Many inmate administrative and clerical functions are appropriately performed in the unit while others are appropriately performed in the ISM Department. Normally, the functions of Central Files, Privacy Folder, and mini-files created for use by the U.S. Parole Commission are separated by Unit Staff/ISM Staff responsibilities in the following manner.

    a.   Unit Functions

        • Create Inmate Central Files,
        • Create Privacy Folder,
        • Maintain Inmate Central File,
        • Monitor the filing/security of Inmate Central File, and
        • Create Parole Mini-files.

material to units,
• Retirement and retrieval of inactive files.

c. <u>Regional Inmate System Functions</u>

• Create and maintain State concurrence Central Files.

d. <u>Community Corrections Managers Functions</u>

• Create and maintain Inmate Central Files on Federal inmates being boarded in state facilities (State Boarders).

8. <u>INMATE CENTRAL FILE</u>

a. <u>Documents File</u>. Part of the Inmate Central Records System is defined in the Federal Register, September 16, 1976, Volume 41, No. 181, page 39918.

b. <u>Creation</u>. Each Unit Secretary shall review the SENTRY Daily Log for unit assignments and create the Inmate Central File and Privacy Folder immediately after the assignment to a housing unit at the institution to which the inmate has been designated.
Inmates who have been previously classified and who are subsequently transferred from other Bureau institutions ordinarily shall not require creation of another Inmate Central File. Former files on individuals recommitted under the same sentence shall be reactivated.

The six-position Inmate Central File Folder shall be used, along with a pressure-sensitive label. Tattered or torn file folders should be replaced. The General Services Administration currently supplies the Inmate Central File Folder. Specific details and ordering instructions may be obtained from the institution Business Office.

c. <u>Location</u>. The Inmate Central File is maintained at the current or last institution or facility of confinement. Once the inmate has been released, refer to the Inmate Systems Management Manual for further instructions.

d. <u>Categories of Individuals Covered</u>. Current and former sentenced inmates under the custody of the Attorney General of the United States to include Study and Observation cases.

e. <u>Organization</u>. The six-position Inmate Central File folder provides for the organization of filed material, topically, as follows:

2.      Classification/Parole Material
4.      Conduct, Work and Quarters Reports
5.      Release Processing
6.      General Correspondence

In addition, a Privacy Folder, attached to the top of Section 5, provides a receptacle for storing Freedom of Information Act (FOIA) Exempt material.  The department responsible for ordering Privacy Folder inserts shall consult the institution Business Office to ensure proper procedures are followed.

   f.  Standardization of Inmate Central File Material.
Standardization streamlines the filing of material, expedites accessibility and retrieval of data, and eliminates the need to rearrange files of inmates transferring into the unit.

      (1)  Responsibilities.  All institutions shall comply with the standardized system for organizing material in the Inmate Central File and Privacy Folder.

      Unit Managers are ordinarily responsible for ensuring all Inmate Central Files and Privacy Folders are organized as stated herein.  At institutions retaining a centralized file system, the Warden shall designate staff accountable for standardized filing of material.

      (2)  Requirements.  Detailed instructions for the order of routine filing are included in Section 9 of this Program Statement, with the filing of FOIA Exempt materials in the Privacy Folder detailed in Section 10.

      (3)  Storage.  Files shall be stored alphabetically.

   g.  Multiple Volumes.  When it becomes necessary to establish a second volume of an inmate's Central File, the second volume shall be created containing all the original core documents required for an initial file.

(1)  Core Documents.  Core documents shall include:

            (a)  CIM White Card
            (b)  Intact FOIA Exempt section from primary volume
            (c)  J&C
            (d)  PSI
            (e)  Chronological Disciplinary Record for Incident
                 Reports written before December 1, 1990.

volume.

(3)  <u>Controls</u>.  Multiple volumes shall be clearly identified on the check-out cards, file tabs, and on the file cover (i.e., Volume I of III, Volume II of III, etc.)

- A Check-out Card (BP-387) shall be used for each volume.

- If all volumes of multiple files are not maintained in the regular Central File cabinet, the current volume is to be marked as to the location of the other volume(s).

- Each **volume** shall be accounted for daily.  Thus the total file count will exceed the inmate count when multiple volumes exist.

- At the beginning of each month, a list of inmates with multiple volume files is to be included on the file count record noting the number of volumes.  Addition and deletion of files and volumes of files will then be noted on the file count record for the remainder of that month.

- Multiple volume files shall be created chronologically, maintaining the six-position file's order.

9.  <u>INMATE CENTRAL FILE ORDER</u>.  The six-position Inmate Central File provides for the organization of filed material.  Material shall be filed in the following order in the Inmate Central File (top to bottom) by sections when the document, report, etc. is appropriate, available, and disclosable to the inmate.

a.  <u>Section One:  (Sentence Data/Detainers/Inmate Financial Responsibility Program)</u>

* (1)  CIM White Card                                                                      *
  (2)  SENTRY Sentence Computation Record (most current)
  (3)  Copy of Judgment in a Criminal Case or Judgment and Commitment Papers (all)
  (4)  Financial Responsibility SENTRY Module Contract (most current)

    (a)  Installment Schedule Agreement for Unpaid Fines form (if applicable)
    (b)  Cost of Incarceration Fee form (BP-546) (if applicable)
    (c)  Correspondence relating to IFRP i.e. (BP-445's, Financial Litigation Unit

(8) Detainer Action Letter (BP-394) (all)

(9) Interstate Agreement on Detainer forms (BP-235 through 239) (copy, if applicable)

(10) FBI Fingerprint Report (RAP Sheet) or request for RAP Sheet; no Bureau run NCIC/III records in disclosable portion of File

(11) Disclosable AO-235/AO-245/USA-792, (with response, if applicable)

b. Section Two: (Classification and Parole Materials)

(1) Inmate Activity Record form (BP-381); new form for each institution (all)

(2) In-Transit Data form (most current)

(3) Copy of Transfer Order (BP-399) (all)

(4) Copy of Redesignation Approval, SENTRY Clearance Data - no separatees listed (most current)

(5) Request for Transfer (all)

(6) Request for Management Variable Application/Updated Expiration Date or PSF Waiver (all)

(7) Custody Classification form (most current; all exception cases resulting in custody reductions)

(8) Parole forms (in chronological order) (all)

    (a) Parole Commission Appeals, National/Regional

    (b) Notice of Action

    (c) Notice of Action, Part II-Salient Factor

    (d) Waiver of Notice, Representation or Disclosure Staff Representative form

    (e) Notice of Hearing

    (f) Parole Application/Waiver (I-24)

    (g) Background Statement of Inmate (I-32)

    (h) Attorney Witness Election forms (I-16) and (CJA 22)

(9) Related Correspondence to Parole Commission (all)

    (a) Parole Violation Warrant Application

    (b) USPO packet excluding duplication

(10) Most current Progress Report

(11) Classification Material

    Program Review forms (BP-191) (6 most current)

(12) Treaty Transfer Packet (copy, if applicable)

    (a) Transfer Inquiry form (BP-297) (if applicable)

    (b) Treaty Transfer Case Summary (if applicable)

c. <u>Section Three:</u>  (Mail, Visits, Property, etc)

   (1)   Extra Photographs, stored in envelope (most current)
   (2)   Social Security Card, Drivers License, etc.
         (stored in envelope; send to R&D upon release)
   (3)   Approved Visiting List (most current)
   (4)   Correspondence relating to Visiting List (disclosable)
   (5)   Telephone List (most current since the last Program
         Review)
   (6)   Telephone Number Request form (BP-505) (all)
   (7)   Correspondence relating to Telephone List (disclosable)
   (8)   Inmate to Inmate Correspondence Approvals (all)
   (9)   Acknowledgment of Inmate (BP-407/408) (all)
  (10)   Inmate Personal Property Records (BP-383) (all)
  (11)   Confiscation & Disposition of Contraband forms (BP-402)
         (all)
  (12)   Commissary Issue Card form (most current)
  (13)   Request/Authorization to Mail Inmate Packages (BP-329)
         (maintain for two years)
  (14)   Authorization to Receive Packages or Property (BP-331)
         (maintain for two years)
  (15)   Injury Report - Inmate  (BP-S140.016) (all)
  (16)   Uniform Basic Safety Regulations (BP-169) (most
         current)
  (17)   Institution AIDS Training (most current)
  (18)   Admission and Orientation Program Checklist (all)
  (19)   Intake Screening form/(Rights & Responsibilities (all)
  (20)   Medical/Psychology Intake Screening Form (BP-354) (all)

d. <u>Section Four:</u>  (Conduct, Work, Quarters Reports, etc)

   (1)   Chronological Disciplinary Record for Incident Reports
         written prior to December 1, 1990
   (2)   Incident Reports, UDC Actions (all)
   (3)   Discipline Hearing Officer Packet; file each UDC/DHO
         action as a packet in chronological order (all)

    (a)   Incident Report (BP-288)
    (b)   Inmate Rights at Discipline Hearing (BP-293)
    (c)   Notice of Discipline Hearing Before the DHO (BP-294)
    (d)   Duties of Staff Representative (BP-306)
    (e)   Waiver of Appearance (BP-307)
    (f)   Discipline hearing Officer (DHO) Report (BP-304)
    (g)   DHO Checklist (BP-447)
    (h)   Administrative Detention Order (BP-308)
    (i)   Special Housing Unit Record (BP-292)
    (j)   Special Housing Review (BP-295)

(4)  Work Performance Rating forms, UNICOR and IPP (purged after incorporated into the inmate's progress report)
(5)  Request for Vacation (most current)
(6)  Education Data

   (a)  Education Data Transcript (most current)
   (b)  High School Diploma or proof of its attainment GED
   (c)  V/T Certificates (all)
   (d)  Other Education Related Documents

(7)  Drug Abuse Program correspondence (most current on top)

e. Section Five:   (Release Processing)

   (1)  Institution/Unit Release Preparation Checklists (most current)
   (2)  Program Review Report (BP-571) (if applicable; original report regarding Notification of Prisoner Release)
   (3)  Notification of Community Treatment Programs form (if applicable)
   (4)  USPO Plan Approval (most current)
   (5)  Parole Certificates, Parole form (H-13) (all)
   (6)  Parole Certificate Request form (most current)
   (7)  Release Correspondence (Pre-release progress report receipts) (most current)
   (8)  Notice of Release and Arrival, Parole form (I-13) (all)
   (9)  Deportation Notice (Parole form 55) (all)
  (10)  Supervision Release Plan form (BP-522) (all)
  (11)  Inmate Education Data Transcript (most current)
  (12)  Certificate of Mandatory Release, Mandatory Release to Special Parole, Special Parole or Court Designated Parole (Parole form I-33) (all)
  (13)  Release Authorization (BP-392) (all)
  (14)  Gratuity forms (BP-189 or BP-379) (most current)
  (15)  Notification of Prisoner Release Form (if applicable)
  (16)  Release of Immigration Detainee with Supervision to follow (BP-325) (all)
  (17)  Conditions of Probation and Supervised Release, (Probation form 7A) (if applicable)
  (18)  CCC Terminal Report (if applicable)
  (19)  CCC Packet (most current)

   (a)  Furlough Approval and Record form (BP-291) (CCC Only)
   (b)  Institution Referral for CCC Placement (BP-210)
   (c)  Acceptance/Denial Documentation from CCM
   (d)  Exception Memorandum from Warden done prior to April 30, 1993.

(21)  Prior Release Documents (file entire packet together)

f.  <u>Section Six:   (General Correspondence) - Chronological</u>

(1)  Correspondence, General
(2)  Furlough Packet (all)

   (a)  Furlough Questionnaire USPO (BP-302)
   (b)  Furlough Questionnaire
   (c)  Furlough Approval form (BP-291)
   (d)  Correspondence Regarding Furlough
   (e)  Furlough Evaluation

(3)  Record of Escorted Trip (most current)
(4)  Inmate Request to Staff Member (BP-148) (all)
(5)  Congressional Correspondence - Entire Packet (all)
(6)  Consent forms - General (all)

<u>Note</u>: No Administrative Remedy Responses should be maintained in the Inmate Central File.  See the Program Statement on the Administrative Remedy Program for file maintenance.

10.  <u>PRIVACY FOLDER</u>.  The Privacy Folder is to be located on the top of Section 5 of the Inmate Central File.  The Privacy Folder contains two sections.

• FOIA Exempt material for Section I shall include Central Inmate Monitoring documents and Victim/Witness Information.

• Section II shall include other non-disclosable material from the Inmate Central File.

All material not considered FOIA Exempt shall be filed in the appropriate section of the Inmate Central File.

a.  <u>Section One:   Central Inmate Monitoring and Victim/Witness Notification Packet</u>

   (1)  CIM (BP-339) (most current)
   (2)  CIM (BP-340) (all)
   (3)  CIM Documentation (all)
   (4)  Cover Memorandum to Appropriate Review Authority (all)
   (5)  CIM Approval Letter from Appropriate Review Authority (all)

        (a)   Initial Notification Letter
        (b)   All Other Victim/Witness Notification Documents (all)

    b.  Section Two:  Miscellaneous Non-Disclosable Materials

        (1)   Secret Service Card
        (2)   Non-Disclosable PSI, AO 235, 245, USA 792 and
              Sentencing Memo/Transcript
        (3)   FOIA Exempt In-Transit Data form (most current)
        (4)   Psychological/Psychiatric Intake Screening form (BP-435
              and 436) (Only FOIA EXEMPT) documents determined by
              Psychology staff.
        (5)   Visitor Information form (BP-309) (all)
        (6)   Visitor Authorization for Release form (BP-310) (all)
        (7)   Request for Conviction Information form (BP-311) (all)
        (8)   Any Materials from the Central File which are FOIA
              Exempt are to be filed chronologically.
        (9)   Any other Materials that are FOIA exempt:

           (a)   Study and Observation Cases (all)
           (b)   Confidential Investigations (all)

11.  U.S. PAROLE COMMISSION MINI-FILES.  All facilities shall
adhere to the U.S. Parole Commission Rules and Regulations in
creating and handling these files.

    a.  Origin.  The Unit Secretary shall create the Parole
Mini-file at the time of admission for all commitments who are
eligible for parole and will eventually be released with U.S.
Parole Commission supervision to follow.

    Files on inmates who do not receive a hearing or are not
granted parole but who have a mandatory or special parole term
after release shall be sent immediately after the inmate's
release to the appropriate U.S. Parole Commission Office which
has supervision responsibility.

    Parole Mini-files shall be created for adult sentences imposed
under 18 U.S.C. 4205(f) and the YCA provision 18 U.S.C. 3401(g)
of the Federal Magistrate Act of 1979.  Files shall also be
created for all inmates serving sentences imposed under 21 U.S.C.
848 (Continuing Criminal Enterprise) even though inmates
sentenced under such sentences are not eligible for parole.  Upon
the inmate's release from confinement, these files shall be sent
to the appropriate U.S. Parole Commission Office supervising the
inmate.

b. <u>Maintenance and Use</u>. These files are to be maintained at
the same institution at which the inmate is confined. Prior to

Case 06-cv-01755-H Document 20-3 Filed 12/07/2006 Page 25 of 40

the initial parole hearing, the files are to be shipped via
certified mail or via United Parcel Service, to the appropriate
U.S. Parole Commission office. Following review at the U.S.
Parole Commission, the file is returned to the institution for
storage until the hearings occur.

When practical, after hearings, U.S. Parole Commission
examiners may take smaller quantities of these files with them
when they return to their office. Otherwise, other staff the
Warden designates shall clip the Commission Order, hearing
summary, tape and notes, and other hearing documents to the
inside of the Parole Mini-file before transmittal in the order
indicated. These shall be delivered to the institution mailroom
for shipment. Hearing tapes shall be boxed and sent as soon as
possible to the U.S. Parole Commission office.

When an inmate waives parole consideration or no hearing is
conducted, the Parole Mini-file shall be forwarded upon the
inmate's release to the U.S. Parole Commission office provided
the inmate is released to the U.S. Parole Commission's
supervision.

c. <u>Contents</u>. The contents of the Parole Mini-files are to be
limited to the following:

- (1) SENTRY Sentence Computation Record
- (2) FBI Fingerprint Record (RAP Sheet)
- (3) Judgment in a Criminal Case or Judgment and Commitment Order
- (4) Pre-Sentence Report (if disclosable)
- (5) Prosecuting Agency Report
- (6) Classification Material
- (7) Medical, Psychological and Psychiatric Reports (if separate from classification material and disclosable)
- (8) U.S. Attorney/Judges Report (USA-792, AO-235)
- (9) Progress Report (most current)
- (10) Escape Reports
- (11) Front Side of all Incident Reports with Discipline Hearing Officer Packet Given to Inmate
- (12) Background Statement of Inmate (Parole form I-32)
- (13) Application for Parole (Parole form I-24)
- (14) Pre-Release Matters:

    - (a) Correspondence regarding release planning and aftercare arrangements.
    - (b) Correspondence regarding detainers.
    - (c) Release Certificates where applicable.

(15)   Correspondence Relative to Parole Consideration
(16)   Policy established within the U.S. Parole Commission
       governing material emanating from the Commission and
       needed in the files.  All material received from the
       Commission shall be filed.

<u>Note</u>:  FOIA Exempt Material shall not be placed in Parole
Mini-files.

e.  <u>Organization</u>.  Material shall be organized within folders,
by position, as follows with the latest date on top:

   (1)  <u>No. 1  Sentence Data</u>

      (a)   SENTRY Sentence Computation Record
      (b)   Prosecuting Agency Report
      (c)   Report of U.S. District Judge, AO-235 form
      (d)   Report of U.S. Attorney, 792 form
      (e)   FBI Fingerprint report (RAP Sheet)
      (f)   Judgment and Commitment Order

   (2)  <u>No. 2  Classification Material</u>

      (a)   Progress Report (most current)
      (b)   Escape Reports
      (c)   Front Side of an Incident Report
      (d)   Medical, psychological, and psychiatric reports, if
            disclosable
      (e)   Classification Materials
      (f)   Presentence Report of USPO (Probation form 2a), if
            disclosable

   (3)  <u>No. 3  General Correspondence</u>

   (4)  <u>No. 4  Parole Material</u>

       Notice of Hearing - Parole Application (current and
       previous ones), Representative, and Disclosable Request
       (Parole form I-24)

e.  <u>Maintenance, Security and Access, Responsibilities and
Procedures</u>.  The same rules as for the Inmate Central File shall
apply.  Institution staff shall file any of the material
described above that is received or generated prior to shipment
of the files to the appropriate U.S. Parole Commission office.
Routine filing material received or generated after that time

f. <u>Transfers</u>.  As inmates are transferred between institutions, each Parole Mini-file still held at the institution shall be included in the same package with the appropriate institution Inmate Central File as specified in the Security Designation and Custody Classification Manual.

g. <u>Inmate Review of Parole Commission Files</u>.  Inmates may request review of the Parole Mini-file through the U.S. Parole Commission in accordance with 28 CFR 2.55 and 2.56.

12. <u>MAINTENANCE, SECURITY, AND ACCESS PROCEDURES</u>

a. <u>Responsibility</u>.  At the Warden's delegation, the Inmate Systems Manager (ISM) is the official custodian of inmate records.  The ISM is responsible for file retention and disposal, certification purposes, and court appearances when the record's presence is required outside normal operating situations.

The Regional Inmate Systems Administrator, at the Regional Director's delegation, shall have the same responsibilities at the Regional Office level.

At institutions where inmate files are stored centrally, the Warden's designee has supervisory responsibility.  Wherever Inmate Central Files are decentralized to functional units, supervisory responsibility shall belong to the Unit Manager and his/her staff.  Although some delegation is necessary, the Unit Manager is accountable for file security, control, and maintenance.  A clear method of accountability is to be established for the removal and return of files from this area (see subsection b. of this Section).

b. <u>General Requirements</u>.  The following rules apply at every institution where inmates are confined and files maintained, regardless of whether the Inmate Central Files are centralized or decentralized.

(1)  Files may **never** be left unsecured or handled in such a way as to be accessible to unauthorized persons.  Staff shall ensure that inmates do not transport files and confidential materials.

(2)  Files shall be stored in secure cabinets in secure areas when not in use.  Fireproof cabinets shall be used or acquired except for those institutions which have specifically obtained a written exemption from the Assistant Director, Correctional Programs Division.

**emergency poses problems.** Inmate Central Files for inmates not housed in the institution (i.e. inmates on writ, home confinement, or housed in CCCs) are also counted on the same basis. These files shall be kept in a separate section of the file cabinet to better facilitate file accountability.

(4) An Inmate File Check-Out Card (BP-387) shall be prepared for each volume and remain with that volume. The card is to be placed in the file cabinet with the volume, and each user shall sign and date the card when a volume is removed and leave the card in the volume's place. This system provides a tracking device when files are missing or needed for other purposes and improves the ability to take inventory.

(5) All Inmate Central Files shall be counted any time that Central File cabinet is unlocked. For example, if staff are on duty and open a file cabinet, all the files in that particular file cabinet must be counted that day. Conversely, if staff are on duty but have no need to open the file cabinet, the files do not have to be counted. Staff shall indicate "file not opened", initial, and date the file count record. The following information shall be included in the file count record:

- the date/time of the count,
- total volumes counted,
- initials of the counter, and
- reasons for any changes since the previous day's count.

A name roster **and census** count must be conducted at least weekly. This count consists of accounting for each file by securing a name roster printout from SENTRY and comparing the files in the cabinet with the name roster. After completion, the printout shall be initialed, dated, and maintained for 90 days. The file count record shall be maintained for a period of 2 years.

c. Security Level Requirements

(1) Inmate Central Files in Minimum and Low Security Level institutions may be maintained securely within the functional unit in a secure manner at the Warden's discretion.

(2) Inmate Central Files in Medium Security Level facilities may be maintained securely within the functional unit at the Regional Director's discretion and approval.

Inmate Central Files maintained in a secure centralized location
do not require Regional Director approval
P6031.01 Reg 013 Date created or approved 12/13/2006   Page 29 of 40 *

(4)   The location and security of Inmate Central Files in
Administrative facilities shall be reviewed and a determination
made on a case-by-case basis with the Regional Director's
approval.

13.   <u>ROUTINE USES OF INMATE CENTRAL FILES</u>.   The routine uses of
Bureau Inmate Central Files are periodically published in the
Federal Register.   At the time of this Program Statement's
publication, those include:

   a.   <u>Routine Uses</u>.   Routine uses of these files are to:

   (1)   Provide an information source to officers and employees
of the Department of Justice who have a need for the information
in the performance of their duties;

   (2)   Provide an information source to law enforcement
officials for investigations, criminal prosecutions, civil court
actions, or regulatory proceedings;

   (3)   Provide an information source for disclosure of
information on matters solely of general public record, such as
name, offense, sentence data, and release date;

   (4)   Disclose information to contracting or consulting or
correctional agencies that provide correctional services for
federal inmates;

   (5)   Provide an information source for responding to
inquiries from federal inmates involved in Congressional
inquiries;

   (6)   Provide information relating to federal offenders to
the courts, including court officials and probation officers;

   (7)   Provide victims and/or witnesses, pursuant to
victim/witness federal legislation and policy, information
relating to an inmate's furlough, parole (including appearance
before the U.S. Parole Commission), transfer to a community
corrections center, mandatory release, expiration of sentence,
escape (including apprehension), death, and other such release-
related information;

   (8)   Provide state agencies or authorities, pursuant to
Public Law 98-135, identifying data of Bureau inmates for the

determination has been made;

(9)    Provide the Social Security Administration (SSA), pursuant to Public Law 96-473, identifying data of Bureau inmates for the purpose of matching the data against SSA records to enable the SSA to determine the eligibility of Bureau inmates to receive benefits under the Social Security Act; SSA is to erase the Bureau data after the match has been made;

(10)    Provide the Veterans Administration (VA), pursuant to Public Law 96-385, identifying data of Bureau inmates for the purpose of matching the data against VA records to determine the eligibility of Bureau inmates to receive veteran's benefits; the VA is to erase the Bureau data after the match has been made;

(11)    Provide information from an inmate record to an employee, former employee, or his or her designated representative when such information is included in the employee's or former employee's adverse or disciplinary personnel action file with respect to proposed adverse or disciplinary personnel action against that employee or former employee; the employee's or former employee's adverse or disciplinary personnel action file is covered by a government-wide system of records published by the Office of Personnel Management (OPM) entitled "Adverse Action Records, OPM/GOVT-3;" to protect the privacy of the inmate, information transferred to the employee's or former employee's adverse or disciplinary personnel action file will be sanitized as warranted and/or appropriate protective orders may be requested to prevent further dissemination; and

(12)    Provide an employee, former employee, or his or her designated representative information from an inmate record pursuant to regulations or order of any body properly trying the merits of an adverse or disciplinary personnel action, including an administrative agency, arbitrator, or court of competent jurisdiction; to protect the privacy of the inmate, information provided the employee, former employee, or his or her designated representative will be sanitized as warranted and/or appropriate protective orders may be requested to prevent further dissemination.

b.    Release of Information to the News Media.    Information which may be released to the news media and the public pursuant to 28 CFR 50.2 may be made available from systems of records maintained by the Department of Justice unless it is determined that release of the specific information in the context of a particular case would constitute an unwarranted invasion of personal privacy.

staff acting upon the Member's behalf when the Member or staff
requests the information on behalf of and at the request of the
individual who is the subject of the record.

   d. <u>Release of Information to the National Archives and Records
Administration</u>.  A record from a system of records may be
disclosed as a routine use to the National Archives and Records
Administration (NARA) in records management inspections conducted
under the authority of 44 U.S.C. 2904 and 2906.

14.  <u>DISCLOSURE OF INMATE CENTRAL FILE MATERIAL</u>.  The Privacy Act
of 1974 sets forth a series of requirements governing federal
agency record-keeping practices intended to safeguard individuals
against invasions of personal privacy.  The Act forbids release
of information from agency records without a written request by,
or without the prior written consent of, the individual to whom
the record pertains, except in specific instances as described in
the Act.  Civil sanctions and criminal penalties are prescribed
for violation of the provisions of the Privacy Act.

It is, therefore, imperative that each Bureau employee be
knowledgeable of this Act's provisions, and conform his or her
conduct to the Act regarding the maintenance of records and the
release of information contained in those records.  The Program
Statement on Release of Information establishes procedures for
the release of requested records in the possession of the Bureau.

15.  <u>INMATE REVIEW OF INMATE CENTRAL FILE</u>.  An inmate has the
option to look at materials maintained in his/her Inmate Central
File.  This procedure is not required by either the Freedom of
Information Act or Privacy Act.  A request submitted under FOIA,
for example, is processed formally under Department of Justice
and Bureau guidelines for handling such requests, in light of the
specific statutory provisions.  By contrast, the information
contained in this section establishes an administrative procedure
for inmate access to records which can properly be shown to the
inmate in accordance with sound correctional practices and
concerns.

   a. <u>Local Procedures</u>.  Each institution and facility shall
issue local instructions to implement this section.  Local
procedures shall include but are not limited to those items
listed in Section 15.a. and 15.b. of this Program Statement.
Each Chief Executive Officer (CEO) shall decide on the
expeditious and efficient means to accomplish any necessary file
review.  The CEO must designate those staff who are responsible
for the:

(3) screening of all records and documents in the future as they are sent to the Inmate Central File for filing.

Each institution may adopt its own procedures and forms for submitting and acknowledging requests and for logging and scheduling Inmate Central File reviews.

b.   <u>Inmate Request and Review</u>.  Any inmate seeking to look at his/her Inmate Central File shall submit a request to a staff member, as designated in the local instruction.

- The inmate's request should be acknowledged.
- The inmate should be permitted to review the file whenever practicable.
- All file reviews must be done under constant and direct staff supervision.
- Those materials which have been determined to be non-disclosable shall be removed from the folder before inmate review.
- An entry shall be made on the Inmate Activity Record (BP-381) to show the date the inmate reviews the file. The staff member monitoring the review shall initial the entry and the inmate shall be asked to initial it.

c.   <u>Inmate Challenge to Information</u>.  An inmate may challenge the accuracy of the information in his or her Inmate Central File.  Unit team staff shall take reasonable steps to ensure the accuracy of challenged information, particularly when that information is capable of being verified.  The inmate is required to provide staff with sufficient information in support of a challenge (names of persons to contact, government agency, etc...).

When an inmate provides such information, staff shall review the alleged error(s) and take reasonable steps to ensure the information is correct.

For example, if an inmate challenges information in the Presentence Investigation Report (PSI), staff should inform the appropriate U.S. Probation Office (USPO) in writing of the disputed information, and request that a written response also be provided.  **USPO procedures, however, do not allow for changes or addendums to be made to the Presentence Investigation Report after sentencing since it is a court document.**

If the USPO subsequently reports that the challenged information, or some part thereof is not accurate, staff shall attach the Bureau's inquiry and the USPO response to the

When the USPO verifies that the information in the PSI is
indeed inaccurate, as claimed by the inmate, staff should
subsequently review, and where indicated, correct Bureau
generated reports or data such as the Inmate Load and Security
Designation form (BP-337), the Custody Classification form
(BP-338), Progress Report, and any other reports that may have
been based on the PSI.  Bureau reports, data, or SENTRY
transactions should be corrected within a reasonable period of
time after identification as being inaccurate.

If the information source will provide a corrected document or
data, it should be immediately inserted in the file or data base
and the inaccurate information or document removed.  A notation
on the Inmate Activity Record form should acknowledge the
insertion of the corrected information or document.

d.  Inmate Copies.  Any inmate who wishes to receive copies of
disclosable materials from the file shall submit a request to
institution staff.  Within a reasonable time after the request,
institution staff shall provide the inmate copies of requested
disclosable documents maintained in the Inmate Central File.
Fees for the copies are to be calculated in accordance with the
Program Statement on Release of Information.

e.  Privacy Folder.  Records which have been determined, under
separately issued guidelines, to be excluded from inmate review
shall be placed in the Privacy Folder.  Normally, actual
placement of documents in the Inmate Central File is the Unit
Secretary's responsibility.  The Privacy Folder shall be placed
on top of section 5 in the Inmate Central File.

As materials from any source are submitted for placement in
the Inmate Central File, they are routed to an appropriate staff
member the Warden designated.  The Case Manager shall review the
materials, to ascertain whether to place them in the regular
sections, the Privacy Folder, or discard them.  Any document to
be excluded from inmate review must be stamped "FOI EXEMPT".  At
each Program Review and before an inmate reviews his/her Inmate
Central File, the Case Manager shall review the file to ensure
the proper location of forms and purge outdated or unnecessary
forms and/or documentation.

f.  Parole Files.  Parole Mini-files, examiner packets, and
pre-hearing assessments are not disclosable unless specifically
authorized by the U.S. Parole Commission.  The Parole Mini-file
and other hearing materials must be removed from the Inmate
Central File prior to inmate review.  The inmate may seek review

requires accounting for both written and oral disclosures of
information about inmates.  Except for disclosures of information
of records made to other Department of Justice employees, and all
components thereof, and for disclosures required by the FOIA
(i.e., public information), an accounting of disclosures of any
information concerning an individual contained in a system of
records maintained by the Bureau shall be kept in accordance with
the following guidelines:

   a.  <u>Oral Disclosures</u>.  Staff are to take the position that only
public information is to be released orally.  Form BP-171 is
designed to assist the person receiving an oral request for
information in accounting for the results of the request.  The
form may also be used to document information which is released
and not covered by the FOIA.

   A memorandum shall be prepared and retained in the file from
which the record is disclosed, or an appropriate notation will be
maintained in the file, attached to the recorded disclosed.

   b.  <u>Written Disclosure</u>.  Accounting for written disclosures is
made in the same manner as for oral disclosures, or may be made
by retaining a copy of the correspondence requesting the
information and a copy of the response in the file from which the
record is disclosed.

17.  <u>TRANSFER OF RECORDS BETWEEN BUREAU FACILITIES</u>

   a.  <u>Transfer Out</u>.  Procedures for processing all records,
including the Inmate Central File, are covered in the Inmate
Systems Management Manual.

   b.  <u>Transfer In</u>.  Inmate Systems Department staff shall receive
and process records on transferring inmates as follows:

   (1)  Judgment in a Criminal Case and Judgment and Commitment
Files shall be pulled for audit by the Inmate Systems staff;

   (2)  Medical records shall be sent to the Health
Services Administrator;

   (3)  Mental Health records shall be sent to the Chief
Psychologist/Psychiatrist;

   (4)  Inmate Central Files related materials and Parole
Mini-files, if any, shall be sent to the appropriate Unit
Manager.

**Mail, Return Receipts Requested**. Files on these cases, if not already received, shall be requested by telephone, BOPNet GroupWise, or EMS, and shall be processed upon receipt the same as for transferring inmates.

18. **REQUESTS FOR FORWARDING INMATE FILES**. All requests for inmate files from individuals or agencies outside the Bureau shall be referred to the ISM Department for review and action as required in the Inmate Systems Management Manual. Requests from Bureau facilities shall also be referred to the ISM Department for review.

Ordinarily, if an inmate's projected stay at another institution (i.e., writs) is for 60 days or more, the parent institution shall be contacted to forward the Inmate Central File to the holdover institution. This contact is to be documented and should not require weekly follow-up.

19. **RETIREMENT OF INMATE CENTRAL FILES**

   a. **Files on Expired Sentences**. Files on these sentences shall not be combined with new sentence files. However, they may be retrieved for review and then returned to the Federal Records Center after the review is completed.

   b. **Files Processing at Final Release**. The following procedures shall be completed at the time of each inmate's release.

      (1) Inmate Central File folders shall be retained in the unit for approximately two weeks after the inmate's release. Files for inmates housed in halfway house facilities or community release status (i.e. home confinement, community corrections centers (CCC)) shall be maintained with the unit files until the final release paperwork is received from the CCC. This allows for final release papers to be consolidated and filed before the file is forwarded to the ISM Department for inactive file storage. Unit Managers are responsible for ensuring all required documents are in the Inmate Central File prior to retirement of the file.

      (2) Inmate Central Files are preserved for 30 years after the sentence expiration. Therefore, following release from service of the confinement portion of the sentence, medical, mental health, and visiting records shall be forwarded to the appropriate unit for consolidation with the Inmate Central File. The consolidated file is then sent to the ISM Department. The Judgment in a Criminal Case/Judgment and Commitment file is

released from confinement with no supervision to follow plus any
special parole term.

    (3)  Files designated for research purposes shall be
forwarded to the Office of Research and Evaluation (ORE), Central
Office and scheduled for disposal as ORE determines.  A notation
shall be entered on the permanent alpha index card in each case
to indicate to whom in ORE the file was sent.

    (4)  Material received regarding inmates who have been
released from serving their sentences shall be destroyed with the
exception of death notices or certificates and copies of U.S.
Parole Commission correspondence to the U.S. Marshals Service
transmitting warrants and court orders or documents.
Questionable material may be referred to the Case Management
Coordinator, Inmate Systems Manager, or the Regional Correctional
Programs Administrator for a decision.

  c.  <u>Retention and Disposal of Inmate Central Files</u>.  Specific
procedures for the retention and disposal of Inmate Central Files
are contained in the Inmate Systems Management Manual.

20.  <u>INSTITUTION SUPPLEMENT</u>.  Each institution is to develop an
Institution Supplement to include the following information:

  a.  Designate the location of pretrial and INS file folders.

  b.  Identify the pretrial and INS file folder accountability
procedures.

  <u>Note</u>:  These instructions should clearly set forth procedures
to ensure the maintenance, security, and access responsibilities.

  c.  Procedures to implement the inmate review of the Inmate
Central File.

 

                                   /s/
                                 Kathleen M. Hawk
                                 Director

# EXHIBIT 7

December 4, 2006


James Hilkey, Forensic Psychologist
3326 Durham Chapel Hill Boulevard
Suite B-121
Durham, North Carolina 27707

RE:  Freedom of Information Request No. 2006-06400
     Latchmie Narayan Toolasprashad, Reg. No. 10975-056

Dear Mr. Hilkey:

This is in response to a supplemental request submitted by federal
inmate Latchmie Narayan Toolasprashad, Reg. No. 10985-056.

One hundred twenty-three (123) pages of military records
were received in this office for release determination.  Upon
review, it has been determined these 123 pages are releasable to
you in their entirety and are enclosed herein.

I trust that this has been responsive to the request.

Sincerely,


Henry J. Sadowski
Regional Counsel

cc:  Latchmie Narayan Toolasprashad, Reg. No. 10975-056
     (without enclosures)

Enclosure:  123 pages