Department of Justice                    Notice of Action
United States Parole Commission
50 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

Name: TOOLASPRASHAD, Latchmie N.

Register Number: 10975-056                Institution: Fort Dix FCI  East

In the case of the above-named, the following parole action was ordered:

No change in continue to a 15 Year Reconsideration Hearing in June, 2010. It is requested that the Bureau of Prisons provide a current psychiatric/psychological report to the Parole Commission prior to the next scheduled Statutory Interim Hearing, addressing the issue of the prisoners competency and responsibility at the time of the instant offense conduct. The report shall also provide a determination as to whether or not the prisoner is mentally ill and dangerous and represents any danger to persons or property. The report shall be provided to the U.S. Parole Commission by 05-01-1999.

The above decision is appealable to the National Appeals Board under 28 C.F.R. 2.26.

You may obtain appeal forms from your caseworker or U.S. Probation Officer and they must be filed with the Commission within thirty days of the date this Notice was sent. Copies of this Notice are sent to your institution and to your probation officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others, if you so wish.

REASONS:

Retroactivity does not apply. Neither your recalculated severity rating (old Category Eight; new Category Eight) nor your recalculated salient factor risk category (old Category Very Good, old score 9; new Category Very Good, new score 9) is more favorable. This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of Offense Severity or Salient Factor Scoring.

In addition, you have committed rescission behavior classified as administrative. Guidelines established by the Commission indicate a range of 0-2 months for non-drug related infractions. You have committed 1 non-drug related infractions. Your aggregate guideline range is 100+ months to be served. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted.

As required by law, you have also been scheduled for a statutory interim hearing during November, 2000.


cc:      U.S. Probation Officer
         Eastern District of North Carolina
         Federal Building, Room 610                        EXHIBIT 1

Date: December 10, 1998                                    Clerk: frm

U.S. Department of Justice                                    NOTICE OF ACTION ON APPEAL
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

---

Name: Toolasprashad, Latchmie

Register Number: 10975-056                    Institution: Fort Dix FCI -

---

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirm the previous decision, with the modification to the prior requirement of a report on mental health. The Bureau of Prisons is requested to provide by the time of the next interim hearing a report on the prisoner's mental health, with specific comment on the potential for future violent conduct if released on parole.

**REASONS**:

The Commission has reviewed your claim that the decision-making in your case is flawed because it has employed old psychiatric/psychological reports to deny you parole. In determining the merits of your appeal, the Commission finds no cause to change the previous decision.

The statute at 18 U.S.C. §4207 requires the Commission to consider relevant and available information in its release decision-making, including reports of "physical, mental, or psychiatric examination of the offender." The information "available" on your mental health both at the time of your initial parole consideration and at your interim hearing were the reports concerning your competency to stand trial and your mental health at the time of the crime you committed. The Commission was not required to seek a current evaluation of your mental health at either of your parole hearings, and the determinations resulting from these hearings are not undermined by the failure to do so.

In making its October, 1995 decision on your earlier appeal, the Commission did refer to the earlier reports on your mental health. However, your argument in the present appeal ignores the fact that the reports were used as a reference to judge the significance of your refusal at the initial hearing to accept any responsibility for your murder offense and your evident lack of remorse for the crime. In determining the risk your release would pose to the public, it is hardly irrational to compare your contemporaneous statements about the crime, your guilt, etc., with prior evaluations of your mental health or your ability to appreciate the wrongfulness of your criminal behavior. The evaluation of your appeal in 1995 was based on your reported behavior at the hearing as well as the reports of your crime and your personal history.

The Commission has reviewed the summary of your last hearing and notes the comment of the examiner that the Commission should have obtained a current report on your mental health at the initial hearing. Whether or not such action should have been taken is a question over which reasonable minds can differ. As stated above, the failure to do so was not a legal defect in the proceeding and did not undermine the validity of the parole denial.

As a result of the examiner's recommendation, the Regional Commission did issue an order that the

---

Date: June 4, 1999                                    Clerk: pgn

                                                      EXHIBIT 2

BOP-FTD                        Page 1 of 2                TOOLASPR.109

Bureau of Prisons provide a current report on your mental health prior to the next interim hearing. In reviewing this order on appeal, the Commission is revising the order to remove the provision requiring a discussion of competency and responsibility at the time of the offense behavior. These matters are already covered by the reports presently in the record. Moreover, the deadline of May 1, 1999 is also deleted. Therefore, the order is revised to only require an evaluation of your mental health prior to your next interim hearing in November, 2000, with specific comment on your potential for future violent criminal conduct if released on parole.

All decisions by the National Appeals Board on appeal are final.

---

Date: June 4, 1999                                                        Clerk: pgn

BOP-FTD                                    Page 2 of 2                    TOOLASPR.109



AMERICAN
PSYCHOLOGICAL
ASSOCIATION

December 23, 1999

CONFIDENTIAL

Latch Toolasprashad
10975-056
Building 5802
P.O. Box 7000
Ft. Dix, New Jersey 08640

Dear Mr. Toolasprashad:

This is to acknowledge receipt of your letter dated December 14, 1999 indicating your interest in filing a complaint against Drew Kerr.

Drew Kerr is not a member of our Association and is, therefore, not within APA's jurisdiction. You may wish to contact your state psychological association or your state licensing board.

New Jersey Psychological Assn.                    New Jersey State Board of Psychological Examiners
349 E. Northfield Road, Suite 211                 P.O. Box 45017
Livingston, New Jersey 07039-4806                 Newark, New Jersey 07101

We hope that the information provided offers you some assistance. Thank you for your letter.

Sincerely,

La-Shan Lee
Investigative Assistant

/lsl

750 First Street, NE
Washington, DC 200024242
(202) 336-5500
(202) 336-6123 TDD

*EXHIBIT 3*

Web: www.apa.org



Please Recycle

# NEW JERSEY PSYCHOLOGICAL ASSOCIATION
349 East Northfield Road, Suite 211, Livingston, NJ 07039-4806
973-535-9888 • 1-800-281-NJPA (6572) • Fax 973-535-6451
E-Mail: NJPsych1@aol.com • Web: www.PsychologyNJ.org

March 17, 2000

**President**
Raymond F. Hanbury, Ph.D.

**President-Elect**
Osna Haller, Ph.D.

**Secretary**
Ronald G. Silikovitz, Ph.D., 2000

**Treasurer**
Judith E. Patterson, Ph.D., 2002

**Past President**
Rosalind S. Dorlen, Psy.D.

**APA Council Representatives**
Carol D. Goodheart, Ed.D.
Nina K. Thomas, Ph.D.

**Executive Board
Members-at-Large**
Dennis R. Finger, Ed.D., 2001
Corinne E. Frantz, Ph.D., 2000
Richard McKeon, Ph.D., 2001
Rosemarie S. Moser, Ph.D., 2002
David N. Panzer, Psy.D., 2000
Duncan Walton, Ph.D., 2002

**Chair, Council on
Legislative Affairs**
Ronald G. Silikovitz, Ph.D.

**Director of Professional Affairs**
Donald M. Bernstein, Ph.D.

**Director of Academic and
Scientific Affairs**
Dennis R. Finger, Ed.D.

**Executive Officer**
Lorryn Wahler

**Administrative Officer**
Jane Selzer

Latch Toolasprashad
Building 5802
Ft. Dix West
PO Box 7000
Ft. Dix, NJ 08640

Dear Mr. Toolasprashad,

According to our records Drew Kerr, PsyD is not a member of the New Jersey Psychological Association.

For further information regarding this individual you should contact the Board of Psychological Examiners at 124 Halsey Street, Box 45017l, Newark, NJ 07101.
The phone number is (973)504-6470.

I hope this information is helpful to you.

Sincerely,

Lynn Tull, Administrator

Affiliated with the American Psychological Association

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE

*Certified mail re warden bailey*
*7099 3720 0010 9111 9615*

FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Warden Bailey, FCI Fort Dix | DATE: October 7, 2000 |
|---|---|
| FROM: Latch Toolasprasnad | REGISTER NO.: 10975-056 |
| WORK ASSIGNMENT: Commissary | UNIT: 5802 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

I am writing this cop out pleading for your help. Thus the parole matter was addressed with my Unit Team staff who have been exceptionally helpful to me. Also, I did speak with Ms. Alexander on October 5, 2000 concerning same as well as detailed cop outs provided to her previously. Also, I did address this matter with you previously and provided documentation via certified mail.

On November 2, 1998, I appeared before the Parole Board at which time the Examiner ordered a "psychological profile" to determine "risk factor." The report was "initially" due on May 1, 1999. As Dr. Kerr was assigned to conduct the report, he repeatedly lied to me, my family, my attorney, as well as staff members who intervened on my behalf, that the report would be available by May 1, 1999, when in fact he was not telling the truth. Finally, after I requested a staff member to accompany me to Dr. Kerr's office, he [Dr. Kerr]

SEE CONTINUATION PAGE
(Do not write below this line)

DISPOSITION:

EXHIBIT 4

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

TOOLASPRASHAD, LATCH #10975-056
CONTINUATION OF INMATE REQUEST (COP OUT)

indicated that he could not write the report because he possess no license. Thus Dr. Kerr only made the referral after I indicated that I was considering legal actions against him.

On June 7, 2000 or about five (5) months before the November, 2000 parole hearing, I was rushed off to FCI Petersburg where the report was prepared by Dr. Berry and Dr. Paugh. The report is in my favor showing that I am NOT a threat to person or property.

Prior to going to FCI Petersburg for purpose of the report, I submitted copies of the following documents to you via certified mail and, should you wish to have another copy, please advise and I shall comply. These documents paint a clear picture of the dereliction of duty and incompetency by Dr. Kerr and Dr. Baruch:

1. Letter dated March 17, 2000 from the New Jersey Psychological Association stating Dr. Kerr is not a member of said Association.
2. Letter dated December 23, 1999, from the APA indicating Dr. Kerr is not a member of the American Psychological Association.
3. Cop out to Ms. Alexander dated March 20, 2000.  NO RESPONSE.
4. Cop out to Dr. Ker dated January 6, 2000.  NO RESPONSE.
5. Cop out to Dr. Baruch dated December 10, 1999.  NO RESPONSE.
6. Cop out to Dr. Kerr dated 10-28-99.  NO RESPONSE.
7. Cop out to Warden Beeler dated October 2, 1999.  NO RESPONSE. However, Warden Beeler had forwarded said request right back to Kerr for response.  Under "duress" and "coercion" Kerr had me sign this matter as a "withdrawal" and/or the matter "resolved." As I know how important this report is for me to gain my freedom, I was left with no alternative but to sign the withdrawal as I previously witnessed how staff members retaliate against prisoners.
8. Cop out to Dr. Baruch dated 10-25-99.  NO RESPONSE.
9. Cop out to Dr. Kerr dated 10-25-99.  NO RESPONSE.  On 10-26-99, Dr. Kerr responded; however, the meeting never took placed because when I reported to the psychology office, I was informed by the sectretary (Ms. Mershon) that Dr. Kerr was out sick.
10. Cop out to Dr. Kerr dated 10-9-99.  NO RESPONSE.
11. Cop out to Dr. Baruch dated August 25, 1999.  NO RESPONSE.
12. Cop out to Dr. Kerr dated August 25, 1999.  NO RESPONSE.
13. Cop out to Dr. Kerr dated July 25, 1999.  NO RESPONSE.
14. Cop out to Dr. Kerr dated February 7, 1999.  NO RESPONSE.

In addition to trhe above listed documents, I pleaded with Dr. Kerr on countless occasions to complete the report.  My family also did.  And staff members did too in my presence.

Additionally, I would like to add a cop out to Dr. Kerr dated 5-23-00 via certified mail #Z 367 241 389 — this is the only document not previously provided to you.

TOOLASPRASHAD, LATCH #10975-056
CONTINUATION OF INMATE REQUEST (COP OUT)

Concerning this matter a previous BP-9 was "GRANTED" in that the report would be completed before the November 2000 hearing. In a BP-9 response dated 10/26/99 by W.F. Dalius at ¶ 3 it states, "... the evaluation will be completed in time for their review sometime before ... November 2000." (See Attached).

What is alarming is that the BOP had almost two (2) years to have this report submitted for my November 2000 hearing and am still getting the running around even though I have documented this matter. Why should this prisoner be penalized because staff cannot do their job effectively?

It is not my fault Dr. Baruch failed to supervise Dr. Kerr, who has bungled this entire process. My "various" cop outs hand-delivered to the psychology department for Dr. Baruch were never responded to. In fact, to show how the psychology department staff do not function, please see my cop out to Agent Odell dated September 29, 2000, specifically Page 2 at ¶ 2.

It is evident that I am being discriminated and retaliated against because of my religion/race (Hindu-Indian) and, the fact, that I have sued staff that is pending jury trial. See M.D.Pa. 4:CV-98-1234.

REQUEST: 1. That I be placed on the November 2000 parole docket as I requested; 2. that a copy of the psychological report immediately be sent to the parole Board; 3. that I be provided with a copy of the report; 4. that my attorney be provided with a copy of the report — his name and address is: Todd Greenberg, Attorney at Law, 118-21 Queens Blvd., Forest Hills, New York  11375, (718) 268-0400; 5. that Dr. Baruch and Dr. Kerr be investigated and reprimanded; 6. that staff be instructed to answer cop outs.

I should not be penalized because of staff dereliction of duty and incompetency. Furthermore, in anticipation of any form of retaliation taken against me for the informative nature of this filing, I am forwarding a copy of this complaint to various officials to include the OIG-New York's Office to protect my rights.

Thank you.

*Certified Mail Z 393 449 747*

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Warden Bailey | DATE: April 3, 2000 |
|---|---|
| FROM: Latch Toolasprashad | REGISTER NO.: 1097 5-056 |
| WORK ASSIGNMENT: Laundry | UNIT: 5802 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Thanks for speaking with me on April 3rd. I hope you could appreciate that I am
indeed emotionally angry concerning the fact that I have become Dr. Kerr's personal
plaything. For 14+ months, Dr. Kerr has "LIED" to me and my "ill" mother re a report
for my parole hearing that was initially due May 1, 1999, that was never prepared and
subsequently denied parole.

I beg and plead and beg and plead with Dr. Kerr and other to have the report
completed to no avail. Dr. Kerr's superior, Dr. Baruch does not answer cop outs and so
is Dr. Kerr.

My Unit Team staff, Counselor Reyes (who is no longer my counselor of April 3rd),
Counselor Martinez, Ms. Kan (who is no longer my case manager), Mr. Harrington, and now
Mr. Perkins have all been "genuinely" helpful and supportive and I do appreciate their
kindness.

Apparently for 14+ months Dr. Kerr had no one watching over his shoulders, and it is
understandable that staff look at most prisoners as idiots and morons who do not speak
English, have no family/community ties, and no education. On the other hand, I prove this
stigmatism false. Perhaps if I was "white" Dr. Kerr would take an interest and conduct
the report.

I am enclosing a letter dated April 3, 2000, addressed to Congressman Ted Strickland
w/attachments. Other documents concerning this matter have been mailed out the institution.

My only request is for Dr. Kerr to complete the report he has been writing for 14+
months, and I be given an opportunity to review same (as was the agreement with Dr. Kerr)
before submittal. I set goals just as staff does -- my goal is to exit these prisons of
slow brain torture.

Thank you.

─────────────────────── (Do not write below this line) ───────────────────────

DISPOSITION:


| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISON:

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| D. Alexander, Associate Warden, Ft. Dix | March 20, 2000 |
| FROM: Latch Toolasprashad | REGISTER NO.: 10975-056 |
| WORK ASSIGNMENT: Laundry | UNIT: 5802 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back if necessary. Your failure to be specific may result in no action bei:
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

   This cop out serves as a request for "your" intervention, as thus far I have become
Dr. Kerr's personal "plaything." A previous coo-out to you dated February 21, 2000 was
sent by you to the psychology department for response, just like asking the "fox who
is watching the chicken coop to respond."

   On November 2, 1998, I appeared before the Parole Board and it was determined that
the BOP submit a psychological report by May 1, 1999, concerning risk factor for a
re-hearing. Subsequently, I've met with Dr. Kerr a number of times; the report was
never provided and I was denied parole.

   From February 1999 to present, or 13-months later, I became Dr. Kerr's personal
plaything. I plead and beg and plead and beg Dr. Kerr to have the report completed.
Unfortunately, Dr. Kerr kept the drive with "today," "tomorrow," "watch the call-out,"

                    CONTINUED ON ATTACHED
                    (Do not write below this line)

DISPOSITION:


| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct
and BP-S148.070 APR 94



"this week," "next week," and "Dr. Baruch is reviewing the report." Regretfully, I did not file against this administration for the malicious, capricious, deliberate, knowing and willful actions for Dr. Kerr's using me as his bloody plaything.

At the beginning or back in February 1999, I submitted at least 100 letters of commendation/certificates from various staff members (from various institutions to include Ft. Dix) to Dr. Kerr; a copy of my military personnel file; letters regarding my parents poor health conditions; and letters of support from the community. Further, my detail supervisor sent Dr. Kerr a memo and other staff members spoke with Dr. Kerr for brief moments -- everything positive. In fact, on March 1, 2000, while at work in the Laundry, my Unit Counselor (Mr. Reyes who has been of great help) was present when Dr. Kerr stopped by. My Counselor spoke a few words indicating, "He's the best we've had," and my work supervisor indicated, "He's the hardest worker I've had." Sadden to say, nothing concerning my superior institution conduct/adjustment and relationship with staff appears in the report draft.

It should be noted that my "ill" mother spoke with Dr. Kerr via phone, my sister did, and my family's attorney also did, yet to no avail with Dr. Kerr, as there is no one looking over his shoulders or what he is doing.

On March 1, 2000, or after 13-months of torture and nightmares attributed to Dr. Kerr's runaround and care-not attitude, I was finally given a copy of a 6-page "draft" of the grossly incorrect report. Dr. Kerr said he was allowing me an opportunity to correct same and, on March 7th, I once again provided documents that really had no initial impact on Dr. Kerr as it is evident he never perused any of the documents provided to him.

As Dr. Kerr clearly noted to me on March 7th, it is not his job to help me get a psychological report done; it is not his job to help with transfers, etc. I beg to differ with Dr. Kerr as it is his job to help prisoners. As I have witnessed how guards retaliate against prisoners and, I believe Dr. Kerr would retaliate against prisoners via psychological reports, I kept quiet in order to put my concerns in writing.

Dr Kerr has stated in the report that I appeared delusional in regards to allegations of "racism" while I was a prisoner at FCI Allenwood. What is most disturbing is Dr. Kerr's beliefs that "racism" in the BOP is non-existing. He has not been around other BOP facilities and he's in a position where he is subjected to "racism" thus hindering his subconscious to realize and/or admit that minorities, both prisoners and guards, encounter racism. Here at Ft. Dix, I am perhaps one of two/three Hindus, unlike other jails as a one-of-a-kind, where I was called names by guards such as: "half-nigger," "sand nigger," "camel rider," "cow worshiper," "rag head," "7-Eleven Operator," and other names. Furthermore, because of racism at FCI Allenwood, I filed grievances there and was threatened with bodily harm by guards, yet Dr. Kerr does not believe this occurred even though I submitted documentations (affidavits & signed cop outs) by both guards and prisoners alike. Moreover, I provided an abundance of documents of support, to include court orders that even the Magistrate Judge and District Judge recommended jury trial against five (5) guards from FCI Allenwood (AW, SIS, captain, case manager coordinator, and case manager) attributed to retaliation taken against me. (See, <u>Toolasprashad v. Ackley, et al</u>., M.D.Pa. 4:CV-98-1234 that is scheduled for jury trial in May 2000).

2

My family also encountered the "racism" with prison guards from FCI Allenwood and my mother indeed informed Dr. Kerr of such, yet he still doesn't believe racism exist in the BOP. Thus, Dr. Kerr's statement of delusional is both unfounded and inaccurate. I am asking for your assistance to ensure this unprofessional assessment based not on documented facts but on Dr. Kerr's personal beliefs and extreme naivety be removed from the report. (Dr. Kerr does not have a license to practice psychology, as per the APA).

Throughout the consultation, or questioning by Dr. Kerr, not once did he ask me to provide him with documentations to support my claim concerning my poor treatment at FCI Allenwood. As I said to Dr. Kerr on March 7th (and prior to said date), "you wasn't there and thus knows not what transpired at Allenwood" that he immediately agreed with. However, he is sitting on his hands when it comes to removing the inaccuracy from the report.

Apparently, Dr. Kerr's superior, a Dr. Baruch (a guard I know not nor wish to know) obviously have no concern to ensure Dr. Kerr functions fairly, as indeed I submitted via hand-delivery cop outs to the pyschology department in the chapel building addressed to Dr. Baruch and she completely failed to reply to those cop outs, which is a clear showing that these guards do as they wish.

Upon advise from my outside sources, I sent a letter to the American Psychological Association (APA), who informed Dr. Kerr does not have a license to practice psychology. The APA also provided me with the addresses of two state agencies for additional verification and I am currently awaiting responses.

To show what the BOP hires as psychologists, when I was physically "forced" under "duress" and "coercion" by a guard at FCI Allenwood to have sex with her and my seeking out psychological intervention, I was turned away. These are not mere conjectures but facts that can be verified by the OIA as criminal charges may eventually be in order. The BOP states that "sexual assault" can be reported via "psychologist".... When I went to the psychologist at Allenwood I was turned away. Let us get real here, Ms. Alexander, do you expect me to trust a BOP psychologist? I was actually laughed at in the same sense as Dr. Kerr has been toying with me for more than one year. For example, when this sexual abuse occurred (several times) and I sought out help, I was given an incident report for lying, yet 1½ year later when the abuse was still continuing and staff suspected such, the OIA became involved (even though I did not made the complaint), as prisoners like myself was being punished for seeking help -- still I wasn't offered any protection nor psychological counseling, leading to a retaliatory transfer and the controversy of a civil rights law suit that is proceeding to trial.

I am requesting your "oversight" to have Dr. Kerr make the necessary corrections of the report. I have been in confinement for almost 15-years, and while prisoners cannot make threats to guards, I have no intentions of doing so. However, if necessary, I shall go on a hunger strike in the "hole" until someone perform oversight of Dr. Kerr's performance and accuracy of the report. If it comes to the point that I must go on a hunger strike in order to get an executive guard's attention regarding this matter, please rest assured I will notify you of same in writing before hand. I am not an idiot that guards see in most prisoners. I have waited for too long to still be the product of a playtoy and it needs stopping now. When prisoners such as myself plead for help and are willing to go this far, someone should take the time to investigate the predicament. As I said, I am not making threats of a hunger strike; however, should it become necessary, please rest assured I will do so but will inform guards of same in writing.

3

Guards on this compound who I interact with regularly to include my Unit Team staff have showed genuine concern for my release and I will not let Dr. Kerr sabotage my efforts through his negligence and dereliction of duty.

To prevent retaliation, I am mailing a copy of this cop out to District Judge Muir and Magistrate Judge Smyser who are presiding over my civil rights case against the BOP, as well as to various public officials so that they may become aware of what prison guards like Dr. Kerr are doing.

As I am hand-delivering this cop out to you, please respond to same within the allotted five days recommended time limit.

Thank you.


Respectfully,


Latch Toolasprashad

BP-S148.055 INMATE REQUEST TO STAFF (form)
SEP 98
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| Dr Drew Kerr, Psychologist, FCI Ft. Dix | January 6, 2000 |
| FROM: Latch Toolasprashad | REGISTER NO.: 10975-056 |
| WORK ASSIGNMENT: Laundry West Clerk | UNIT: 5802 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

   As you previously indicated to me that you will be leaving FCI-Ft. Dix on or about
January 15, 2000, I am plagued with concern as to status of my psychological report.
   You and me spoke numerous times that I will be given an opportunity to review this
report to correct any discrepancies. Since February 1999, or one month shy a year I
have been going through with this torture.
   I've written cop out to you, as well as to Dr. Baruch, yet to no avail. While
I am a private person, I have expressed my apprehension to my work supervisors and
Unit Team staff who have shown genuine concern regarding this matter. In fact, my
work supervisor had sent you a memo detailing my work/conduct and interaction with
staff and inmates. I have also requested of you to make an appointment for me to
speak with Dr. Lee concerning unrelated matters I can't discuss with you -- because
of the report you have to write or already written.
   Dr. Kerr, I do not know if prison staff have concern about prisoners release,
but I assure you that my ill parents are not taking this matter easy. Further, I am
now with the impression that you perhaps wrote an adverse report against me and that is
why you're hesitant to review same with me. As you and I have agreed, I would be
given every opportunity to correct discrepancies before you leave Ft. Dix - to allow
me to correct inaccuracies. I am still reserving the right to review the report and
correct discrepancies.
   Please indicate to me in writing as to when I should expect to review this report.
I do not wish to be transfer for the forensic evaluation until I have the opportunity
to review your report, and upon completion I would like consideration for FCI Butner
to facilitate the eval.       (Do not write below this line) Thank you.

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
|  |  |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 8
and BP-S148.070 APR 94


Printed on Recycled Paper

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 90
U.S. DEPARTMENT OF JUSTICE    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) | DATE |
|---|---|
| Dr. Baruch, Chief Psychologist, FCI Ft. Dix | December 10, 1999 |
| FROM: Latch Toolasprashad | REGISTER NO.: 10975-056 |
| WORK ASSIGNMENT: Laundry Clerk | UNIT: 5802 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

    I spoke with Dr. Kerr on December 7th, who indicated you have been reviewing my Psychological Report. My family's attorney has retained a private mental health consultant to review the report and provide his own assessment. The consultant has asked that the report be forwarded through the attorney as soon as possible to allow enough time for proper preparation on his part -- his schedule is very full and he wants to proceed at once. Moreover, as I have to be temporary transferred to Butner in order to have a BOP evaluation, it is of paramount important that the private consultation report be conducted before said BOP referral is made. I have spoke with Dr. Kerr several months ago regarding this matter and the importance of having his report accomplished; however, for some apparent reason I have been put on the back burner as it appears as though staff have no concern for prisoners freedom.

    I am respectfully requesting your review of my report as soon as possible so that I may have accomplished the private consultation before being sent to Butner. Dr. Kerr informed me that as soon as you complete your review he will have me placed on call out to discuss same.

    Thank you.

cc: Todd Greenberg, Attorney at Law

                    (Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

Printed on Recycled Paper

BP-S148.055 **INMATE REQUEST TO STAFF CDFRM**
SEP 98
U.S. DEPARTMENT OF JUSTICE                           FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) Dr. Kerr, DAP Coordinator | DATE: July 25, 1999 |
|---|---|
| FROM: Latch Toolasprashad | REGISTER NO.: 10975-056 |
| WORK ASSIGNMENT: Laundry Clerk | UNIT: 5802 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

I realize you're quite busy. However, I am requesting that you place
me in your schedule in order to have the report completed. On June 4th, the U.S. Parole
Commission denied me parole, as they did not receive the report on time.

I am requesting of you to please complete this report so that my lawyer could either
try to have the Parole Commission re-open the case, or file a § 2241 habeas corpus in
the court that the Parole Commission open the case, as I was denied parole without the
report being written.

As always, thanks for your time and kind concern.

---

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94



INMATE REQUEST TO STAFF    CDFRM

SEE H.

U.S DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISON

| TO: (Name and Title of Staff Member) | DATE |
|---|---|
| Dr. Kerr, DAP Coordinator, FCI Ft. Dix | 10-28-99 |
| FROM: | REGISTER NO |
| Latch Toolasprashad | 10975-056 |
| WORK ASSIGNMENT | UNIT: |
| Laundry Clerk | 5802 |

SUBJECT. (Briefly state your question or concern and the solution you are requesting
Continue on back, if necessary   Your failure to be specific may result in no action bein
taken. If necessary, you will be interviewed in order to successfully respond to your
request )

I am absolutely emotionally/psychologically tired of "begging" that you write the
long overdue report and close this matter. My pleas and cries obviously is in a spiral-
down mode.

My only concern is that the report be written and written now as more than enough
time has elapse. As per previous agreement, I also request to review the report before
submittal.

I do not know who Dr. Baruch is and I have no intentions of meeting with her on
11-2-99. You have said that you are the writer; then she has nothing to do with writing
the this report. You have stated that Dr. Baruch tells you what kind of reports to
write. Because I have never spoken with Dr. Baruch, her telling you what to write in
my report without having so much as spoken or had consultation me with shall be open for
legal action.

I am not refusing program (code 306) nor am I refusing an order (code 307). However,
should you or any guards order me to make your call out of 11-2-99, I will. Otherwise
I merely have nothing more to be said -- I just want the report written and written
now and be given an opportunity to review same before submittal.
I have a liberty interest and if you have an arbitrary agenda for not writing the
report, as it has been more than enough time, then we shall let the court decide this.

**(Do not write below this line)**

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct
and BP-S148.070 APR 94



BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Warden Beeler | DATE: October 2, 1999 |
|---|---|
| FROM: Latchmie Toolasprashad | REGISTER NO.: 10975-056 |
| WORK ASSIGNMENT: Laundry Clerk | UNIT: 5802 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. if necessary, you will be interviewed in order to successfully respond to your
request.)

_____ First, I would like to note that I have avoided filing this request, because I have
seen how BOP staff retaliate and take adverse actions against prisoners when complaints
are filed. I do not wish for this to happen here.

_____ On November 2, 1998, I appeared before the parole board, at which time my lawyer
requested a post traumatic stress disorder (PTSD) evaluation. The examiner commented on
my exceptional programming and institution adjustment by stated, "If there is something
called a perfect institution record you have it." On December 10, 1998, the parole
commission issued an order directing the BOP to provide the parole commission with a
psychological report by May 1, 1999, before making any changes. Upon receipt of the NOA,
I discussed same with family members and my lawyers before making a request to Psychology
Services.

**CONTINUED ON ATTACHED**

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

On February 2, 1999, I submitted a cop out, along with numerous documents, to Dr. Kerr, requesting that the evaluation be conducted as soon as possible. Thereafter, I went through the evaluation process with Dr. Kerr; however, as of this writing the report is yet to be written and submitted. On June 4, 1999, one month and four days after the deadline for the report, I was subsequently denied parole. Because the report was grossly delayed and never submitted to the Parole Commission as ordered, the Parole Commission made their determination without aid of the report, which would have made a significant and positive influence in gaining the parole as deserved and earned, and I was denied my liberty and freedom. The failure to have the report submitted on time constitutes a liberty interest violation.

My very ill parents, lawyers and the Ambassador of Guyana are patiently awaiting this report that is now five months overdue. I have the community resources and family ties to facilitate a smooth and successful re-entry into the mainstream of of the free world. Moreover, several prison staff have expressed their sincere concern that I be released from prison and move on with my life beyond these prison walls in service to others and as a productive member of society. I have accepted full responsibility for the crime I am convicted of -- I've noted this to Dr. Kerr, to the Unit Team, and to other staff who ask about my case.

I realize Dr. Kerr is quite busy with DAP; but I must point out that the report is five months overdue, and eight months in its workings. I pose absolutely no danger to person or property. I honorably served in the U.S. Army and was wounded in combat. Dr. Kerr noted to me that because of policy procedures he cannot make any recommendations.

After the second session with Dr. Kerr, I expressed my concern about a recommendation and requested same, which he had agreed with. However, thereafter, I was told that because of policy procedures a recommendation could not be facilitated. I beg to differ as staff can indeed make recommendations on my behalf. The case of Harris v. Evans, 920 F.2d 864, 866-67 (11th Cir. 1991) states in pertinent part,

> "Harris alleges that he has asked corrections employees to write letters to the parole board on his behalf, but that the employees have told him that they are prohibited from doing so and fear termination if they violate the department's policy. His complaint, therefore, raises a facial allegation that he has been injured by the Department's policy because it has prevented employees from writing to the parole board on his behalf and implicitly shows that a favorable decision would redress his injury, as the employee would no longer hesitate to write on his behalf for fear of loosing their jobs. We find this injury sufficiently 'distant and palpable' to satisfy the 'case or controversy' requirements of Article III." Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); see e.g., United States v. SCRAP, 412 U.S. 669, 689 n. 14, 93 S.CT. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1973) (Holding that an 'identifiable trifle' is sufficient injury to establish injury to establish standing); Saladin v. City of Milledgeville, 812 F.2d 687, 691 (11th Cir. 1987) (Holding that 'focus is on the qualitative nature of the injury, regardless of how small [it] may be.")

2

"Employee may submit written communication to the warden,
'for his endorsement,' after which they are forwarded to
the parole board. The magistrate and district court
found that this policy suppresses employee speech on
matters of public concerns.  On appeal the defendants
argue that an employee's interest in making a
recommendation to the parole board regarding a particular
inmate is purely a personal matter.  We disagree.  As the
magistrate noted, decisions made by parole boards
regarding the release of convicted criminals into
society are of great concern.  Citizens who comment on
individual parole decisions are offering input on the
working of the ... criminal justice system.  The fact that
the comments are directed to the merits of one particular
inmate's case rather than to general policies of the parole
board does not change their nature as comments on matters
regarding what thypes of prisoners should, or should not, be
paroled."  Harris at 867.

   In my opinion, I have been very patient in regard to teh delay of this report.
Further, as Dr. Kerr indicated to me he cannot make recommendation based on policy
procedures is without standing and must fail, as based on law, Dr. Kerr can indeed
make recommendations and I am requesting a recommendation to be paroled in the
report.  I have spoken with staff concerning this matter and those staff members
have been quite supportive regarding this evaluation and my release efforts.

   While I realize that filing this request may be viewed, perhaps by Dr. Kerr as
offensive, it should not be, and none is intended.  I am only seeking that the long
overdue report be completed with a recommendation that,I be paroled as I pose
no threat to person or property.

   I apologize that I was left with no alternative but to place my concerns in
writing.

   Thank you and please respond.

Respecfully,

Latchmie Toolasprashad

cc:  Dr. Odeen Ishmael, Ambassador
     Todd Greenberg, Attorney
     Ram Panhani, M.D.

3

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                              FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) | DATE: |
|---|---|
| Dr. Kerr, DAP Coordinator | 10-25-99 |
| FROM: | REGISTER NO.: |
| Latch Toolasprashad | 10975-056 |
| WORK ASSIGNMENT: | UNIT: |
| Laundry Clerk | 5802 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

　　　For 10 months you run me around with a report that is based on a liberty interest
that should have taken no more than a few weeks at best. For nearly ½ year, it seems
that you wholly concentrated yourself in the interest of crack/heroin addicts in a
program that everyone know that all graduates are doomed to relapse. Yet a non drug/
alcohol addict veteran as myself obviously have to stand at the back of the line with
your performance of professional duties/conduct.

　　　There is absolutely NO dispute that I begged and pleaded with you to write the
report; however, my pleas and cries fell on deaf ears. I truly believe that you would
do a prisoner right. Unfortunately, my perception have deceived and blindfold my
judgment. While my direct work supervisor, my unit counselors, and other staff have
shown genuine concern regarding the completion of this report, your runaround most

**CONTINUED ON ATTACHED**
(Do not write below this line)

DISPOSITION:

MR. TOOLASPRASHAD ——

　　　I KNOW YOU HAVE MANY QUESTIONS AND CONCERNS RELATED
TO THIS EVALUATION; I WOULD LIKE TO BE ABLE TO TALK
WITH YOU ABOUT THIS AND HAVE ASKED THE CHIEF
PSYCHOLOGIST TO MEET WITH US. I HAVE SCHEDULED AN
APPOINTMENT FOR TUESDAY MORNING 11.02.99 IN PSYCHOLOGY.
I HOPE TO SEE YOU THERE.

Signature Staff Member                          Date
                                                11.26.99



Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

certainly reinforce the tradition of prisoners like myself not trusting staff. While I have a terrific rapport with my unit team staff, work supervisors, and correctional officers, your deliberate, malicious, capricious and knowing runaround most certainly may destroy this too.

The emotional/psychological torture you put me through with your unprofessional runaround, not to mention the useless consultation sessions, has as much use as "teats on a boar hog." The pain and suffering you have put me and my family through is clearly violative of P.S. 3420.09, Standards of Employee Conduct & Responsibility. As the runaround began months ago, I have had countless sleepless nights that is well aware by my family -- as this family confide matters in each other.

In the professional ethics of the medical/psychological profession, the oath according to Hippocrates is to do the patient right at all costs. I know not, however, whether you had considered me a patient or a play-toy.

Since I've already went through the consultation process with you months ago, I am requesting that you prepare the report as soon as possible and provide me an opportunity, as to previous agreement, to allow me to review same.

I hope you can appreciate I have been very patient and now have every reasons to be upset, as I am not asking for any handouts. My liberty/freedom is not something I wish to have you toy with, as it appears as though you have an arbitrary agency rather than rendering whatever succor you may.

My concern and that of my family is simply: my freedom so that I may move on with my life beyond these prison walls that have turned out to be the very concentration camps this country fought Hitler against.

This cop out also places you on notice, as I am extremely tired of the runaround and the emotional/psychological brain torture you have put me through. Moreover, a written response is requested within the five working days allotted for a cop out.

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) | DATE: |
| Dr. Kerr, DAP Coordinator, FCI Ft. Dix | 10-9-99 |
| FROM: | REGISTER NO.: |
| Latch Toolasprashad | 10975-056 |
| WORK ASSIGNMENT: | UNIT: |
| Laundry | 5802 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

In our conversations you indicated that because of policy/procedure you cannot make
recommendation. I would like to note in the cop out to Warden Beeler that case law of the
federal courts specifically address the issue of whether recommendation can be made to the
parole board. The courts have ruled that "YES, recommendations" can be made and/or
welcomed by the Parole Commission.

Also, please note the attached memo dated October 6th, from my work supervisors who
have specifically made a recommendation on my behalf to the Parole Commission.

Therefore, the courts, the parole commission, and BOP staff have recognized the
"importance" of recommendations for "parolable" prisoners, and recommendations can and are
being made in regard to the release of "parolable" prisoners.

As you do have the authority, I am requesting that you please make a recommendation
on my behalf. Surely you recognize the fact that I pose no danger to person or property.

As always, thank you for your time and kind concern.

(Do not write below this line)


DISPOSITION:




| Signature Staff Member | Date |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)                 This form replaces BP-148.070 dated Oct 8
                                                     and BP-S148.070 APR 94



BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Dr. Kerr, DAP Coordinator, FCI N. Dix | DATE: 10-9-99 |
|---|---|
| FROM: Latch Toolasprashad | REGISTER NO.: 10975-056 |
| WORK ASSIGNMENT: Laundry | UNIT: 5802 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

On this date, October 9th, I was visited by my "ill" mother and younger sister.

I am therefore submitting this coo out authorizing you to release information to my

mother Nellie Toolas-Prashad, my brother-in-law Ram Panhani, and sister Baidwattie (Radha)

Toolas-Prashad. Information should not be limited as I waive my Privacy.

As always, thank you for your time and kind concern.

---

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

INMATE REQUEST TO STAFF MEMBER

DATE August 26, 1999

TO: Dr. Kerr, DAP Coordinator

(Name and title of officer)

SUBJECT: State completely but briefly the problem on which you desire assistance, and what you think should be done (Give details).

Thanks for the update on Friday, August 20th. I was recently notified by my family that it is imperative that the report be submitted at your earliest convenience. The reasons surrounding a time frame are as follows:

1. Immediately upon receipt of the report, my lawyers would like to have a private evaluation conducted.

2. The private practitioner leaves New York the last week of September for Florida, where he shall reside for several months for the winter. If the report is not submitted within a time frame prior to his departure, it will cost my already burdened family, several thousands of dollars to have this person

(Use other side of page if more space is needed)

return from Florida to do the evaluation.

3. The Ambassador of Guyana, Dr. Odeen Ishmael, wishes to have a copy of the report, which my lawyer will provide to the Ambassador, in order for Ambassador Ishmael to use.

I do realize that you're quite busy with the DAP Program, but please squeeze me in to your schedule at your earliest convenience so that this evaluation could be submitted so that I may proceed with my private evaluation.

As always, thanks for your time and kind concern

NAME: Latch Toolasprashad _____    No.: 10975-056

Work assignment: Laundry Clerk _____    Unit: 5802

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

DISPOSITION: (Do not write in this space)    DATE _____

Officer _____

Original - File
Canary - Inmate

BP 148(55)
m

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

INMATE REQUEST TO STAFF MEMBER

DATE ___February 7, 1999___

TO: _Dr. Kerr, Psychology Services_
(Name and title of officer)

SUBJECT: State completely but briefly the problem on which you desire assistance, and what you think should be done (Give details).

_____ This cop out serves as a request for help.

On November 3, 1998, I appeared before the Parole Board, held in the Education Building. Present was my very "ill" mother (my father is too ill to travel), my older brother, my lawyer, and the Consul General of Guyana. The attached Notice-of-Action (NOA) was recently given to me. Prior to submitting this cop out, I discussed this matter with my family and lawyer. After my family met with my lawyer, on February 4th my mother and younger sister visited me to discuss this matter.

Prior to appearing before the parole board, upon "my" request INS lodged a detainer for deportation. This was done xxxxxxxxxxxxxxxxxxxxxxxxxx voluntary by myself as I shall leave the country when released.

At the November 3d hearing, the Parole Examiner commented on my exceptional programs and conduct. It was requested by my lawyer that a current psychological examination be conducted concerning PTSD. Upon receipt of the NOA the following psychological examination was ordered by the Parole Board:
1. If I was competent at the time of the crime
2. If I am mentally ill or pose any danger to persons or property

_____ Cont'd on Attached _____

NAME: ___Latch Toolasprashad,___ _(signature)_          No.: _10975-056_

Work assignment: ___Laundry___          Unit: _5802_

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

DISPOSITION: (Do not write in this space)          DATE _____

Officer _____

Original – File
Canary – Inmate

BP-148S5

Please note the completed report must be received by the U.S. Parole Commission by May 1, 1999 for a re-hearing and to obtain a release date.

For your review, please find enclosed the following:

1. Most current progress report dated August 16, 1998
2. Program involvement since arrival at Ft. Dix (arrival date 9/9/98). Five courses have been completed in this short period, while currently enrolled in two more. Also, I instructed the first ACE Science course, Introduction to Biology, for the Education Department, of which Warden Beeler attended seven of 12 classes.
3. Various certificates and letters of commendation concerning conduct, programs, and overall demeanor (NOT all inclusive).

I was convicted of aiding & abetting of first degree murder (a love-relationship went bad). However, please note I was found guilty of aiding & abetting to the above crime and not the actual crime.

During my confinement, I have never posed any harm to anyone. I have been, however, severely punished with a long prison sentence. Unfortunately, my ill parents have been suffering over the years as my predicament has taken its toll on them.

I am seeking an accurate assessment so that I may resume my life beyond these prison walls.

I would appreciate if I could be scheduled to have this evaluation accomplished as soon as possible. Prior to my re-hearing my lawyer has decided that he will also have a private psychologist conduct an assessment. In order to allow sufficient time for the private psychological examination to be properly conducted and the report to be written the BOP report has to be in first. The private psychologist's calander is booked tight and he must travel from out-of-state.

Thanks for your kind concern.

Respectfully,

Latch Toolasprashad

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| 1. Name and Title of Staff Member) | DATE: |
| --- | --- |
| Mr. Allen, Laundry Foreman | 2-22-99 |
| 2. TO: | REGISTER NO.: |
| Latch Toolasprashad | 18975-056 |
| WORK ASSIGNMENT: | UNIT: |
| Laundry Clerk | 5602 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Last Friday after work I ran into Mr. Kerr from Psy Svcs. While speaking with Mr. Kerr I mentioned to him that I spoke with you concerning my upcoming evaluation and your offer to write a memo to him about my work and conduct.

I am requesting that you please write a memo to Mr. Kerr concerning my work and conduct.

Thanks for your kind concern.

(Do not write below this line)

DISPOSITION:

I will prepare a memo documenting your work and conduct, and forward it to Dr. Kerr in psychology within the next week.

**EXHIBIT 5**

| Signature Staff Member | Date |
| --- | --- |
| | 2/22/99 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94



UNITED STATES GOVERNMENT

# memorandum

Federal Correctional Institution
Fort Dix, New Jersey

DATE: February 25, 1999

REPLY TO
ATTN OF: John B. Allen, Laundry Foreman

SUBJECT: TOOLASPRASHAD, Latchmie #10975-056

TO: D. Kerr, Ph.D., Staff Psychologist

Inmate Toolasprashad (Latch) indicated to me that the Parole Board requires
a psychological report based on his parole hearing conducted on November 3,
1998. I have directly supervised his work while in the Laundry Department
and am writing this memo concerning his interaction with staff and inmates,
work and conduct.

Latch is presently assigned to the Laundry as my clerk. He has proved to
be an outstanding worker and is considered a valued asset by this
department. While I desperately needed a good clerk prior to him coming to
work for me, I had not expected to obtain a clerk who was also a diligent
worker, as he proved to be both.

The nature of the Laundry clerk position requires good communication and a
cooperative attitude, as the clerk often acts as a direct liaison between
the the inmates requesting clothing and staff. In my opinion he
communicates professionally with staff and inmates. Also, his
organizational skills and abilities have been a great enhancement to the
effective operation of the Laundry. For example, Latch has assisted with
organizaing and cataloging the large inventories of supplies within the
department, and he has made a number of suggestions that have added
efficiency to our daily operations.

Beside his duties with clerical work, Latch has assisted with stripping
the Laundry floor of wax that accumulated for almost three years, and
assisted in accomplishing an excellent job waxing too. He "voluntarily"
comes to work an half-hour early   in the morning and an hour earlier than
required after lunch.

Based on my observations he has never been a management problem, has
required little to no supervision, and has never demonstrated any aggression
towards anyone while working throughout the day at the Laundry. He works
very well with staff and inmates.

Inmate Toolasprashad's positive attitude and conduct is commendable. Based
on his work performance and conduct I would readily recommend that he be
considered for any benefits available to him towards his parole.

OPTIONAL FORM NO. 10
(REV. 1-80)
GSA FPMR (41 CFR) 101-11.6
5010-114

*Given to Inmate*
*10/17/00*
*M Bond*
*100*

Psychological Evaluation
Federal Correctional Institution-Petersburg
Petersburg, Virginia

Name: Latchmie Toolasprashad
Registration Number: 10975-056
Date of Birth: September 7, 1963

Marital Status: Single
Gender: Male
Dates of Evaluation: June 23
through July 11, 2000

Purpose of the Evaluation
The Parole Board requested a psychological evaluation for Mr. Toolasprashad's parole hearing.

Assessment Instruments and Evaluative Procedures
Clinical Interview
Wechsler Adult Intelligence Scale-Third Edition
Incomplete Sentences Blank
Bender Visual Motor Gestalt Test
Presentence Investigation Report

Background Information
Mr. Toolasprashad is a 36 year old male of Asian-Indian descent. He is currently serving a life sentence for Aiding and Abetting in a Murder. He is originally from Guayana, South America and is the fifth born of six children. At the age of 14, he and has family moved to the United States where he eventually graduated from high school and joined the military in 1981. While incarcerated, Mr. Toolasprashad completed the requirements for a Bachelor of Science degree which he obtained from Park College in Parksville, Missouri in 1993.

Mr. Toolasprashad denied a family history of mental illness, physical or sexual abuse, violence or substance use. Mr. Toolasprashad also denied a history of substance abuse or use. His self report, however, contradicts information presented in the Pre-Sentence Investigation (PSI) report. According to the PSI, Mr. Toolasprashad reported drinking excessively while stationed in Europe in 1992 and he also reported using cocaine on at least one occasion. According to a United States Government Memorandum dated March 1, 2000, Mr. Toolasprashad reported a history of problem alcohol use on an application for a residential drug program dated September 10, 1998.

In terms of mental health history, Mr. Toolasprashad received a competency evaluation from FCI Butner in April, 1986 and a competency and sanity evaluation from FMC Rochester in October, 1986. While being evaluated at FCI Butner, Mr. Toolasprashad reported feelings of sadness, difficulty sleeping, weight loss and poor appetite. He was prescribed Sinequan and Elavil, both anti-depressant medications. During this evaluation period, Mr. Toolasprashad also reported auditory and visual hallucinations instructing him to isolate and kill himself. He attempted suicide by overdose of anti-depressant medications on April 6, 1986. At the conclusion of the evaluation period, it was determined that Mr. Toolasprashad was unable to adequately assist in his own defense and was found incompetent to stand trial. His diagnoses were Probable Paranoia, rule out Schizophrenia, Paranoid type and a Compulsive Personality Disorder.

*Exhibit 6*

Name: Latchmie Toolasprashad                                                                                2
Registration Number: 10975-056
Date of Birth: September 7, 1973

On July 3, 1986, Mr. Toolasprashad was admitted to FMC Rochester for a competency and sanity evaluation. At some point during his evaluation, Mr. Toolasprashad was placed under continuous suicide watch after large doses of medication were confiscated from his possession. At that time, Mr. Toolasprashad was described as a "chronic suicide risk" given his recent attempt at FCI Butner and his self-report and unverified multiple suicide attempts in the past. During this evaluation period, it was deemed that Mr. Toolasprashad was attempting to be deceptive in his report of auditory and visual hallucinations and possibly his self-report of depression. Mr. Toolasprashad was prescribed anti-psychotic medications which did not result in a decrease in his reported hallucinations. In addition, a medical examination revealed that Mr. Toolasprashad had gained weight during a period of time when he claimed to be too depressed to eat and had not eaten in 4 days. At the conclusion of his evaluation period at FMC Rochester, Mr. Toolasprashad was deemed competent to stand trial, sane at the time of his alleged offense and sane at the time of the evaluation. His diagnosis was Mixed Personality Disorder with Narcissistic and Antisocial features.

Mr. Toolasprashad did not have any criminal justice involvement prior to his current offense. In terms of his offense, Mr. Toolasprashad repeatedly stated during this evaluation that he accepts full responsibility for his actions, even though he acknowledged he did not commit the crime for which he is currently incarcerated. He stated that accepting responsibility for the crime will help him secure parole. In spite of Mr. Toolasprashad's verbal acknowledgment of responsibility for the crime, his version of the offense differs from the official report on several key points. For example, Mr. Toolasprashad reported that he had broken off the relationship with the victim because she was seeing other individuals while they were dating. In addition, he claims that he did not know his co-defendant prior to the offense. He reported intervening in a domestic dispute between the victim and his co-defendant after witnessing the victim being verbally and physically abused and threatened with the loss of her life. Mr. Toolasprashad further alleges that he was threatened with bodily harm by his co-defendant if he continued to intervene in their domestic dispute.

According to the official report, Mr. Toolasprashad was introduced to his co-defendant at a party held by mutual friends. Mr. Toolasprashad was angry with the victim because she had repeatedly rejected his proposals for marriage and her decision not to be romantically involved with him. On the next day, Mr. Toolasprashad approached his co-defendant with the idea of killing the victim. Mr. Toolasprashad offered to pay his co-defendant $20,000 and to buy him a new car to kill the victim. On December 13, 1985, Mr. Toolasprashad, in the company of his co-defendant, purchased a shotgun, ammunition, a hacksaw and a file. On December 14, 1985, Mr. Toolasprashad went to a local automobile dealership where his co-defendant had chosen a car and contacted his bank and a family member about money. Mr. Toolasprashad gave instructions to his co-defendant on how to carry out the murder. The victim was shot with a sawed off shotgun on December 15, 1985 and died on December 16, 1985.

While in the military, Mr. Toolasprashad was charged with impersonating a Criminal Investigations Division Agent, Impersonating an Officer, Forgery, Soliciting another to Commit an Offense and Falsifying Official Documents. He received a non-judicial action which resulted in a loss of pay for two months and a reduction in military rank. He allegedly committed these acts to impress the victim

Name: Latchmie Toolasprashad
Registration Number: 10975-056
Date of Birth: September 7, 1973

3

with hopes that she would marry him. After discovering his deception, the victim discontinued the relationship and allegedly disclosed to friends and military personnel that she was "afraid" of Mr. Toolasprashad. Prior to this non-judicial action by the military court, Mr. Toolasprashad had served in the military for 4 years and received numerous commendations for his work ethic and job performance. He reported receiving training in a variety of areas and being familiar with several types of firearms.

Over the course of the past fifteen years as a federal prisoner, Mr. Toolasprashad has received superior ratings from his supervisors and recommendations for superior programming, additional good time and parole. He has worked as a volunteer, taught classes and saved the lives of two inmates. In terms of disciplinary actions, Mr. Toolasprashad received four disciplinary actions for refusing to obey an order, being insolent to staff (2) and lying or falsifying statements.

### Behavioral Observations

Mr. Toolasprashad was cooperative throughout the evaluation. He voluntarily submitted documentation of his work evaluations, certificates of completed training and accommodations received while in the Army and the Bureau of Prisons. During the course of the evaluation period, he insisted that his evaluation should be a priority of the psychology department. In one instance, he presented paperwork suggesting his evaluation needed to be completed prior to a trial date scheduled for July 6, 2000. Upon examination of the documents, it was determined that the scheduled court date was for a matter entirely unrelated to this evaluation.

According to information received from the Unit team at FCI Petersburg, Mr. Toolasprashad verbally confronted members of his Unit team and threatened to file a complaint because the team did not have all of the documentation he deemed necessary, in his Bureau of Prison (BOP) file. According to his Case Manager, Mr. Toolasprashad questioned her understanding of BOP policy regarding being seen by his unit team. Mr. Toolasprashad insisted that he was not required to meet with team members as a matter of policy.

Mr. Toolasprashad appeared to put forth good effort and demonstrated good frustration tolerance on all tasks. He was self critical when he failed to perform at his expected level and often verbalized excuses for not performing well such as "I am tired"; " I did not sleep well last night"; and "I did not expect this type of test in my evaluation" He did not perform well on timed tasks and approached most tasks at a slow and deliberate pace. His self criticism continued in spite of repeated reassurances from the examiner.

### Mental Status

Mr. Toolasprashad arrived on time for all of his scheduled appointments. He was dressed and groomed appropriately. He was oriented to time and place, communicated in a logical and coherent manner and did not appear to be responding to any internal stimuli. His mood was neither significantly elevated or depressed. He denied any thoughts of harming himself or another individual.

Name: Latchmie Toolasprashad
Registration Number: 10975-056
Date of Birth: September 7, 1975
                            1963

4

Test Results

On a commonly used test of intellectual functioning, Mr. Toolasprashad performed at a level suggestive of low average intellectual functioning. His overall intelligence quotient was 82. His verbal intelligence quotient was 87 and his performance intelligence quotient was 79. The difference between his verbal and performance levels is not significant. Mr. Toolasprashad's performance on this intelligence test was consistent with previous intellectual testing on forensic evaluations completed in May and October of 1986.

Mr. Toolasprashad's performance on the verbal subtests suggests that understanding and identifying the relation between verbally presented objects and behaviors is an area of relative weakness for him. In regards to his scores on the performance subtests, his ability to recognize similarities between visually presented stimuli is an area of relative strength for him. Given his level of education and work experiences, it appears as if Mr. Toolasprashad has worked hard to compensate for his intellectual deficits and is able to communicate and present himself in a manner suggestive of a higher level of intellectual functioning.

Mr. Toolasprashad's performance on a neurological screening did not indicate the presence of any organic impairments. His performance on the memory portion of the test was at the lower end of the average range.

Mr. Toolasprashad's performance on an objective measure of personality is thought to accurately reflect his personality functioning and is not suggestive of any form of significant psychological impairment. His profile suggests he has a tendency to minimize any form of mental distress, is likely to manifest mental distress in the form of physical complaints and to present himself in a favorable manner. Given the nature and the importance of this evaluation, this type of presentation is not unusual and is consistent with his behaviors since his incarceration. For example, Mr. Toolasprashad voluntarily submitted copies of documents he deemed important to be included in the report, he was complimentary towards the examiner and the psychology department and sought volunteer employment opportunities at FCI Petersburg.

Individuals whom obtain personality profiles similar to Mr. Toolasprashad's are generally described as egocentric and narcissistic. These individuals typically resort to indirect and devious means to gain attention and affection, do not express resentment or hostility directly and are superficial and lack maturity in interpersonal and romantic relationships. These individuals are also described varied interests and may find enjoyment in non-traditional employment and recreational activities

Consistent with the objective personality testing, his performance on projective testing does not suggest the presence of any psychotic or significant mental health problems. His projective themes centered around feelings of self blame, regret, responsibility and the importance of family. His responses were not unusual given the circumstances and the importance of this evaluation to him

EXHIBIT 4

Name: Latchmie Toolasprashad
Registration Number: 10975-056
Date of Birth: September 7, 1973

5

## Diagnostic Impression

Based on the information gathered during the course of this evaluation and the diagnostic criteria set forth in the <u>Diagnostic and Statistical Manual-Fourth Edition,</u> Mr. Toolasprashad received the following diagnosis:

| | |
|---|---|
| Axis I: | No Diagnosis |
| Axis II: | Narcissistic Personality Disorder |
| Axis III: | None |

## Prognosis

Individuals with a diagnosis of Narcissistic Personality Disorder, are typically sensitive to criticism, defeat or rejection and display grandiose behaviors. The feelings associated with criticism, defeat and rejection are generally referred to as narcissistic injuries. They tend to react with disdain, rage or defiant counterattack. These experiences either lead to social isolation or a mask of humility which may mask and protect the grandiosity. Interpersonal relations are typically impaired due to problems derived from entitlement, the need for admiration and the relative disregard for the sensitivities of others. Long term feelings of shame or humiliation and the attendant self-criticism may be associated with social withdrawal and/or depression. Personality disorders are long term, enduring, characterological deficits in functioning that are present in a variety of context and whose onset can be traced to adolescence. Individuals diagnosed with a personality disorder generally have an unpredictive outcome. For example, these individuals generally experience difficulties maintaining employment and establishing and maintaining relationships.

## Assessment of Dangerousness

It is difficult to predict future dangerous behaviors. However, the best predictor of future dangerous behavior is previous dangerous behavior. An assessment of dangerousness or risk should include an evaluation of the individual's propensity to commit future acts that would endanger the public and/or themselves. Among the factors most salient to a reoccurrence of an individuals past behaviors which place him at a greater risk of dangerousness are demographic factors, past acts of aggression, serious mental illness, denial or lack of insight into the mental illness, psychopathy, substance abuse, use of a weapon and lack of compliance with medication/treatment.

Among the factors that suggest Mr. Toolasprashad is least likely to present as a danger to the public or to himself is his age, ethnicity, lack of past physically aggressive behaviors, lack of serious mental illness diagnoses, lack of the previous use of a weapon and his behaviors while incarcerated. All of these factors have been associated with a low risk for dangerous behaviors. Individuals within certain age and ethnic groups are least likely to present as dangerous to themselves or society. Mr. Toolasprashad is in his mid 30's and is of Asian-Indian descent. Both of these factors place him within a group of individuals who are least likely to engage in dangerous behaviors.

Mr. Toolasprashad's personality profile presents the greatest area of concern in terms of future dangerous behavior. He initially presents as helpful, engaging, eager to please and trustworthy. He attempts to establish relationships with people whom he perceives as being on a level similar to his

Name: Latchmie Toolasprashad
Registration Number: 10975-056
Date of Birth: September 7, 1973

own and who can appreciate his unique talents and abilities. He may expend a great deal of time and energy in developing these relationships and may put forth similar efforts to maintain these relationships. His initial presentation will be consistent until he feels that his efforts are unappreciated or that the recipient of his efforts is critical or no longer worthy of his effort. At this time, Mr. Toolasprashad may exhibit a haughtiness or arrogance not previously seen which will be the result of an actual or perceived slight, rejection or criticism. His manner of responding to the actual or perceived slight, criticism or rejection will be to either internalize or externalize the emotional pain. If the slight, rejection or criticism is internalized, he may present as depressed or anxious. If the slight, rejection or criticism is externalized, the likelihood of future dangerous behavior increases. It is important to note, that the probability of Mr. Toolasprashad being the perpetrator of any behavior likely to harm another is minimal. His involvement may be limited to the planning and design of the act with another individual actually executing the plan.

<u>Summary and Recommendations</u>
Mr. Toolasprashad is a 36 year old man convicted of Aiding and Abetting in a Murder. He has not presented as a problem inmate over the course of the past 15 years and has programmed well. Of all the factors associated with an increased risk of future dangerousness, it is his diagnosis of Narcissistic Personality Disorder that presents with the most concern. The tendency of individuals diagnosed with this type of personality disorder to indirectly respond to being slighted or rejected in sometimes inappropriate means is a concern.

All things considered, Mr. Toolasprashad is not believed to personally be at great risk of future dangerousness. He is most likely to respond in non-lethal means and if the situation calls for further responses, he is likely to enlist the help of another in order to initiate more lethal responses. He will enlist the help of an additional individual to keep himself from engaging in behaviors deemed "below" someone of his capacity.

Irrespective of whether Mr. Toolasprashad receives parole, it is highly recommended that he participate in some form of anger management and assertiveness skill training. Participation in these programs may help him to directly express his frustration and anger in a more socially acceptable manner and may help to lessen the likelihood of future dangerousness to himself and to others.


Kendra L. Pugh, Psy.D.
Clinical Psychologist


Jamie D. Berry, Ph.D.
Psychology Intern

MMPI
Questions,

4
12
13
15
19

30
40
43
53

72
87 (parole)
95 (not in prison)

117 (military injury)
122
130
133 (= dlas)
137
140
154 (parachute)
196 (parole)
211 (Religion)
219 (prison)
224 (physical
pain)

266 (current case)

353 (All events)

433
494 (?) i
515 (3)
526

EXHIBIT 7

DANIEL W. SCHWARTZ, M.D., L.F.A.P.A.

DIPLOMATE, AMERICAN BOARD OF
FORENSIC PSYCHIATRY

949 CENTRAL AVENUE, SUITE 205
WOODMERE, NEW YORK 11598
(516) 295-2779

July 25, 2001

Todd D. Greenberg, Esq.
Addabbo & Greenberg
118-21 Queens Blvd., Suite 306
Forest Hills, NY 11375

Re: LATCHMIE TOOLASPRASHAD
No. 10975-056

Dear Mr. Greenberg:

At your request I have performed a psychiatric examination on this 37-year-old man to evaluate his emotional suitability for being released on parole.

He has been convicted of Aiding and Abetting in Murder, in that he arranged for the shotgun murder of SP4 Beverly Ann Dozler at Ft. Bragg on December 15, 1985. After pleading guilty, he was sentenced to 30 years to life and is currently being considered for parole.

Mr. Toolasprashad was examined on July 20, 2001 at Ft. Dix for a total of 4 hours. In addition, I conferred at length with his older brother, Surg.

I have also studied various case material, including:

1. Psychiatric report of Dr. Daly (Fayetteville, NC), dated 3/5/86
2. Psychiatric and psychological report of Drs. O'Brien and Hilkey (FCI Butner), dated 4/29/86
3. Psychological report of Dr. Echols (FMC Rochester), dated 10/17/86
4. Psychological report of Dr. Berry (Petersburg, VA), dated July, 2000, and
5. Various documents, including positive reports by his supervisors and counselors, and FCI Progress Reports, dated 5/6/2000 & 6/1/01

SIGNIFICANT PAST HISTORY: Mr. Toolasprashad was born on September 7, 1963 in Guyana, South America and raised in an intact family. He is one of six children, with two brothers and three sisters, all of whom live in reasonable proximity and are emotionally close. The entire family immigrated in May 1979. His parents, in their 60's, are not well physically, and currently reside with one of his brothers.

A-39    EXHIBIT 8

LATCHMIE TOOLASPRASHAD                                July 25, 2001

In 1981, about three months after graduating high school, Mr. Toolasprashad enlisted in the Army, feeling that he owed something to this country and hoping for an education towards a career. To this end, he served as a combat medical specialist. Eager to enter the Uniformed Service School of Health Services following his discharge from service, he applied for citizenship but missed the scheduled naturalization date because he was in the field.

In 1983 he saw action in Grenada, caring for the wounded amidst the death of 19 American soldiers. He has a particularly vivid memory of seeing the body of an infantryman who had been cut to pieces in a helicopter crash. The next year he reenlisted and was involved in covert action in Central America, an experience that he describes as "very scary." In March 1985, a fiery helicopter crash at Ft. Bragg took the lives of all 11 men; almost all the bodies were severely burned, and the two pilots had been very close friends of his.

Mr. Toolasprashad may well have suffered a Posttraumatic Stress Disorder, feeling "torn to pieces" at the time and experiencing subsequent nightmares of this aircraft and the bodies burning. Reportedly, the Army psychiatrist from whom he sought help dismissed him, telling him that he should be able to handle it himself.

At the time he was still seeing Beverly. She, however, was also of no emotional help, looking up to him as a strong leader and insisting that he could cope with the stress. "She never gave me the comfort and reassurance I needed." Soon enough he terminated the relationship. Reportedly, it was the fury of a woman scorned that led to his premature honorable discharge from the service shortly before the present offense.

MENTAL STATUS: On examination Mr. Toolasprashad shows no indication of psychosis or even mental illness. He is fully alert and quite cooperative. He is a good historian, with no evidence of organic mental illness. His statements are always responsive, coherent and relevant, with no suggestion of delusions, hallucinations or otherwise disordered thinking. He is initially resentful of the fact that it has taken ten months for this examination to be allowed, but once he has ventilated such understandable feelings his mood is best described as neutral. His display of feelings is of normal intensity and always appropriate.

In regard to the present offense, he makes it perfectly clear that he feels responsible for what happened. No discussion of the facts leading up to the crime relieves him of any responsibility.

DIAGNOSIS:          No Mental Illness
                    No Personality Disorder
                    No Physical Disorder

2

LATCHMIE TOOLASPRASHAD                                     July 25, 2001

**RECOMMENDATION**: It is respectfully recommended to the Court that, from a psychiatric point of view, it would be most appropriate to release Mr. Toolasprashad on parole.

**DISCUSSION**: For over 26 years I was the director of a forensic psychiatry service that examined thousands of criminal defendants a year. As such I myself have probably seen over a thousand murderers, and have necessarily had to pass judgment as to their dangerousness. I have often rendered pre-sentence recommendations, and have also examined many psychiatric patients who have been found not responsible because of mental illness (NGRI) as to possible release; in both cases, the most important question is their dangerousness.

There is nothing in my examination (or that of Dr. Berry's a-year ago) that suggests any risk to the community. There are no paranoid, grandiose or vengeful thoughts or feelings. What happened in this case was between two people, and there is no indication that Mr. Toolasprashad represents a danger to anyone else on Earth.

(With all due respect to Dr. Berry's diagnosis of Narcissistic Personality Disorder, the findings he reports on the psychological tests he administered do not seem consistent with a *personality disorder*. Such a problem, by definition, "leads to clinically significant distress or impairment in social, occupational, or other important areas of functioning," [Diagnostic and Statistical Manual – Fourth Edition, p. 633.] and the prison records show just the opposite. Dr. Berry himself writes that Mr. Toolasprashad's test performance "is not suggestive of any form of significant psychological impairment" [p. 4]).

Beyond my examination is the record of Mr. Toolasprashad's behavior, both before and subsequent to the present offense. As far as we know, there has never been another act of violence, or even a threat of violence. Most experts in forensic psychiatry consider one's history, or absence, of violent behavior as the best basis for predicting the future – and here his past performance is exemplary. He has been repeatedly noted to have made "outstanding progress" in the Federal Bureau of Prisons, to have maintained "an above-average rapport" with the staff, and to have been no management problem.

Nor is there any indication that psychiatric treatment or psychotherapy need be a condition of parole. If Mr. Toolasprashad is released from prison, he will probably be deported because of lack of citizenship. In that case, his brother, a bachelor, informs me that he will return to Guyana with him, to spare him the anguish of being completely separated from his entire family. Otherwise, if he is allowed to remain in this country, he can live with his brother and their parents, and one of his brothers-in-law, a physician, will provide employment.

3

**LATCHMIE TOOLASPRASHAD**                              July 25, 2001

     In conclusion, there is every indication that if Mr. Toolasprashad is released, he will be a law-abiding, safe and productive member of the community.

Sincerely yours,

*Daniel W. Schwartz*

DANIEL W. SCHWARTZ, M.D.
Assoc. Professor (Ret.), Psychiatry
    State University of New York
    Health Science Center at Brooklyn
Director (Ret.), Forensic Psychiatry
    Kings County Hospital Center



8'

16'

BUNKS
(2 BEDS)

TWO LOCKERS

4'

2'

TWO LOCKER

BUNKS
(2 BEDS)

2' 6½'

BUNKS
(2 BEDS)

TWO LOCKERS

15-6
= 11

Inoperable Toilet

Inoperable Sink

THIS IS SQUARE FEET
ALSO INCLUDES APPROXIMATELY
4 SQUARE FEET FOR THE
INOPERABLE TOILET, AND AN
ADDITIONAL 2 SQUARE FEET
FOR THE INOPERABLE SINK,
SO 4 + 2 = 6 - 15 = 11 SQ'

NOTE:   THERE IS APPROXIMATELY 30 SQUARE FEET
OF MOVING SPACE FOR 6 PRISONERS

NOT DRAWN TO SCALE

DATE:
8-13-2000

EXHIBIT 9



# CERTIFICATE

## Workshops for Training In Nonviolence
### Alternatives to Violence Project/New Jersey

Awards this Certificate to

_H. Joolasprashad_

Who has satisfactorily completed the Advanced Course in
Nonviolent Conflict Resolution

May 29, 2001
Date

Lead Trainer

Facilitators

EXHIBIT 10

# Certificate

Workshops for Training In Nonviolence

Alternatives to Violence Project / New Jersey

Awards this Certificate to

**L. Toolasprashad**

Who has served as a facilitator in a Basic Course in
Nonviolent Conflict Resolution

4/26/2001
Date

_Facilitators_

_Facilitators_



# About Transforming Power

## GUIDES TO TRANSFORMING POWER

1. Seek to resolve conflicts by reaching **common ground**.

2. **Reach for that something in others** that seeks to do good for self and others.

3. **Listen.** Everyone has made a journey. Try to understand where the other person is coming from before you make up your mind.

4. **Base your position on truth.** Since people tend to seek truth, no position based on falsehood can long prevail.

5. Be ready to revise your position if you discover it is not fair.

6. When you are clear about your position, **expect to experience great inward power to act** on it. A response that relies on this power will be courageous and without hostility.

7. Do not expect that this response will automatically ward off danger. If you cannot avoid risk, **risk being creative rather than violent.**

8. **Surprise** and **humor** may help transform.

9. Learn to **trust your inner sense** of when to act and when to withdraw.

10. **Work** towards new ways of overcoming injustice. **Be willing to suffer** suspicion, hostility, rejection, even persecution if necessary.

11. **Be patient and persistent** in the continuing search for justice

12. **Help build 'community'** based on honesty, respect and caring.

## HELP ALONG THE WAY

- Build your own self-respect.
- Respect and care about others.
- Expect the best.
- Ask yourself for a non-violent way. There may be one inside you.
- Pause--give yourself time--before reacting. It may make you open to transforming power
- Trust your inner sense of what's needed.
- Don't rely on weapons, drugs or alcohol. They weaken you.
- When you have done wrong, admit it, make amends if you can, so that you can forgive yourself, then let it go.
- Don't threaten or put down.
- Make friends who will support you. Support the best in them.
- Risk changing yourself.

## WHAT IT FEELS LIKE

- The transforming power experience feels like:    AHA !!!!!
- There is a spirit of caring.
- There is a letting go of something. (Patterns? Grudges?)
- There is a sharing of something.
- You feel right about it.
- You lose your fear if you had any.



# Certificate

### of

## Achievement

this certifies that

## Latchmie Toolasprashad

has satisfactorily completed

Men's Issues

consisting of 20 hours of training at F.C.I. Fort Dix, N.J.

December 12, 2000

Lisa Myers, Counselor /Advisor

Mike Carroll, Unit Manager

EXHIBIT 11

Case 1:06-cv-01183-RSH   Document 2-2   Filed 12/13/2006   Page 46 of 106



# Certificate

## of

## Appreciation

awarded to

# Latch Toolasprashad

for his dedication and most generous contribution as a
Facilitator of Men's Issues for the past one year
at F.C.I Fort Dix, New Jersey.

March 14, 2002

_R.J. Whitenour, Unit Manager_

_L. Reyes, Counselor/Mentor_

# Certificate

## of

## Achievement

this certifies that

## Latchmie Toolasprashad

has satisfactorily completed

Anger Management

consisting of 20 hours of training at F.C.I. Fort Dix, N.J.

January 30, 2001



_____
Mike Carrol, Unit Manager

_____
Counselor/Mentor

EXHIBIT 12

# ANGER MANAGEMENT

Participants in the Anger Management group learn necessary tools for self-control of aggression and how to become aware of personal choices to help in dealing constructively with stressful situations. Topics include anger triggers, awareness, coping skills and forgiveness.

The Anger Management group further assists the individuals in understanding the decisions and choices they have made. Additionally, it helps them to develop an awareness of the discussion making process and the implications of their choices, relationships, communication, improvements, self-esteem, overcoming male myths, the absence of male role models relating to woman and men, learning to support both woman and men in everyday life.



# Certificate
## of
## Appreciation

awarded to

## L. Toolasprashad

for his most generous contribution as a
Facilitator for Anger Management
at F.C.I. Fort Dix, N.J.

Luis Reyes, Counselor/Mentor                    Mike Carol, Unit Manager

April 3, 2001

# Certificate of Accomplishment

*Awarded to*

## Latch Toolasprashad

*FOR SUCCESSFULLY COMPLETING THE
MENTORING PROGRAM*

*AT FORT DIX, NEW JERSEY
ON THIS THE 10TH DAY OF APRIL 2000*



_____
LUIS REYES, COUNSELOR / MENTOR

_____
JOHN HARRINGTON, UNIT MANAGER

EXHIBIT 13



# Certificate

## of

## Appreciation

awarded to

# L. Toolasprashad

for his generous contribution as a
Facilitator for the Mentoring Program
at F.C.I. Fort Dix, N.J.



Luis Reyes, Counselor/Mentor          Dale Carroll-Unit Manager

March 19, 2001



# Certificate

## of

## Appreciation

awarded to

## L. Toolasprashad

for his generous contribution as a
Facilitator for the Mentoring Program
at F.C.I. Fort Dix, N.J.



Luis Reyes, Counselor/Mentor        Mike Carroll, Unit Manager

March 19, 2001



# Certificate

## of

## Appreciation

awarded to

## Latch Toolasprashad

for his dedication and most generous contribution as a Facilitator of the Mentoring Program for the past two years at F.C.I Fort Dix, New Jersey.

March 14, 2002

R.J. Whritenour, Unit Manager   L. Reyes, Counselor/Mentor

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

FEDERAL CORRECTIONAL INSTITUTION FORT DIX
P.O. BOX 5000
FORT DIX, NEW JERSEY 08640

November 15, 2002

Mr. Latch Toolasprashad:

I would like to congratulate you for your successful completion of the 500-hour Residential Drug Abuse Program, at FCI Fort Dix, New Jersey, on November 15, 2002!   Hard work and dedication remained essential elements of your program.  As you are aware, the 500-hour program is based on the philosophy of participants assuming personal responsibility for their individual behavior despite the influence of environmental conditions and circumstances.  The program works to equip participants with the cognitive, emotional, and behavioral skills necessary to choose and maintain a drug-free and crime-free lifestyle.

The biopsychosocial model of treatment emphasizes comprehensive lifestyle change as the key to treatment success.  We focused on issues such as physical well-being, family relationships, relapse prevention, abstinence, negative thinking, and transitional services.  Through individual and group counseling sessions, you were given the opportunity to gain awareness of the negative consequences of your previous thinking/behavior patterns and learned how to develop alternative skills.

I am sure there are times when it wasn't easy and perhaps you wanted to quit.  But you succeeded and now possess the tools necessary to live your life and to be there for your family and loved ones.  Remember what you have learned and apply it often.  You have worked too hard to give yourself any less.  On behalf of all of the RDAP staff at this institution, I congratulate you and wish you well in all your future endeavors!

Sincerely,

Maryann Bowman, M.S.
Drug Treatment Specialist

Cordella Malloy, Ph.D.
Residential Drug Abuse Program Coordinator

EXHIBIT 14



# Federal Bureau of Prisons

## F.C.I. Fort Dix, NJ

## Certificate of Completion

*This is in recognition of*

**Latch Toolasprashad**

for successful completion of the 500 hour Residential Drug Abuse Treatment Program

at FCI Ft. Dix

this _15th_ day of November , 2002 .

_Drug Treatment Specialist_

_Drug Abuse Program Coordinator_

Federal Bureau of Prisons documents - Federal Bureau of Prisons

# Federal Bureau of Prisons

**F.C.I. Fort Dix, NJ**



## Certificate of Accomplishment

This is in recognition of

**Latchmie Toolasprashad**

for successful completion in the RDAP Wellness Yoga Program

at FCI Ft. Dix.

This ___7th___ day of ___October___, ___2002___



_Drug Treatment Specialist_





BP-S148.70    **INMATE REQUEST TO STAFF**    CDFRM        *Copy*
Oct 1986
U.S. DEPARTMENT OF JUSTICE                          Federal Bureau of Prisons

TO:  J. Alderman, Case Manager                DATE:  9-8-00
(Name and Title of Staff Member)

FROM:  Toolasprashad                          REGISTER NO.:  10975-056

WORK ASSIGNMENT:  Education                    UNIT:  RH

SUBJECT: (Briefly state your question or concern and the solution you are requesting.  Continue on back, if
necessary.  Your failure to be specific may result in no action being taken.  If necessary, you will be
interviewed in order to successfully respond to your request.)

At your earliest convenience, please furnish me with a copy of the psychological

report prepared by Dr. Berry and Dr. Pugh.  I am in need of this report in order to

prepare for my rapidly approaching parole hearing.  Also, I need this document in order

for my attorney to prepare his argument, as well as to have an independent (private)

consultant to prepare a report.  Further, I am now working with a time constraint as

my hearing is to be held in November. *Please note this is not document previously*

Thank you.                       *requested from you*

(Do not write below this line)

DISPOSITION:                                    9/12/00

*The unit team does not get a copy of psychological
reports. Please address this concern with the
psychology department.*

*J Alder, CSW*

EXHIBIT 15

EXHIBIT 15

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**INMATE REQUEST TO STAFF MEMBER**

*Hand delivered
to Ann Kershen
40 @ 8:40 AM*

DATE _9-25-00_

TO: _Dr. Baruch, Chief Psychologist Ft. Dix_
(Name and title of officer)

SUBJECT: State completely but briefly the problem on which you desire assistance, and what you think should be done (Give details).

I recently returned from FCI Petersburg, where an "Psychological Report" was prepared for my November parole hearing. I was informed that the report was sent to FCI Ft. Dix Psychology Department for disposition.

I am requesting that a copy of this report immediately be sent to the U.S. (Use other side of page if more space is needed) Parole Commission to facilitate my November hearing. Also, I would like to obtain a copy of the report, and that a copy be sent to my attorney whose name and address is: Todd Greenberg, Attorney, 118-21 Queens Blvd. Forest Hills NY 11375 (718) 268-0400. Thank you.

NAME: _Hatilu Toolupprashad_     No.: _10975-056_

Work assignment: _____     Unit: _5802_

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

DISPOSITION: (Do not write in this space)     DATE _____

*EXHIBIT 15*

_____
Officer

Original – File
Canary – Inmate



USP LVN     Printed on Recycled Paper     Previous editions not usable     BP-148(55)
OCTOBER 1986

**ADDABBO & GREENBERG**

ATTORNEYS & COUNSELLORS AT LAW
118-21 QUEENS BOULEVARD, SUITE 306
FOREST HILLS, NY 11375

TODD D. GREENBERG
DOMINIC L. ADDABBO*

PATRICIA A. ROUSE+
JOSEPH R. ADDABBO, JR.

HYMAN J. GREENBERG
COUNSEL TO THE FIRM

*N Y & FLA. BAR
+N Y & CT BAR

Telephone:
(718) 268-0400
(718) 793-0807

Fax:
(718) 575-6869

Website:
www.queenslaw.com

November 7, 2000

**VIA UPS**

FCI Fort Dix
Bldg. 5758 Hartford Street
Fort Dix, NJ  08640

Attn.:  Michael Martinez

Re:    Inmate:   Latchmie Toolasprashad
         Registration No:  10975-056

Dear Mr. Martinez:

Please be advised that I am the attorney for Mr. Toolasprashad.

Reference is made to our telephone conversation of today.

Please accept this letter as confirmation that Dr. Daniel Schwartz, a licensed psychiatrist licensed by the State of New York, License No. 81210, will be permitted to visit Latchmie Toolasprashad at your facility on Thursday, November 16, 2000, at approximately 10:30 a.m.

Dr. Schwartz has been retained by this office and please consider this as a legal visit as well as a medical visit.

Since Dr. Schwartz is traveling from New York, if there is any problem with this scheduling please advise immediately.

Thank you for your attention.

Very truly yours,

ADDABBO & GREENBERG

TODD D. GREENBERG, ESQ.

TDG;jf

*EXHIBIT 17*

UNITED STATES GOVERNMENT MEMORANDUM
FEDERAL CORRECTIONAL INSTITUTION
Fort Dix, New Jersey 08640

**DATE: November 14, 2000**

**REPLY TO:**
**ATTN OF:** Darlene Alexander, Associate Warden

**SUBJECT:** Special Visit for : Toolasprashad, Latchmie, Reg No.: 10975-056

**TO:** All Concerned

The above referenced inmate has been authorized a Special Visit with the below listed people on Thursday, November 16, 2000. During regular scheduled visiting hours.

| Name of Visitor | Relationship | Address |
|---|---|---|
| Dr. Daniel Schwartz | Psychiatrist | New York |

Unit Manager's Certification

I certify that I have reviewed this request and that this inmate meets the criteria for a special visit.

_ Traveling over 250 miles: _

- Weekend visits will permanently be changed to: Even _ Odd__

- Additional visitors: Adults__  Children __

- Additional Points:_

\* Reason: Legal Visit(Preparation for Parole Commission Hearing)_____

**Note: When traveling over 250 miles, Airline tickets or Driver License is required
at the time of in-processing.**

_____

John A. Harrington, Unit Manager

PS 5267.06
5/17/99
Page 8

15.   [VISITS FROM REPRESENTATIVES OF COMMUNITY GROUPS §540.47.
The Warden may approve as regular visitors, for one or more
inmates, representatives from community groups such as civic and
religious organizations, or other persons whose interests and
qualifications for this kind of service are confirmed by staff.
The Warden may waive the requirement for the existence of an
established relationship prior to confinement for visitors
approved under this section.]

As distinguished from representatives of community groups, past
or present participants in the volunteer and citizen involvement
program ordinarily may not be added to an inmate's visiting list
without the Regional Director's approval.  Such approval is
ordinarily not granted.

16.   [SPECIAL VISITS §540.48.  The Warden may authorize special
visits:

     a.  For clergy, former or prospective employers, sponsors, and
parole advisors.  Visits in this category serve such purposes as
assistance in release planning, counseling, and discussion of
family problems;

     b.  By an authorized visitor at other than regularly
established visiting times, or in excess of regularly permitted
visits;

     c.  By attorneys; and]

     See the Program Statement on Inmate Legal Activities.  Staff
may not subject visits between an attorney and an inmate to
auditory supervision.  To the extent practicable, attorney
visits, for both pretrial and sentenced inmates, are to take
place in a private conference room.  Where such a room is not
available, the attorney visit may occur in a regular visiting
room, provided the inmate and the inmate's attorney have a degree
of separation from other visitors.  It is important that the
inmate/attorney visit be afforded a private meeting area.  On
occasion, a situation may arise when private conference rooms are
in use, and the attorney does not wish to meet in a regular
visiting room.  When this occurs, the attorney is to be offered
the opportunity to reschedule the visit when a more private area
is available.

     [d.  To pre-trial inmates to assist in protecting their
business or in preparing for trial.]

     See the Program Statement on Pretrial Inmates.

**ADDABBO & GREENBERG**
ATTORNEYS & COUNSELLORS AT LAW
118-21 QUEENS BOULEVARD, SUITE 306
FOREST HILLS, NY 11375

JOO D. GREENBERG
DOMINIC L. ADDABBO *

PATRICIA A. ROUSE +
JOSEPH P. ADDABBO, JR.

HYMAN J. GREENBERG
COUNSEL TO THE FIRM

* N.Y & FLA. BAR
+ N.Y & CT. BAR

Telephone:
(718) 268-0400
(718) 793-0807

Fax:
(718) 575-9669

Website:
www.queenslaw.com

November 16, 2000

**MAILED VIA OVERNIGHT**

FCI FORT DIX
Bldg. 5758 Hartford Street
Fort Dix, NJ 08640

Attn.: <u>Warden Nancy Bailey</u>

Re:    Inmate:  **Latchmie Toolasprashad**
        Registration No:  **10975-056**

Honorable Warden:

    Please be advised that I am the attorney for Mr. Toolasprashad.

    Reference is made to my prior written communications in this matter to members of your staff, Mr. Martinez and Mr. Harrington, a copy of which is enclosed herein, as well as phone conversations with those gentlemen, and Mr. Fred Perkins and Mr. Walt Jones.

    Please forgive my prior communications for not being more specific.

    I am requesting that <u>Dr. Daniel Schwartz be permitted to enter your facility to conduct a psychological examination of Mr. Toolasprashad</u>. I previously termed the visit as a "legal visit as well as a medical visit". Perhaps that language was not clear. The visit is for a psychological evaluation for use in a further legal proceeding with regard to Mr. Toolasprashad upcoming parole hearing.

    The history is simply that in the last <u>Notice of Action on Appeal</u>, dated June 4, 1999, the Parole Board, on page 2 thereof, ordered a report of Mr. Toolasprashad's mental health prior to the next interim hearing. Enclosed herein is that report which was recently completed at the Federal Correctional Institution, Petersburg, Virginia.



## ADDABBO & GREENBERG

November 16, 2000
FCI FORT DIX
RE:   Inmate:  Latchmie Toolasprashad
         Registration No:  10975-056
Page -2-

It is our desire that Dr. Daniel Schwartz  be permitted to examine Mr. Toolasprashad, and then be permitted to testify at his parole hearing, with regard to Mr. Toolasprashad's mental status as it relates to his possible parole.  As you can see from the Notice of Action, Mr. Toolasprashad's mental status will be an issue for the Parole Board to consider.

I hope this letter and the enclosures is sufficient to explain the necessity of Dr. Schwartz's visit.

It should be noted that I expect to be notified of the Parole hearing any day.

Thank you for your attention.

Very truly yours,

ADDABBO & GREENBERG

TODD D. GREENBERG, ESQ.

TDG;sr

cc:   United States Parole Commission
        North Central Region
        5550 Friendship Boulevard
        Suite 420
        Chevy Chase, Maryland  20815

June 27, 2001

<u>ViA FAX: 609-723-2803</u>

U.S. Department of Justice
Federal Bureau of Prisons
Federal Correctional Institution
P.O. Box 38
Fort Dix, NJ  08640

Attn.: <u>Nancy Bailey, Warden</u>

                              Re:    Inmate: Latchmie Toolasprashad
                                     Registration No: 10975-056

Dear Ms. Bailey:

        Thank you for your response of May 22, 2001.

        However, it seems we are going around in circles.

        As I explained in my prior letters and to your various staff members, the Parole
Commission requested that an evaluation of Mr. Toolasprashad's mental health be
conducted and that examination was conducted as you note in your letter of May 22,
2001.

        The purpose of Dr. Schwartz's visit is to aid the inmate and counsel the
inmate's presentation to the Parole Board regarding his release.  It is not the
psychological evaluation that was ordered by the Government and conducted by the
Government.

        Dr. Schwartz's visit is requested for purposes of helping counsel for the inmate
prepare documentation for purposes of his release.  The psychological interview that
Dr. Schwartz is going to conduct is for purposes of the inmate's legal presentation
and is not the psychological that has already been conducted.

        It is respectfully requested that a special visit be permitted.  This is a simple
request for a special visit to aid the inmate and counsel.

                                                        *illegible signature*

June 27, 2001
U.S. Department of Justice
Federal Bureau of Prisons
Federal Correctional Institution
RE: Inmate: Latchmie Toolasprashad
Page -2-

I would appreciate your prompt response in that I have been trying to obtain permission for Dr. Schwartz's visit for quite some time and, indeed, actually thought that permission was granted based on information received from you staff members.

If permission is not granted, I will seek permission from the Federal Court.

Thank you for your attention.

Very truly yours,

ADDABBO & GREENBERG

TODD D. GREENBERG, ESQ.

TDG;sr



### ADDABBO & GREENBERG

ATTORNEYS & COUNSELLORS AT LAW

118-21 QUEENS BOULEVARD, SUITE 306

FOREST HILLS, NY 11375

TODD D. GREENBERG
DOMINIC L. ADDABBO*

PATRICIA A. ROUSE+
JOSEPH P. ADDABBO, JR.

HYMAN J. GREENBERG
COUNSEL TO THE FIRM

*N Y & FLA BAR
+N Y & CT BAR

Telephone:
(718) 268-0400
(718) 793-0807

Fax:
(718) 575-9669

Website:
www.queenslaw.com

May 21, 2001

U.S. Department of Justice
Federal Bureau of Prisons
Federal Correctional Institution
P.O. Box 38
Fort Dix, NJ 08640

Attn.: Nancy Bailey, Warden

                    Re:    Inmate: Latchmie Toolasprashad
                           Registration No: 10975-056

Dear Ms. Bailey:

        Please be advised that this office represents the above named inmate.

        Reference is made to my prior communication to your facility and the filing of an application for permission for Dr. Daniel Schwartz to visit Mr. Toolasprashad in aid of his upcoming parole hearing.

        I have spoken to numerous people at your facility, received conflicting information, and still, after months, have not been advised officially as to whether Dr. Schwartz's visit is approved.

        Please advise as to whether Dr. Schwartz can visit the inmate in aid of counsel's presentation at the up coming Parole Hearing.

        Your immediate attention would be greatly appreciated.

        Thank you for your attention.

                            Very truly yours,

                            ADDABBO & GREENBERG

                            TODD D. GREENBERG, ESQ.

TDG:sr

(With all due respect to Dr. Berry's diagnosis of Narcissistic Personality Disorder, the findings he reports on the psychological tests he administered do not seem consistent with a personality disorder. Such a problem, by definition, 'leads to clinical significant distress or impairment in social, occupational, or other important areas of functioning, [Diagnostic and Statistical Manual - Fourth Edition, p. 633.] and the prison records shows just the opposite. Dr. Berry himself writes that Mr. Toolasprashad's test performance 'is not suggestive of any form of significant psychological impairment' [p. 4]).

Beyond my examination is the record of Mr. Toolasprashad's behavior, both before and subsequent to the present offense. As far as we know, there has never been another act of violence, or even a threat of violence. Most experts in forensic psychiatry consider one's history, or absence, of violent behavior as the best basis for predicting the future - and here his past performance is exemplary. He has been repeatedly noted to have made 'outstanding progress' in the Federal Bureau of Prisons, to have maintained 'an above-average rapport' with the staff, and to have been no management problem.

Nor is there any indication that psychiatric treatment or psychotherapy need be a condition of parole. If Mr. Toolasprashad is released from prison, he will probably be deported....

In conclusion, there is every indication that if Mr. Toolasprashad is released, he will be a law-abiding, safe and productive member of the community. (Exhibit 8).

41. As is obvious both Dr. Schwartz and Berry and Pugh agreed that plaintiff is not a risk to anyone. Still, Dr. Schwartz has contradicted Berry and Pugh in their diagnosis and in the summary and recommendations. And, still the USPC has used the false and misleading report to deny parole.

<u>THE PAROLE BOARD USED BERRY AND PUGH'S INACCURATE
AND MISLEADING REPORT TO DENY PAROLE WITHOUT CAUSE OR
JUSTIFICATION</u>

42. On November 2, 1998, plaintiff appeared before the one-person Parole Board/ USPC and a psychological report was to be prepared by the BOP and submitted by May 1, 1999 (**exhibit 1**) which the BOP failed to do.

17



**U.S. Department of Justice**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

**NOTICE OF ACTION ON APPEAL**

MAR 2 8 2002

---

Name: Toolasprashad, Latchmie

Register Number: 10975-056              Institution: Ft. Dix FCI

---

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirmation of the previous decision.

**REASONS:**

Your appeal does not have merit. You contend that the Commission has rendered a decision "above" your guideline range by 200 months, but the guideline range in your case is 100 plus months. This is only a minumum, and there is no maximum range. Any decision that is between the guideline minimum and the expiration of sentence, in a Category Eight case, is a decision within the guidelines. Hence, for Category Eight cases, a decision above the guidelines is not possible. Moreover, the Commission's initial decision was well grounded in a record that showed that you continued to be without remorse and to deny all guilt, despite your conviction of a terrible murder, even through the administrative appeal process with the Commission in 1995. Since then, the Commission has obtained up- to-date psychological evaluations to determine whether your attitude has changed since 1995. Although you now argue that you are a good parole risk without any mental problems that would cause you to commit more violent crimes, and that you have taken responsibility for your original offense, the psychological report from FCI Petersburg dated July 11, 2001, given a careful reading, contradicts these claims.

This report makes it clear that much of the apparent mental illness you displayed at the time of your trial was a fraudulent attempt to avoid criminal prosecution. This means that your present sincerity and credibility must be viewed with caution, and that your crime cannot be blamed on mental illness from which you now have been cured. Moreover, although you claim to have accepted responsibility for your crime, you nonetheless have continued to deny guilt, leading the prison psychologists to conclude that you have only adopted a posture clculated to improve your chances for parole. Most disturbingly, you continue to have a personality disorder which creates the potential that, when faced with any frustrating or humiliating disappointment in the community, you would again seek to have others carry out violent acts against those you hold responsible.

The Commission recognizes that you have behaved well in the prison setting, and that predictions of future violence on your part cannot be made with complete certainty. Nonetheless, the indications of posturing and violent personality are sufficient to deny parole in your case. Moreover, the Commission is concerned not only with the question of risk, but also with the question of just punishment for the premeditated, extraordinarily cruel, and self-centered murder you committed in 1985. Considering the criterion of just punishment alone is sufficient to warrant a continuance of your case to June of 2010. At that time, you will receive a reconsideration of your suitability for parole, when both issues (accountability for the crime and risk to the public safety) will be addressed.

---

Date: March 19, 2002

Clerk: jxr

**EXHIBIT 18**
TOOLASPR.109

Page 1 of 2

de novo.

All decisions by the National Appeals Board on appeal are final.

Date: March 19, 2002                                    Clerk: jxr

11/21/00

# phone calls made

— Comment from parole commission # (301) 492-5821
P. Vines    11/21/00   at 3:45 pm
— "only accept Criminal Justice - evaluations -
Do not accept reports from/submitted by outside
attorneys."

— Comments of Todd Greenberg - 11/21/00 3:55 pm.
spoke w/ attorney. Wants to submit his own + on
behalf of inmate psychiatric evaluation
— "1st he had ever heard of it" + wants to supplement
the BOP's report + present their side of the issue"
Does not agree w/ parole commission + that he would fight it legally.
— Dr. Schwartz ~~used to head of~~ Chief forensic Medical
officer in NY for years (Retired), well known.
attorney wants Dr. Schwartz to do the evaluation.
— I Advised him the hearing that they have been postponed
until Jan. or Feb. + he was pleased so he could address this
attorney's should not be an issue, matter of law + would
final comment    argue it with the Parole Commission legally.
— Bottom line - wants to supplement the BOP's psych
evaluation w/ one done by Mr. Schwartz. The inmate
did not request this be done, his attorney did.

EXHIBIT 19

EXHIBIT 19

inmate had parole hearing about 1 yr. ago & was ordered to have psych. evaluation done

/ Inmate was on parole docket for Nov. 2000.

— Inmate transfered to Petersburg & they conducted the evaluation

- Marcia B. believes the eval. was positive & in inmate's favor.
- Marcia has no major objections to another eval. being done

— Bob D. contacted NERO last week. They said it was up to the CEO however he must be careful about denying as it is being presented as a legal/special visit w/ the Parole Commission.

— If approved the 5 pg. report from the Inmate Activities P.S. must be forwarded to the attorney so he & the Psychiatrist can fill out (Attorney would be open to completing)

— If approved attorney would have to take responsibility of the psychiatrist & the psychiatrist must come in as part of the legal team as it would be a legal/special visit to see the Parole Commission.

— It would be the Parole Hearing Examiner's discretion whether or not the Psychiatrist's report would be used & whether or not he could be present.

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

Notice of Action

Name: TOOLASPRASHAD, Latchmie

Institution: Fort Dix FCI

Register Number: 10975-056

Date:    February 12, 2004

In the case of the above-named, the following parole action was ordered:

No change in 15-Year Reconsideration Date June 2010.

## REASONS:

Retroactivity does not apply. Neither your recalculated severity rating (old Category Eight; new Category Eight) nor your recalculated salient factor risk category (old Category Very Good, old score 9; new Category Very Good, new score 9) is more favorable. This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of offense severity or salient factor scoring.

In addition, you have also been scheduled for a statutory interim hearing during January 2006.

The above decision is appealable to the National Appeals Board pursuant to 28 C.F.R. 2.26.

You may obtain appeal forms from your caseworker or U.S. Probation Officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    U.S. Probation Office
Eastern District of North Carolina
Federal Building, Room 610
310 New Bern Avenue
Raleigh, NC 27601-1442

EXHIBIT 20

Copy given to
Inmate on
3/24/04
ntss...
X ...

3/24/04

TOOLASPRASHAD 10975-056

- 1 -

Clerk:    MDD

EXHIBIT 20

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

Notice of Action on Appeal

*Copy to*
*Inmate*
*9/9/04*
*Λ‑7*

Name: Toolasprashad, Latchmie

Institution: Fort Dix FCI

Register Number: 10975-056

Date:  August 23, 2004

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirmation of the previous decision.

REASONS:

You appeal from the Commission's decision not to change its previous order for a 15-year reconsideration hearing in June 2010. You raise the following claims on appeal, which the Board finds to have no merit.

First, you claim that the Commission violated your right to a fair hearing because the hearing examiner did not honor your representative's request, duly submitted in advance of your hearing, to present "numerous people" who wished to speak in your favor. Your contention misconstrues the Commission's rules. Under 28 C. F. R. § 2.13 (b), a prisoner may be represented at a hearing by a person of his or her choice. There is no right to the presentation of testimony from witnesses, as at a parole revocation hearing. You were ably represented, at your statutory interim hearing, by attorney Todd Greenberg. Furthermore, Mr. Greenberg was permitted to submit letters, following the hearing, which provided the hearing examiner with the substance of what your supporters wished to say on your behalf.

Second, you claim that the letters from your supporters were not considered by the Commission's examiner in making her recommendation. However, the hearing summary prepared by the examiner shows that all of these letters were received and considered following the hearing. Further, all the information you have submitted on your behalf, both new and old, has been considered at this review.

Third, you claim that all factors in your case demonstrate that you are not a risk for parole. You point to your excellent programming record, the strong family support offered to you, and the psychiatric evidence which favors your release. You even argue that your ethnic group makes you a better-than-average risk for parole. However, the purpose of a statutory interim hearing under 28 C. F. R. § 2.14 (a) is to consider any significant developments or changes in the prisoner's status since the last hearing. Your appeal identifies no information that would warrant consideration under this rule. For example, your Exhibit B (the letter dated July 25, 2001, from psychiatrist Daniel W. Schwartz), was submitted and considered at your last hearing in September of 2001. The new documents you have submitted only confirm the status of your case as it appeared at your last hearing, including your continued excellent institutional adjustment, testimonials from prison staff members, expressions of remorse from you, and appeals from family members. Although this information is favorable to you, there are strong countervailing considerations. For example, your accomplishments as a soldier were also outstanding, but did not prevent you from committing a murder by contract. Furthermore, it would not appear that your family support was any less strong in 1985 than it is now. Although Dr. Schwartz argues in favor of parole and disagrees with the opinions expressed in Dr. Berry's report of July 11, 2000, his opinion is

*EXHIBIT 21*

not determinative. The absence of diagnosable mental illness does not provide a sufficient basis for predicting your behavior in the community.

Fourth, you claim that the crime you committed in 1985 (contracting for the murder of a woman who spurned your romantic advances) was "out of character," which allegedly removes any danger that you would commit a similar crime in the future. However, you submit no new information which would support this claim. The Commission cannot accept your contention that this crime was "out of character" merely because of your general good behavior and accomplishments while serving your sentence from 1987 to 2004. The facts remain that you committed the crime, not on impulse, but with premeditation and planning, and that you subsequently attempted to escape responsibility for it through a stratagem (feigned mental incompetency). In the case of a crime "out of character," the Commission would expect to see unusual external circumstances leading up to the crime, and a rapid expression of remorse and acceptance of responsibility from the offender once it was over. Such elements are completely absent in your case. Looking at your overall record, and especially the evidence that you are an unusually manipulative personality, the National Appeals Board remains unconvinced that you are a significantly better risk for parole, at age 41, than you were in 1985, at age 22.

Fifth, you contend that you are entitled to an advancement of your fifteen-year reconsideration hearing based on superior program achievement. However, 28 C.F.R. § 2.60 permits, but does not require, an advancement for superior program achievement. In cases involving crimes of unusual gravity, an advancement for superior program achievement may be denied, or a decision may be postponed to a previously-scheduled fifteen-year reconsideration hearing. As of this review, it appears appropriate to consider your overall record of program achievements at your hearing in June 2010.

Sixth, you contend that the need for punishment and deterrence has been fully satisfied in your case because you have now served your ten-year minimum term. You believe that 18.5 years is "excessive for a single homicide." In your view, there "does not appear to be any articulable reason for parole to be denied." This argument does not present any new information because the need for deterrence and punishment under 18 U.S.C. § 4206(a)(1) was considered at your initial hearing, and the Commission decided that a parole before 15 years would not be appropriate, for reasons which have been clearly articulated. See Notice of Action dated July 3, 1995, and Notice of Action on Appeal of October 19, 1995. At that time, you denied all responsibility for the crime. The Commission's evaluation of your belated decision to accept responsibility for your crime is set forth in the Notice of Action on Appeal dated March 19, 2002. Thus, all relevant factors concerning the issues of punishment and deterrence have been presented, evaluated, and fully articulated by the Commission in previous decisions. Service of a minimum term under 18 U.S.C. § 4205(a) does not, as a matter of law, mean that the prisoner has been adequately punished for the crime. Under the guidelines for Category Eight offenses at 28 C.F.R. § 2.20, there is no presumption that parole will be granted after a particular period of time has been served. For the reasons expressed in its previous Notices of Action, the Commission declines to accept your claim that service of more than 18.5 years is excessive for the extraordinarily cruel and premeditated homicide you committed. Finally, the court case upon which you rely, Mickens-Thomas v. Vaughn, 355 F.3d 294 (3d Cir. 2004), did not apply federal parole law and is not apposite.

Note: Your request for a further extension of the time for submission of an appeal is denied. See 28 C.F.R. § 2.56 (g), which states that satisfaction of a Freedom of Information Act request is not a prerequisite to the exercise of a prisoner's appeal rights under 18 U.S.C. § 4215. The Commission has, in several Notices of Action, fully explained its analysis of your case. This gives you an adequate basis, on appeal from a statutory interim hearing, to present any information which you may have tending to show a significant new development or change in the status of your case.

All decisions by the National Appeals Board on appeal are final.

# JAMES H. HILKEY, Ph.D.
Licensed Practicing Psychologist
3326 Durham-Chapel Hill Blvd. Suite B-121
Durham, North Carolina, 27707
Ph. (919) 493-1110 – Fax (919) 932-1734

---

## PSYCHOLOGICAL EVALUATION

CLIENT:                        Latchmie Narayan Toolasprashad
REGISTRATION NUMBER:  10975-056
DATE OF BIRTH:          September 7, 1963
DATE OF REPORT:         June 3, 2006

Latchmie Toolasprashad was referred for psychological evaluation by his attorney Susan James. The purpose of this evaluation is to assess his psychological suitability for release on parole. This is actually a reevaluation of Mr. Toolasprashad as I initially completed a forensic psychological in March 1986, in my capacity of as the Chief, Psychological Services at the Federal Correctional Institution, Butner, North Carolina. I retired from Federal service in May 1996, and completed this evaluation as an independent examiner; a current copy of my curriculum vita is attached to this report. At that time of commitment to the Federal Correctional Institution at Butner, North Carolina, in 1986, Mr. Toolashprahad was also examined by forensic staff psychiatrist Dennis O'Brien, M.D. It was our mutual opinion that Mr. Toolasprashad suffered from significant mental illness, was considered incapable to proceeding to trial, and was treated with psychotropic medications. There was some questions as to the exact diagnostic impressions at that time; however, it was clear Mr. Toolashprahad exhibited psychotic symptoms, was depressed with suicidal ideation and a suicide attempt, displayed symptoms consistent with the diagnosis of Posttraumatic Stress Disorder from events experienced while serving in the United States Army. Both Dr. O'Brien and I questioned whether Mr. Toolasprashad was exhibiting early signs of a schizophrenic disorder as reflected in our 1986 report. Following a second evaluation and additional treatment at the Federal Medical Center in Rochester, Minnesota Mr. Toolashprashad entered a guilty plea before the Honorable Terrance Boyle in the Eastern District of North Carolina, on January 20, 1987. Mr. Toolashprashad is scheduled for review by the United States Parole Commission on June 4, 2006.

Mr. Toolashprashad was reexamined on June 2, 2006, at the Federal Correctional Institution, Fort Dix, New Jersey. Over the course of approximately four hours of examination, Mr. Toolashprashad was given a mental status examination, completed the *Millon Clinical Multiaxial Personality Inventory, Third Edition,* and was interviewed. I also had a chance to review a number of documents and conduct several phone interviews with staff members familiar

*EXHIBIT 22*

Latchmie N. Toolashprashad
Psychological Evaluation
Page Two

with Mr. Toolashprashad's institutional adjustment. The documents reviewed included prior mental health evaluations, Federal Bureau of Prison accomplishments and institutional adjustment records, and his most recent progress report completed by Case Manager Robert Ferretti. I also reviewed a Notice of Action on Appeal from the United States Parole Commission at August 23, 2004.

Mr. Toolashprashad presented as a neatly groomed and fully oriented individual. He seemed genuinely pleased to see me, grateful I had agreed to examine him, and was friendly and cooperative. He provided a detailed account of his activities and accomplishments since our last meeting some twenty years ago. Mr. Toolashprashad voiced some frustrations over some of the events he had experienced; however, he was able to acknowledge positive interactions and benefits he had received. His comments were appropriate and without delusional content. Mr. Toolashprashad was unabashedly proud of his accomplishments which contributed to an air of self-confidence. Although I had not seen Mr. Toolashprashad for some time some of his personality characteristics remained constant over time. In particular, he remained obsessive in his thoughts and compulsive in many of his behaviors. Because he is not particularly flexible in his thinking he tends to view things in concrete terms or as issue of either "black or white." I suspect this analytical thinking process may contribute to some interpersonal difficulties and occasional conflicts with those in authority; this should not be viewed as characteristics of malignant narcissism or of an Antisocial Personality Disorders. As evidenced in both the materials he forwarded for my review and in his conversations, Mr. Toolasprashad has devoted a great deal of time in legal research regarding his case. Despite the time invested in these activities, he continues to be extremely active in institutional programming and has earned high regard for his work performance by those staff who has supervised him. There is ample evidence of these accomplishments referenced in his progress report and by letters of commendation. Mr. Toolashprashad, although not clinically paranoid, he is highly focused and ever vigilant to rules and it is probable the attention devoted to this order diverts his attention from experiencing underlying feelings of anxiety, tension, and some depression. It is difficult for Mr. Toolashprashad to deal with the affective or feeling side of his personality which contributes to his perception as an individual who is much more attuned "how things should be" rather than exhibit sensitivity to the emotional aspects of his personality. Despite these observations Mr. Toolashprashad does readily acknowledge and is deeply appreciative of the sacrifices his family had made in their continued support of him and fully recognizes that his behaviors contributed to the death of Beverly Dozier.

The psychiatric symptoms present during my initial evaluation of Mr. Toolashprahad have largely resolved. There are no evidences of psychosis present at the time of his evaluation in 1987. I would take exception with the statement in paragraph one, page two of the Parole Commission Notice of Action Report dated August 23, 2004, that Mr. Toolashprashad, "feigned mental incompetency." Although the initial concerns that Mr. Toolashprashad may be suffering from a schizophrenic disorder have not been supported the psychotic symptoms observed were genuine and were consistent with the diagnoses of a Posttraumatic Stress Disorder and a Major Depressive Disorder. This opinion was supported by two independent mental health professional (Hilkey and O'Brien) and reviewed by a panel of other mental health professionals during the initial assessment at FCI Butner. There are no overt signs of a Major Depressive Disorder evident during the recent examination. Mr. Toolasprashad's affect was appropriate to situation. Both suicidal and homicidal ideations were denied.

Latchmie N. Toolashprashad
Psychological Evaluation
Page Three

Prior evaluations have referenced an Antisocial Personality Diagnosis. Again, Mr. Toolashprashad does not meet the criteria established for this diagnosis at this current time nor at the time of prior assessments; he has no history of conduct disorder as a child or adolescent required for this diagnosis. Mr. Toolashprashad has the capacity for sensitivity for the needs and feelings of others. Furthermore, his behavior while in prison and prior to the offense behavior has not included violent or aggressive behavior; he has the capacity for empathy as evidenced in his repeated concerns for the memory of the victim of this crime and his immediate family. The results of objective personality testing recently administered do not support an Antisocial Personality Disorder diagnosis.

Mr. Toolashprashad does exhibit some symptoms of a lingering Posttraumatic Stress Disorder as manifested in recurrent troubling dreams from past service related incidents. These impressions are confirmed by objective psychological testing. It should also be noted that IQ scores recorded by prior evaluation are not accurate reflections of Mr. Toolashprahad's cognitive abilities. He is clearly functioning in a range above an average range of intelligence and is not consistent with reported IQ scores in the Low Average range as reported in the psychological evaluation author by psychology intern Berry at FCI Petersburg.

Based on impressions obtained from this most recent examination of Mr. Toolashprashad I find no reasons to suggest that he would pose a future active or passive risk to others and in my opinion is a suitable candidate for release. Based on this current examination I find that Mr. Toolashprashad fits the Axis I criteria for Posttraumatic Stress Disorder, in partial remission, and an Axis II impression of Obsessive Compulsive Disorder. These impressions are based on the most recent clinical interview and from result of psychological testing. As indicated in Mr. Toolashprahad's progress report, his release plans are unclear and complicated by his immigration status. I trust these findings are useful and I can be available to answer specific questions should they arise.

James H. Hilkey, Ph.D.
Licensed Psychologist

U.S. Department of Justice            **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

---

Name: TOOLASPRASHAD, Latchmie       Institution :Fort Dix FCI

Register Number: 10975-056           Date    :June 22, 2006

---

As a result of the hearing conducted on June 5, 2006 the following action was ordered:

No change in 15-Year Reconsideration Date in June 2010.

<u>REASONS</u>:

Retroactivity does not apply. Neither your recalculated severity rating (old Category Eight; new Category Eight) nor your recalculated salient factor risk category (old Category Very Good, old score 9; new Category Very Good, new score 9) is more favorable. This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of offense severity or salient factor scoring.

In addition, you have also been scheduled for a statutory interim hearing during June 2008.

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    U.S. Probation Office
      Eastern District of North Carolina
      M. 610 Federal Building
      310 New Bern Avenue
      Raleigh, NC 27601-1418

EXHIBIT 23

U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

**Notice of Action on Appeal**

---

Name:  Toolasprashad, Latchmie

Institution:  Fort Dix FCI

Register Number:  10975-056

Date:    November 22, 2006

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirmation of the previous decision.

<u>REASONS</u>:

You have appealed the Commission's decision following your client's statutory interim hearing.  The purpose of a statutory hearing is to consider any "significant developments or changes in the prisoner's status that may have occurred subsequent to the initial hearing." 28 CFR 2.14(a).  The Commission took into consideration the psychological reports, Mr. Toolasprashad's exemplary institutional behavior, and other circumstances you presented at the interim hearing and found that they did not warrant an advancement of the date of your fifteen-year reconsideration hearing.  The National Appeals Board has previously addressed in detail claims similar to the ones you have raised on appeal following previous hearings, including your reliance on *Mickens-Thomas v. Pennsylvania Board of Probation and Parole*.

The Board finds no merit in your claim that by not ordering an advancement for superior program achievement, the Commission violated its rules and Mr. Toolasprashad's rights.  An advancement for superior program achievement under 28 CFR 2.60 is not mandatory.

The Board finds no merit in your claim that Toolasprashad was denied a fair hearing.  The record indicates the considerable amount of information presented at the hearing, and your client was given an opportunity to be heard.  The Commission makes all parole decisions and a hearing examiner's recommendation is not binding.

All decisions by the National Appeals Board on appeal are final.

Cc:

Law Office of Susan G. James & Associates
600 South McDonough Street
P.O. Box 198
Montgomery, Alabama 36101-0198

*Copy given
To Inmate on
12/5/06*

---

Toolasprashad 10975-056
Queued: 11-22-2006 14:24:08 BOP-Fort Dix FCI |

-1-

Clerk:    SAJ

*EXHIBIT 24*

OPI: LEGAL DEPARTMENT
Number: FTD 1330.13E
**Date:** August 22, 2001
Attachment: 1

FCI FORT DIX, NEW JERSEY
ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES
INFORMAL RESOLUTION FORM (BP-8)

NOTE TO INMATE:    You are advised that prior to receiving and filing
a request for administrative remedy Form BP-229 (old BP- ), you MUST
ordinarily attempt to informally resolve your complaint through your
Correctional Counselor.  Briefly state ONE complaint below and list
what efforts you have made to resolve your complaint informally and
state names of staff contacted.  As stated above, there are situations
when an inmate does not have to attempt informal resolution.
Date form issued and initials of Correctional Counselor: _____

INMATE'S COMMENTS:

1.    Complaint:  This complaint is directed at the Psychology Department to correct
my record, and that I be given an appointment via call out to discuss this matter
with Dr. Baruch, as soon as possible, and before my upcoming parole hearing in
                                    See Page 2
2.    Efforts made by you to informally resolve: _____
_____
_____

3.    Name of staff you contacted: _____
_____
_____

Date returned to Correctional Counselor: 8/19/03
Toolasprashad    10975-056               August 18, 2003
Inmate's Name         Reg. No.              Date

CORRECTIONAL COUNSELOR'S COMMENTS:

1.    Efforts made to informally resolve and staff contacted:
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

EXHIBIT 25

Date Informally Resolved:_____  Signature:_____
        OR                                    Counselor    Date
Date BP-229(13) Issued:_____    _____
                                          Unit Manager Date
If complaint is NOT informally resolved: forward original attached to
BP-229(13) form to the Warden's Secretary.

TOOLASPRASHAD #10975-056
INFORMAL RESOLUTION ATTEMPT (2)

september, 2003. The Privacy Act allows for correction of records whenever errors are identified, especially so as my record has been mischaracterized and misinterpreted. Correcting this matter is a simple process.

After a former FCI Ft. Dix psychologist, Dr. Kerr, had me and my family believing for some 20 months that he would and had prepared a psychological report for the parole board, I had to utilize the administrative remedy in order to get the report done, as Dr. Kerr never prepared the report (as he misinterpreted the Parole Commission's request). There is extensive documentation to show Dr. Kerr never even attempted to write the report though he had me believing that he was doing so -- even when staff members intervene.

When the report was finally written I've said very little to the Psychology Intern who prepared the report; I never discuss the offense, nor was the report ever discussed with me other than the Psychology Intern ("Intern") informing me, "The Report supports you for release on parole. I hope you get out."

Because of Dr. Kerr's extensive runaround I stated away from the psychology department and its staff. However, I did and have participated in the few and limited programs offered by the department (RDAP, etc) - which more than fulfill the report's recommendation. When Dr. Baruch finally gave me a copy of the report she stated, "Its a very good report in your favor," and the "then" case manager had informed me that psychology staff informed him that "[t]he report is excellent for your parole."

Recently I discovered that the report is flawed, misinterpreted and mis-characterized. What the Intern done here is re-tried my criminal case without any substance or facts. He was supposed to write a report, not retried the case - which he could not do - but did so anyway. All he actually done was read my criminal case and based his findings on what wasn't there. He could not re-tried the case and that is exactly what he effectively done.

The inaccurate report states in pertinent part,

All things considered, Mr. Toolasprashad is not believed to personally be at great risk of dangerousness. He is most likely to respond in non-lethal means and if the situation calls for further responses, he is likely to enlist the help of another in order to initiate more lethal responses. He will enlist the help of an additional individual to keep himself from engaging in behaviors deemed below someone of his capacity.

The report continued,

Irrespective of whether Mr. Toolasprashad receives parole, it it highly recommended that he participate in some form of anger management and assertriveness skill training. Participation in these programs may help him to directly express his frustration and anger in a more socially acceptable manner and may help to lessen the likelihood of future dangerousness to himself and others.

(See attached).

TOOLASPRASHAD #10975-056
INFORMAL RESOLUTION ATTEMPT (3)

While there is absolutely no evidence to support these statements by the Intern, I am challenging the statements as fiction, that came from the Intern retrying my case, not facts. Moreover, I wish to obtain a copy of what assessment and tools utilized to come up with su nonsense.

The fact of the matter is that indeed I challenged a case manager's knowledge of policy when she attempted to circumvent and this was upsetting that a staff was challenged. I will continue challenging staff whenever they are wrong as its a first amendment protection and sue them since the administrative remedy does not work. The Intern had informed me that the case manager complained that I challenged her which is at best retaliation for informing another staff of same. Courts across the country have ruled that prisoners may speak freely in writing and may not be impede or retaliated against.

I spoke with the Intern very little - at no time I showed any signs of anger, frustration, etc. In fact, his report is completely contradicted by a report written a year later by a forensic psychiatrist who personally examined more than 1000 murderers. (See, DISCUSSION of Dr. Schwartz at 2). Dr. Schwartz, an Associate Professor of Psychiatry and Retired Director of a Forensic Psychiatry Hospital, in every respect contradicted the Intern's report.

Dr. Schwartz states in pertinent parts,

On examination Mr. Toolasprashad shows no indication of psychosis or even mental illness. He is fully alert and quite cooperative. He is a good historian, with no evidence or organic mental illness. His statements are always responsive, coherent and relevant, with no suggestion of delusions, hallucinations or otherwise disordered thinking.

DIAGNOSIS:  No mental Illness
No Personality Disorder
No Physical Disorder

(Schwartz at 2).

The Intern continued contradicting himself, there "is no suggestive of any form of significant psychological impairment" [Schwartz at 3 quoting (Intern at 4)].

Since the report is inaccurate based on no evidence it must be corrected as per Sellers v. Bureau of Prisons, 959 F.2d 307, 310, 312 (D.C.Cir. 1992) which states,

Furthermore ... there were other pieces of incorrect information in his prison files that ... the Parole Commission used in making determinations adverse to him.

TOOLASPRASHAD #10975-056
INFORMAL RESOLUTION ATTEMPT (4)

At 312 the court held,

Appellees [BOP] contend that they cannot be expected to verify conclusively the accuracy of their inmate files, especially files used as evidence in a parole decision, anytime an inmate challenges the information contained in those files. We disagree. [The Court]. As long as the information contained in an agency's files is capable of being verified, then ... the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual. If the agency wilfully or intentionally fails to maintain its records in that way and, as a result, it makes a determination adverse To an individual, then it will be liable to that person for money damages.

The Privacy Act requires that each agency keeping a system of records must maintain those records with 'such accuracy, relevance, timeliness, and completeness ...' to assure fairness to an individual.... Because the challenged information in Mr. Sellers' files was capable of being verified, the agency [BOP] did not satisfy the requirements of the Privacy Act simply by noting in his files that he disputed some of the information the files contained.

Again, there is absolutely no evidence in the Intern's report to support his inaccuracy -- which is also contradicted by Dr. Schwarts, a well-known forensic psychiatrist of more than 30 years. Therefore, the report has to be corrected.

In Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 584, 585 (D.C.Cir. 2002) the court held that staff are liable for money damages when records are inaccurate. This case precipitated when five staff from another institution signed an inaccurate memo and adversely used same against me and the court agreed with me. At 584 the court held,

Reasonable reliance by some employees cannot immunize an agency from the Privacy Act consequences of employing other individuals who (...) deliberately falsify records.

And at 585 the court held,

The Bureau offers several counter-arguments, none of which is convincing.

This case is now up for decision on the triable issue for monetary damages.

TOOLASPRASHAD #10975-056
INFORMAL RESOLUTION ATTEMPT(3)

In Toolasprashad v. Ackley, et. al., 4:CV-98-1234, a settlement was reached with the staff after jury selection, and the court in its recommendation clearly agreed that staff retaliate against prisoners.

As my allegations of inaccuracy in the Intern's report is established and ascertain, as no evidence exist to support his statements, and also through contradictions of Dr. Schwartz, the "portion" of the report must be corrected under the Privact Act.

Therefore, I am requesting correction by either deleting the ¶ or amending it. As the Unit Team cannot correct this matter, I am requesting an apointment with Dr. Baruch through "call out" procedure to discuss this matter. If this relief is denied, please issue a BP-9 so that I may exhaust the remedy to gain access to the court.

Thank you.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Dated: August 18, 2003

Toolasprashad

(BP-8) Response
Toolasprashad, Latchmie 10975-056
Removal


This is in response to your request dated 08-18-2003 concerning your removal of information from your Psychological evaluation as well as being placed on the call-out to see Dr. Baruch. I spoke to Dr. Baruch who stated that You were evaluated by two different Psychologists whose professional opinion are different. Therefore she does not support your request to remove information from either report. You also may request another evaluation. As for being placed on the call-out to see Dr. Baruch, I contacted her office and I was told she will not be back til next week. I will contact her at that time to see when would be a good time for her too see you. If I can be of any further assistance, please let me know.

Counselor D. Hamel

8-27-03

EXHIBIT 26

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | XXXX TOOLASPRASHAD, LATCHMIE | 10975–056 | 5803 | FT. DIX, NJ |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

The matter for which I seek correction is explained in detail in the BP-8 and, therefore, I am summarizing same herein.

On December 10, 1998, the Parole Commission requested of the BOP to provide a psychological report by May 1, 1999. The report was not submitted on time and I was subsequently denied parole. The psychologist, Dr. Kerr, misinterpreted the Commission's request as being a forensic report, when in fact, it was a general report whether or not I represent danger to persons or property. Because I utilized the administrative remedy against Dr. Kerr who had me in circles for some 16 months that he was writing the report when he wasn't, I was retaliated against and sent to Petersburg, where the report was prepared by a Psychology Intern ("Intern"). Rather than writing the report at Ft. Dix where the psychology department could have verified my overall conduct, numerous program participation, work performance, interaction with staff, etc, I was retaliated against for filing the grievances. Hence, the report written by a non-qualified Intern pursuing an education prejudiced me, based on a self-inflated ego who retried my criminal case.

The report is flawed. What the Intern done here is retried my criminal case without substance or facts. He was supposed to write a report, not re-tried the case. All the Intern done was base his findings on the criminal case – aiding and abetting murder.

The flawed and inaccurate report by the Intern states in pertinent part,

"All things considered, Mr. Toolasprashad is not believed to personally be at great risk of dangerousness. He is most likely to respond in non-lethal means and if the situation calls for further responses, he is likely to enlist the help of another to initiate more lethal responses. He will enlist the help of an additional individual to keep himself from engaging in behaviors deemed below someone of his capacity."

| DATE August 28, 2003       See Page 2 | SIGNATURE OF REQUESTER |
|---|---|

**Part B– RESPONSE**

| DATE | WARDEN OR REGIONAL DIRECTOR |
|---|---|

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER

CASE NUMBER

**Part C– RECEIPT**

Return to:

LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT:

| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) | BP–229(13) |
|---|---|---|
| USP LVN | Previous editions not usable | APRIL 1982 |

EXHIBIT 27

Irrespective of whether Mr. Toolasprashad receives parole, it is highly recommended that he participate in some form of anger management and assertiveness skill training. Participation in these programs may help him to directly express his frustration and anger in a more socially acceptable manner and may help to lessen the likelihood of future dangerousness to himself and others."

There is absolutely no evidence to support these assertions by the Intern, who literally re-tried my criminal case. When I spoke with the Intern, I said very little and showed no signs of anger, frustration, stress, etc. Thus these statements came about because of my criminal case. The Intern did inform me however that, "The report supports you for release on parole. I hope you get out." Not once I discussed the offense.

The fact of the matter is that I challenged a case manager when she attempted to circumvent policy and this was viewed as upsetting that a prisoner proved a staff wrong. Thus this was reported to the Intern by the case manager -- and where the comment that I'd respond in non-lethal means. There is absolutely no evidence to support the comment other than my criminal conviction in itself.

Even complying with the flawed report recommendations, I completed the following programs, which shall be made available if need be: Alternative to Violence (AVP), RDAP, stress management, men's issues and anger management (which I also facilitated, mentoring program (which I also facilitated – non-psychology program), non-residential drug program, and numerous other programs (not including Recreation/Education programs), which by far overcome the most stringent recommendations. Thus there is no facts to the summary of the Intern's report and must be corrected in accordance with the Privacy Act as well as established case law.

Moreover, a non-qualified Intern pursuing an education prejudiced me in the report. On the other hand, a forensic psychiatrist who personally examined more than 1000 murderers [see Schwartz at page 3 – Discussion], and a specialist for more than 30 years, contradicted the Intern's report to be elementary. Dr. Schwartz states,

On examination Mr. Toolasprashad shows no indication of psychosis or even mental illness. He is fully alert and quite cooperative. He is a good historian, with no evidence of organic mental illness. His statements are always responsive, coherent and relevant, with no suggestion of delusion, hallucinations or otherwise disordered thinking.

DIAGNOSIS:   No Mental Illness
             No Personality Disorder
             No Physical Disorder

[Schwartz at page 2.]

Moreover, the Intern continued contradicting himself – there "is no suggestive of any form of significant psychological impairment." [Schwartz at 3 quoting Intern at 4].

Since the report is inaccurate and flawed based on no evidence it must be corrected as per Sellers v. BOP, 959 F.2d 307, 310, 312 (D.C.Cir. 1992), which states

"As long as the information contained in an agency's files is capable of being verified, then ... the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual. If the agency willfully or intentionally fails to maintain its records in that way and, as a result, it makes a determination adverse to an individual, then it will be liable to that person for money damages."

Also, Toolasprashad v. BOP, 286 F.3d 576, 584-85 (D.C.Cir. 2002), the court held staff are liable for money damages when records are inaccurate,

"Reasonable reliance by some employees cannot immunize an agency from the Privacy Act consequences of employing other individuals who [] deliberately falsified records."

At page 585, "The Bureau offers several counter-arguments, none of which is convincing."

The BP-8 response states that I was evaluated by "two different psychologists whose profesional opinion are different. Therefore she [Dr. Baruch] does not support your request to remove information from either report." A report was written by an Intern whose report is flawed and contradictory, and an accurate report was written by a psychiatrist of 30 years who contradicted the Intern. The Intern's report is inaccurate and not "two" reports needs correcting.

The BP-8 response also states, "You also may request another evaluation."

As one report, not two, is flawed, I am requesting correction by either deleting the ¶ or amending it. In the alternative, that Dr. Baruch place me on Call Out and that she prepare a simple report concerning the contradicted and flawed portion as soon as possible, as I have a parole hearing the last week of September, 2003. [If the report if prepared by Dr. Baruch, staff could verify my overall conduct, interaction with staff, work performance to include volunteer work in other departments, program participation, etc. Once again, the report only needs be brief.]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

August 29, 2003

TOOLASPRASHAD, Latchmie
Register No. 10975-056
Remedy No. 309641-F1

## Part B - Response

In your request for Administrative Remedy, you allege that you received a forensic evaluation which was prepared by a non-qualified psychology intern who made "flawed" and "inaccurate" statements in the report. You request that this report be corrected by either "deleting or amending it." You also suggested that as an alternative, that our Staff Psychologist prepare a report to address the contradictory information and add information to verify your "overall conduct, interaction with staff, work performance, program participation, etc."

An investigation into this matter reveals that the psychological report that you were referring to was written by an intern, but supervised by a full time credentialed staff member. This is not the Staff Psychologist's report to adjust or amend as you request. Furthermore, if you are interested in submitting any information to the parole board regarding your overall conduct, work performance and program participation, you may request your unit team to submit any program participation records and work evaluations to the parole board. Accordingly, your request for an amended report and an additional one from our Staff Psychologist is denied.

If you are dissatisfied with this response, you may appeal to the Northeast Regional Director, Federal Bureau of Prisons. Your appeal must be received in the Northeast Regional Office, U.S. Customs House, 2nd and Chestnut Streets, Philadelphia, PA 19106, within 20 calendar days of the date of this response.


C. J. DeRosa
Warden

9/16/63
Date

EXHIBIT 20

U.S. Department of Justice                                    **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From:   Toolasprashad, Latchmie          10975-056        5803         Ft. Dix, NJ
        LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.         UNIT          INSTITUTION

**Part A—REASON FOR APPEAL**
This is an appeal of the BP-9 response dated 9/16/03 and received by me on 9/19/03, in which the attachments weren't returned, though copies are attached herein. The response prepared by Dr. Baruch for the Warden's signature did not address the issue and failed to address how the challenged information was verified. Moreover, there is no assessment in the flawed and challenged report that could have led the Psychology Intern ("Intern") to his conclusion.

The response states, "An investigation into this matter reveals that the psychological report that you were referring to was written by an intern, but supervised by a full time credentialed staff member." This statement holds no merit because it was the Intern who conducted the short interviews and prepared the report — not once was I interviewed by the Intern and full-time staff member together — and the staff member signed off on the report. Thus the report is flawed and inaccurate and was adversely used against me by the Parole Commission; therefore, I must exhaust administrative remedy to gain access to the courts to have this matter corrected if the BOP won't correct same.

On December 10, 1998, the Parole Commission requested of the BOP to provide a psychological report by MAY 1, 1999. The psychologist, Dr. Kerr, did not write the report and had me and my family believing that he was writing the report when, in fact, I became his personal plaything for some 16 months rather preparing the report. I then utilized the administrative remedy against Dr. Kerr who had me in circles for 16 months that he was writing the report when he wasn't. I was retaliated against and sent to Petersburg, where the report was prepared by an Intern. Rather than writing the report at Ft. Dix where the psychology staff could have verified my overall conduct, numerous program participation, work history, interaction with staff, etc. I was retaliated against for filing the grievances. Hence, the report written by a non-qualified intern pursuing an education prejudiced me, based on a self-inflated ego who retried my criminal case, as the conclusion came from my case that occurred two decades ago when I was younger.

The report is flawed and inaccurate. What the intern done is retried my criminal case without substance of facts. He was supposed to write a report, not retried the case. All the intern done was base his findings on the criminal case — aiding and abetting murder, as there was no facts to support his conclusion.

The flawed and inaccurate report by the intern states in pertinent part,

September 20, 2003                    SEE PAGE 2              _[signature]_
        DATE                                                SIGNATURE OF REQUESTER

**Part B—RESPONSE**

*EXHIBIT 29*

_____                        REGIONAL DIRECTOR
        DATE
If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.
ORIGINAL: RETURN TO INMATE                            CASE NUMBER: _309681-R1_

**Part C—RECEIPT**                                    CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

                                                            BP-230(13)
                                                            APRIL 1982



TOOLASPRASHAD #10975-056, Page 2 of BP-10

All things considered, Mr. Toolasprashad is not believe to personally be at great risk of dangerousness. He is most likely to respond in non-lethal means and if the situation calls for further responses, he is likely to enlist the help of another to initiate more lethal responses. He will enlist the help of an additional individual to keep himself from engaging in behaviors deemed below someone of his capacity.

Irrespective of whether Mr. Toolasprashad receives parole, it is highly recommended that he participate in some form of anger management and assertiveness skill training. Participation in these programs may help him to directly express his frustration and anger in a more socially acceptable manner and may help lessen the likelihood of future dangerousness to himself and others.

There is absolutely no evidence to support these assertions by the intern, who literally re-tried my criminal case. When I spoke with the intern, I said very little and showed absolutely no signs of anger, frustration, stress, etc. Thus these statements came about because of my criminal case. The intern did inform me however that, "The Report supports you for release on parole. I hope you get out." Not once I discussed the offense.

The fact of the matter is that I had challenged a case manager when she attempted to circumvent policy against me and thus was viewed as upsetting that a prisoner proved a professional wrong. Thus this was reported to the intern by the case manager which appear in the report -- and where the comment that I'd respond in non-lethal means. A prisoner has a constitutional right to challenged decisions adverse to him and that is what I've done. Moreover, there is absolutely no evidence to support the comment other than my criminal conviction in itself that occurred almost two decades ago.

Even complying with the flawed and inaccurate report recommendations, I completed the following programs, which is available in the Central File: Alternative to Violence (AVP), Residential Drug Abuse Program (RDAP), stress management, men's issues and anger management (of which I also facilitated), mentoring program (of which I also facilitated), non-residential drug abuse program, and numerous other programs (not including Recreation/Education), which by far overcome the most stringent recommendations. Once again, there is no facts to the summary of the intern's report and must be corrected in accordance with the Privacy Act as well as established case law. A non-qualified intern pursuing an education prejudiced me in the report. On the other hand, a forensic psychiatrist who personally examined more than 1000 murderers [see Schwartz at page 3 - Discussion], and specialist more than 30 years, contradicted the intern's report to be elementary. Dr. Schwartz states,

On examination Mr. Toolasprashad shows no indication of psychosis or even mental illness. He is fully alert and quite cooperative. He is a good historian, with no evidence of organic mental illness. His statements are always responsive, coherent and relevant, with no suggestion of delusion, hallucinations or otherwise disordered thinking.
DIAGNOSIS: No Mental Illness
          No Personality Disorder
          No Physical Disorder

[Schwartz at page 2].

Moreover, the intern continued contradicting himself - there "is no suggestive of any form of significant psychological impairment." [Schwartz at 3 quoting intern].

Since the report is inaccurate and flawed based on no evidence it must be corrected as per Sellers v. BOP, 959 F.2d 307, 310, 312 (D.C.Cir. 1992) which states,
"As long as the information contained in an agency's files is capable of being verified, then... the agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual. If the agency wilfully or intentionally fails to maintain its records in that way and, as a result, it makes a determination adverse to an individual, then it will be liable to that person for money damages."
Also, Toolasprashad v. BOP, 286 F.3d 576, 584-85 (D.C.Cir. 2002) the court held staff are liable when records are inaccurate,
"Reasonable reliance by some employees cannot immunize an agency from the Privacy Act consequences of employing other individuals who [] deliberately falsified records."
At page 585 the Court held, "The Bureau offers several counter-arguments, none of which is convincing."

The BP-8 response states that I was evaluated by "two different psychologists whose professional opinions are different. Therefore she [Dr. Baruch] does not support your request to remove information from either report." A report was written by an intern pursuing an education which is flawed and contradictory, and an accurate report written by a psychiatrist of more than 30 years who contradicted the intern. Thus I challenged the intern's report. The BP-8 also states, "You also may request another evaluation." Yet the BP-9 response prepared by Dr. Baruch, who told the Counselor that I may request another evaluation states, "... your request for an additional one from our staff psychologist is denied." Once again, contradictory statements.

It is clear that the challenged report by the intern was based solely on my criminal offense almost two decades ago. I was judged for something that happen two decades ago and the instant offense, not based on who I am two decades later, as I am now older, followed the prison rules, created inmate programs, etc. Thus there is no evidence for the intern's conclusion which is flawed and inaccurate based on my conviction two decades ago.

I am requesting correction of the intern's flawed and inaccurate report by either deleting the ¶ or amending it. In the alternative, that Ft. Dix psychology staff prepare a report focusing on the challenged and flawed portion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

September 20, 2003                    [signature]



TOOLASPRASHAD, Latchmie
Reg. No. 10975-056
Appeal No. 309641-R1
Page One

---

### Part B - Response

In your appeal, you allege there is a flawed and inaccurate psychological report in your records at FCI Fort Dix. You state it was prepared by a non-qualified intern. You request the report be deleted or amended, or for the psychology staff at FCI Fort Dix to prepare another report discussing the flawed portion of the report.

A review of your appeal revealed that the psychological evaluation in question was completed according to the standards outlined in Bureau policy and the American Psychological Association. The principal evaluator was a psychology intern supervised by a licensed staff psychologist, which is well within community standards. You have failed to present evidence the report is flawed and inaccurate. In addition, the psychological evaluation completed July 25, 2001, reviewed and discussed your previous diagnoses and addresses your specific concerns. The evaluation prepared on July 25, 2001 will be provided to the parole board. You may provide additional, more current information to the parole board and may request your unit team submit any program participation and work performance evaluations on your behalf. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: October 23, 2003

M. E. RAY
Regional Director

EXHIBIT 30

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: TOOLASPRASHAD, LATCHMIE                     5803          FORT DIX, NJ
    LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A—REASON FOR APPEAL**

    The BP-10 response authored by Michael Tafelski for N.E. Ray dated October 23, 2003, was received by me on October 31, 2003 via the institution mail. The response did not address the issues and how the challenged, flawed and inaccurate report was verified.

    The BP-10 response highlights is, "The principal evaluator was a psychology intern supervised by a licensed staff psychologist, which is well within community standards. You have failed to present evidence the report is flawed and inaccurate. In addition, the psychological evaluation completed July 25, 2001, reviewed and discussed your previous diagnoses and addresses your specific concern." I am not challenging the Report prepared by Dr. Schwartz, but rather the report prepared by the intern.

    As is obvious sufficient facts has been provided by Dr. Schwartz in all respect to contradict the intern's report. Thus Dr. Schwartz's report was written one year after the intern's report, yet the BP-10 reviewer failed to see these facts as outlined therein.

    The intern who conducted the short interviews and prepared the report – not once was I interviewed by the intern and staff psychologist together – and the staff member signed off on the report. The report is flawed and inaccurate which was adversely used against me by the Parole Commission; therefore, I must exhaust the administrative remedy to gain access to the court to have this matter corrected since the BOP won't correct same.

    On December 10, 1998, the Parole Commission requested of the BOP to provide a psychological report by May 1, 1999. The psychologist, Dr. Kerr, for 16 months had me and my family believing that he was writing the report when, in fact, I became his "personal plaything." I then utilized the administrative remedy against Dr. Kerr and was retaliated against and sent to Petersburg, where the report was prepared by an intern. Rather than writing the report at Ft. Dix where the psychology staff could have verified my overall conduct, numerous program participation, work history, interaction with staff, etc., I was retaliated against for filing the grievance. Hence, the report written by a non-qualified intern pursuing an education prejudiced me, based on a self-inflated ego who reprinted my criminal case, as

DATE  November 1, 2003     SEE PAGE 2     _signature_ SIGNATURE OF REQUESTER

**Part B—RESPONSE**

EXHIBIT 31

     DATE                                    GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                     CASE NUMBER: 309041-A1

**Part C—RECEIPT**

                                    CASE NUMBER:

Return to: _____
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION
SUBJECT: _____

     DATE                     SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN                                                    BP-231(13)

TOOLASPRASHAD #10975-056, BP-11, Page 2

the conclusion come from my case that occurred two decades ago when I was younger. What the intern done is retried my criminal case without substance of facts. He was supposed to write a report, not retried the case. all the intern done was base his findings on the criminal case – aiding and abetting murder, as there was no facts to support his conclusion.

The flawed and inaccurate report by the intern states in pertinent part,

All things considered, Mr. Toolasprashad is not believe to personally be at great risk of dangerousness. He is most likely to respond in non-lethal means and if the situation calls for further responses, he is likely to enlist the help of another to initiate more lethal responses. He will enlist the help of an additional individual to keep himself from engaging in behaviors denied below someone of his capacity.

Irrespective of whether Mr. Toolasprashad receives parole, it is highly recommended that he participate in some form of anger management and assertiveness skill training. Participation in these programs may help him to directly express his frustration and anger in a more socially acceptable manner and may help lessen the likelihood of future dangerousness to himself and others.

There is absolutely no evidence to support these assertions by the intern, who literally re-tried my criminal case. When I spoke with the intern, I said very little and showed absolutely no signs of anger, friustration, stress, etc. These statements came about because of my criminal case. The intern did inform me however that, "The report supports you for release on parole. I hope you get out." Not once I discussed the offense.

The fact of the matter is that I had challenged a BOP case manager when she circumvented policy against me and this was viewed as upsetting that a prisoner proved a professional wrong. This was reported to the intern and staff psychologist by the case manager which appears in the report – and where the comment that I'd respond in non-lethal means. A prisoner has a constitutional right to challenge decisions adverse to him and that is what I've done — now it is chilling speech preventing me from speaking.

Even complying with the flawed and inaccurate report recommendations, I completed the following programs, which is available in the Central File: Alternative to Violence (AVP), Residential Drug Abuse Program (RDAP), men's issues, stress management, and anger management (which I also facilitated), mentoring program (which I also facilitated), non-residential drug abuse program, RDAP transitional services, and numerous other programs (not including Recreation/Education), which by far overcome the most stringent recommendations of the flawed and inaccurate report. Once again, there is no facts to the summary of the intern's report and must be corrected in accordance with the Privacy Act as well as established case law.

A non-qualified intern pursuing an education prejudiced me in the report. On the other hand, a forensic psychiatrist who personally examined more than 1000 murderers [See Schwartz at page 3 - Discussion], and specialist of more than 30 years, contradicted the intern's report to be elementary. Dr. Schwartz states,

On examination Mr. Toolasprashad shows no indication of psychosis or even mental illness.

He is fully alert and quite cooperative. He is a good historian, with no evidence or organic mental illness. His statements are always responsive, coherent and relevant, with no suggestion of delusion, hallucinations or otherwise disordered thinking.

DIAGNOSIS: No Mental Illness
No Personality Disorder
No Physical Disorder

[Schwartz at page 2].

Moreover, the intern continued contradicting himself – there "is no suggestive of any form of significant psychological impairment." [Schwartz at 3 quoting intern].

Since the report is inaccurate and flawed based on no evidence it must be corrected as per Sellers v. BOP, 959 F.2d 307, 310, 312 (D.C.Cir. 1992) which states,

As long as the information contained in an agency's files is capable of being verified, then ... the agency must take reasonable steps to maintain the accuracy of the insormation to assure fairness to the individual. If the agency willfully or intentionally fails to maintain its records in that way and, as a result, it makes a determination adverse to an individual, then it will be liable to that person for money damages.

Also, Toolasprashad v. BOP, 286 F.3d 576, 584-85 (D.C.Cir. Apr. 19, 2002) the court held that staff are liable when records are inaccurate,

Reasonable reliance by some employees cannot immunize an agency from the Privacy Act consequences of employing other individuals who [...] deliberately falsified records.

At page 585 the Court held, "The Bureau offers several counter-arguments, none of which is convincing."

The BP-8 response states I was evaluated by "two different psychologists whose professional opinions are different. Therefore, she [Dr. Baruch] does not support your request to remove information from wither report." A report was written by an intern pursuing an education which is inaccurate and flawed – contradictory at best. On the other hand, an accurate report was written by a psychiatrist of more than 30 years who contradicted the intern's report. The BP-8 also states, "You also may request another evaluation.", Yet the BP-9 response prepared by Dr. Baruch, who told the Counselor that I may request another evaluation states, "... your request for an additional one from our staff psychologist is denied." Once again, contradictory statements. Yet, the BP-10 never even addressed the issue of my request that a report be prepared at FCI Ft. Dix focusing on the challenged and flawed portion.

It is clear that the challenged report by the intern was based on my criminal case almost two decades ago. I was judged for something that happened two decades ago, not based on who I am two decades later, as I am now older, followed the prison rules, created inmate programs, etc. There is no evidence for the intern's conclusion which is based on my criminal conviction two decades ago.

I am requesting correction of the intern's flawed and inaccurate report by either deleting the ¶ or amending it. In the alternative, that Ft. Dix psychology staff prepare a report focusing on the challenged and flawed portion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

11/1/03

Administrative Remedy No. 309641-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal in which you allege a report prepared by a psychology
intern contains flawed and inaccurate information that was
adversely used against you by the Parole Commission.  You request
the report be deleted or amended or, in the alternative, that
Psychology staff prepare a report focusing on the flawed portion.

Our review reveals the Warden and Regional Director adequately
responded to the issues raised in your appeal.  The report
prepared by the psychology intern, under the supervision of a
licensed staff psychologist, was completed in accordance with
Bureau of Prisons policy and the American Psychological
Association.  We do not find, nor have you provided, any evidence
to substantiate your allegation the report prepared by the
psychology intern contains flawed and inaccurate information.  As
noted by the Regional Director, the report will be provided to
the parole board, however, you may provide additional information
to the parole board on your behalf.

Accordingly, we concur with the responses provided.  Your appeal
is denied.

_____
Date  January 7, 2004

_____
Harrell Watts, Administrator
National Inmate Appeals

EXHIBIT 32



U.S. Department of Justice
Federal Bureau of Prisons
MEMORANDUM

Federal Correctional Institution

Fort Dix, New Jersey  08640

**DATE:** April 19, 2005

**REPLY TO** Bria~
**ATTN OF:** Brian Schwarz, Teacher

**SUBJECT:** Superior Program Achievement
For **Latch Toolasprashad** #10975-056

   **TO:** United States Parole Commission


   This memorandum serves as a recommendation for Latch Toolasprashad receiving Superior Program Achievement (SPA) award, and I am now adding my recommendation for Mr. Toolasprashad in gaining parole.  I wish to note **this is my first recommendation ever being submitted for an inmate**, and deem the submittal justified and warranted based upon the following as the inmate has shown to be worthy of such.

   **Discussion:**  For the past five years I have worked for the Bureau of Prisons (Bureau) as a Correctional Officer and Teacher, at the largest federal institution in the country.  I served four years in the U.S. Marine Corps as an active duty Military Police (MP) Officer, and for the past 6-1/2 years as a Reservist Special Patrol (SP) Officer with the U.S. Air Force.  My current rank is Captain, and my total military service is 10-1/2 years plus 5 years with the Bureau, for a total of 15-1/2 years quality federal service to my country.  As such, I have seen thousands of inmates enter and leave prison and have supervised countless inmates during their incarceration.  As a military officer I am precluded from discussing my military duties.  Nevertheless, based on my extensive background of dealing with large numbers of inmates and military personnel, I have a strong understanding of being able to make rational deliberative on-the-spot judgment and decisions without sacrificing realism.  Currently I am pursuing a degree in law.

   **Offense/Conviction:**  While Mr. Toolasprashad is convicted of a serious offense, in my opinion, he has responsibly used the resources at the institution to rehabilitate himself.  He has shown a turn-around of taking a bad situation and attempted to better himself, particularly under the extreme difficult and restrictive circumstances within a prison environment.

   **Work Assignment/Officer Mess:**  Mr. Toolasprashad while at FCI Fort Dix has been working in the Food Service Department for three years in an area of trust, the Officer's Mess, where approximately 50-70 staff members including the Warden and other Executive Staff eat lunch daily. He previously worked in the Institution Laundry, another

*EXHIBIT 33*

area of trust; the Institution Commissary, an area of high trust; and a tutor/clerk in the Education Department. His conduct was remarkable and it was noted by staff that he goes the extra mile in being trustworthy, completing all assignments, reliable, and exceptionally had working. Further, his efforts have resulted in savings of materials and resources in all the departments. He was and has remained consistently respectful to all staff and inmates.

**Residential Drug Abuse Program (RDAP):**    On November 15, 2002, Mr. Toolasprashad completed the RDAP program, and on October 22, 2003 he completed the Non-Residential Transitional Services aftercare. Staff indicated Mr. Toolasprashad's progress of rehabilitation is outstanding. While in the RDAP program, he completed an additional 1,252 hours of educational/recreation programs, not including the 500-hour RDAP. He also led the RDAP Yoga classes five times a week.

**Psychology/Counseling Program:**    Mr. Toolasprashad has completed several programs via the Psychology  Services, including Anger Management, Stress Management, Alternatives to Violence Workshops (Basic and advanced), Non-Residential Drug Abuse Treatment Program, and Alcoholic Anonymous, and the Mentoring Program. He also facilitated some of the above programs. Mr. Toolasprashad further attends the Counselor's weekly group meeting for the past six years and is a prominent contributor.

**Incarcerated Veterans Group (IVG):**    I am the staff sponsor for the Incarcerated Veterans Group at FCI Fort Dix. The IVG is a highly disciplined group consisting of approximately 55-75 incarcerated veterans, one-of-a-kind group in the Bureau. IVC meets monthly and focuses on issues affecting veterans. Mr. Toolasprashad started the group and is the group Liaison with the Staff Sponsors, no small task of organizing events and working with sponsors to have the guest speakers from the outside – both veterans and active duty personnel – come into the institution and give informative presentations to the group. In fact, my own father was the guest speaker on September 9, 2004. On September 23, 2003, the group had its first female veteran speaker in "Honor of Mothers of soldiers and Veterans."

Due in large part to Mr. Toolasprshad's efforts the IVG has been of great success. He certainly deserves credit and recognition for his apparently selfless dedication in this unique program in the Bureau, especially as the Bureau lacks support groups for incarcerated veterans, until the creation of this particular program. Very importantly, members of the IVG has shown a significant decrease in disciplinary problem – no incident reports was written on any member of the IVG within the past six months.

**Education/Recreation Programs:**   Since January 2004 to the present date of this recommendation, Mr. Toolasprashad has completed 840 hours of programming, and with a review of his Inmate Education Data Transcript showing a total of 5,227 hours of programming during his incarceration. These completions, however, do not reflect his participation in the weekly counseling group or his additional contributions of acting as a sports official and in organizing inmate Recreation Department programs such as holiday

multi-day events or the Incarcerated Veterans Group Programs, and in almost daily interactions with that department's staff in order to offer assistance with the programs as those activities, while a part of his efforts, do not appear on computer records.

**Overall Conduct/Demeanor:**   On an almost daily basis, I have observed Mr. Toolasprashad in the Education Department and Food Service Department, while on the prison compound, during Recreation Department events, within his housing unit, at the Incarcerated Veterans Group meetings, and in his interactions with inmates, staff, and visitors.   Moreover, I have spoken with other staff members with whom Mr. Toolasprashad regularly interacts.  His behavior and conduct has always been respectful and commendable and he sets positive examples in his work performance, conduct, program participation and rehabilitation for other inmates to follow.

**Conclusion:**   From an overall view of Mr. Toolasprashad's demonstrated rehabilitative efforts and acceptance of responsibility, his program completions and accomplishments, and his consistently exemplary behavior shown in all aspects of his daily efforts, he should, in this writer's opinion be considered for immediate parole.

From my professional experience, Mr. Toolapsrashad is one of the few inmates I feel with confidence will remain crime free and should be released without reservation.

Should you have any questions, I can be reached at (609) 723-1100. *ext 741*

*R.*

608 723-UUC EXT 8717

U.S. Department of Justice

Federal Bureau of Prisons

Memorandum

*Page 1 of 2*

*Federal Correctional Institution*                    *Fort Dix, NJ 08640*


DATE:   June 14, 2001

REPLY TO
ATTN OF:   *Richard Aponte*, Material Handler Supervisor

SUBJECT:   TOOLASPRASHAD, LATCH 10975-056

TO:   U.S. Parole Commission


During the past 6 years working with the Bureau of Prisons
("BOP") in positions as Senior Correctional Officer and presently Ma-
terial Handler Supervisor, I have come in contact with and observed
thousands of inmates. With combined Active and Reserve military serv-
ice and presently on Reserve status with the United States Air Force,
I have 15 years military service and experienced "combat" in two thea-
ters. Being around so many people with the Bureau and military has
given me an excellent understanding of the qualities of how to make
good and rational judgment of others.

Since the arrival of Latchmie Toolasprashad (known as "Latch" to
everyone) at FCI-Fort Dix in September 1998, I observed him in the
housing unit as I was his Unit Officer and he volunteered for me as a
Unit Orderly, in the dining room, on the compound, in the Education
Department, Recreation, Chapel and am now his direct supervisor.
Latch has always maintained a low profile with a high degree of re-
sponsibility, competency and exceptionally respectful in dealing with
staff.

Latch presently works in a highly controlled area - the Commis-
sary. This Commissary is a combination of FCI-Fort Dix West, East and
Camp or combined services rendered to more than 4000 inmates. Coordi-
nation of supplies passes through a Central Warehouse then distributed
to the three locations. During the week of May 14, 2001, the Office
of Financial Management (Business Office) went through its Program Re-
view (Audit). Under my supervision and that of three other staff mem-

bers, Latch organized and pulled the workers together - acted as a di-
rect liaison between workers and staff - resulted in "zero" discrepan-
cies in the Commissary.  He is well trusted and basically in-charge of
quarterly inventory  in excess of $500,000 of materials.
This is not an easy task considering the fact that one mistake could
result in an inaccurate inventory which could create chaos and confu-
sion.  Through Latch's dedication and exceptional organizational capa-
bility the department has functioned in a high degree of professional-
ism to meet the institution objectives.

     In addition to his Commissary duties as the Clerk, Latch still
assists the institution Laundry Department by acting as their full-
time clerk without compensation.  During late-October to late-November
2000, all 12 inmate workers were removed from the Laundry for various
infractions.  Latch and one other inmate performed the entire depart-
ment's detail that rendered services to 2000 inmates.  Once again, on
May 30, 2001, all inmate workers from the Laundry were placed in the
Special Housing Unit ("SHU") under investigation by the Captain and
Supervisory Investigative Staff ("SIS") for institution security con-
cerns.  Latch was called by that department staff to work 5 hours in
the Laundry, while still working a full 8-hour/day in the Commissary.

     He keeps himself busy from 6:00 a.m. to 9:00 p.m. through work,
programming and volunteer services.  His suggestions and never-ending
work habit on all of these assignments saved the Bureau thousands of
dollars in both materials and monetary resources.

     Personally I am in the habit of maintaining contact with Unit
Team staff and I know Latch's Counselor and also observed his interac-
tion with other Counselors in terms of programs he facilitates, which
are:  Anger Management, Men's Issues and the mentoring Program, all of
which requires good communication skills that he possess.  None of the
inmates who completed these programs under him have since been cited
with disciplinary infractions which is commendable.

     Latch shows much respect for staff and is a role model for other
inmates to follow.  Without hesitation I personally recognize Latch
Toolasprashad's efforts to better himself, the acceptance of responsi-
bility for his offense and he should obtain immediate release back to
the community.  He has repeatedly set examples for inmates to respect
and follow and further incarceration would serve no useful purposes.
This is the first recommendation I have written for any inmate and I
am requesting that it be considered in its entirety.



U.S. Department of Justice

Federal Bureau of Prisons

Memorandum

_____

*Federal Correctional Institution*                              *Fort Dix, NJ 08640*

DATE: November 1, 2000

REPLY TO
ATTN OF: Luis Reyes, Counselor

SUBJECT: Parole Recommendation For Latch Toolasprashad, #10975-056

TO: United States Parole Commission

On January 3, 2000, I prepared a Parole Recommendation for Latch Toolasprashad; this Memo serves as a <u>supplement</u> to that recommendation. The contents of my January 3, 2000 Memo stands firm to include the contents herein.

Latch is presently assigned to the Commissary and has continued doing more than any inmate I have come in contact with. He continues volunteering throughout the institution in various departments: Vocational Training, Religious Services, Food Service, Recreation, Education, and the Laundry. He is also a "facilitator" for my Mentoring group and acts as a direct liaison between the inmates and Unit Team staff for that group helping staff with the inmates as they become more aware of their feelings and being able to communicate those feelings and resolve internal conflicts.

On October 3, 2000, all inmate workers assigned to the institution Laundry were removed for various infractions. Based on "institution needs," as he is trusted with the operations, Latch and another inmate were "requested" by staff to operate the entire department until new workers were hired and trained. Thus Latch has been working two jobs from 6:00 a.m. to 7:30 p.m. daily, and still makes time to do "volunteer" work. The institution Laundry is responsible for more than 2000 inmates on FCI Fort Dix West to include the Special Housing Unit (SHU), Hospital, inmates going through the Admission and Orientation (A&O) process before moving to FCI Fort Dix East, Receiving and Discharge (R&D), as well as dealing with the housing units confiscation of clothing materials.

In my opinion and that of other staff members, continued incarceration of Latch would serve no useful purposes. He has been punished severely and has accepted complete responsibility for his offense. HE IS NOT AN INMATE IN DENIAL.

In addition to the recommendation of my January 3, 2000 Memo and with concurrence of several staff members from various departments, it is highly recommended that Latch Toolasprashad be paroled to the community. Again, if we had the jurisdiction to release inmates, consideration of Latch would be first based on his conduct, acceptance of responsibility, job performance, interaction with staff, and assistance to staff within the programs and institution.



U.S. Department of Justice

Federal Bureau of Prisons

Memorandum

*Federal Correctional Institution*                    *Fort Dix, NJ 08640*

DATE:   January  03, 2000

REPLY TO
ATTN OF:   Luis Reyes, Correctional Counselor

SUBJECT:   Parole Recommendation/Superior Program for
**TOOLASPRASHAD**, Latchmie #10975-056

TO:   United States Parole Commission


I have known Mr. Toolasprashad ("Latch" to everyone) since his arrival
at FCI-Fort Dix, as I in-process him upon arrival.  I am also his
counselor.  During my 10 years working for the Bureau, this is the
first recommendation made by me that an inmate be paroled to the
community.  In all sense of fairness to the inmate, this recommendation
should be honored for the following reasons.

Latch is an unusual case, as his offense is out-of-character for the
person we have come to know.  I visit Latch's work area regularly where
his supervisors are impressed with his work and conduct.  I have received
many superb reports from staff within other departments including Food
Service personnel, Vocation Instructor, Education Staff, and Recreation
Staff, all concerning his volunteer efforts to their departments.  Also,
I have received many comments from other staff and counselors about Latch
doing everything to better himself.

During the week of October 25, 1999, Latch performed above and beyond the
call in the Laundry and Food Service Departments.  This was during the
accreditation process of FCI-Fort Dix by the **American Correctional
Association (ACA)**.  This inspection was one of the most important at FCI-
Fort Dix, as the institution was not yet accredited.  Upon completion of
the ACA inspection, FCI Fort-Dix received the highest ratings of any BOP
facilities, an 99.9%.  The ACA inspectors paid particular note to the
Laundry facility as the best operation in any prison they had ever seen.

Page 1 of 2

Concerning program participation at FCI-Fort Dix, Latch attends my weekly group, as well as another Counselor's weekly group. He has completed six VT independent courses, the VT Electric Course, three Adult Continuing Education (ACE) courses and has instructed the first ACE Science (Biology) course at FCI-Fort Dix that even the Warden attended. He has received commendations from the Education, Religious, Food Service, and Laundry Departments. Also, Latch received the "first" Distinguished Service Award from the Education Department for his selfless contribution to educate others. There are no other programs at Fort Dix to offer Latch.

A review of his Central File shows superior programming throughout his incarceration. He has developed and created inmate Veteran's Groups at other institutions, written various programs for numerous departments, and has assisted staff in making their jobs easier. **Latch has saved the Bureau thousands of dollars, as well as saved the lives of two inmates.**

Latch shows a tremendous amount of respect for the BOP and its staff. I, along with other staff, have met with his family and have also spoken with them on the phone. He has the best family/community support mechanism we have seen for successful re-entry into society.

**Most importantly and commendable, Latch has taken full responsibility for his offense and has done very well to make something good out of something bad. At his unit Unit Team appearance he sincerely expressed his regrets and sorrows for his crime and asked his Unit Team to recognize his efforts -- which the Unit Team has. Latch is a prime example for the other inmates of how people change for betterment of others.**

I am writing this recommendation with concurrence of other staff members from various departments that Latch Toolasprashad be paroled to the community as soon as possible. If we had the jurisdiction to release inmates, consideration of Latch would be first. Latch deserve an opportunity at freedom to get his life in order.

If I can be of further assistance, please contact me at (609) 723-1100 Ext. 632.

UNITED STATES GOVERNMENT

# memorandum
Federal Correctional Institution
Fort Dix, New Jersey  08640

DATE:  January 18, 2001

REPLY TO
ATTN OF:  Scott Silver, Material Handler Supervisor

SUBJECT:  TOOLASPRASHAD, LATCH #10975-056

TO:  Fred Perkins, Case Manager

U.S. Parole Commission


I have had the opportunity to observe the work performance and conduct of
inmate Latch Toolasprashad.  By far, this inmate has been the hardest worker
I've had under my detail during my five years with the Bureau.  His detail
positions constituted  much trust, as he was responsible for inventory,
stock items, clothing files for more than 2000 inmates, and many other
duties.  He took personal pride to ensure all files were properly documented
to avoid costs to the institution.  Mr. Toolasprashad takes pride in every
work assignment given to him.

Mr. Toolasprashad is the ideal inmate as he interacts with custody, unit
management and executive staff; he always conducts himself in a professional,
polite and courteous manner, and he goes that extra mile to help everyone
and making those jobs easier.

While Mr. Toolasprashad is presently assigned to the Commissary - working
in all areas - he was called upon in late September-November, 2000 to assist
in the institution Laundry.  He worked an average of five (5) hours daily
in the Laundry (as all workers were removed for various infractions), above
his full regular work assignment schedule, then worked eight (8) hours in
the Commissary for a total of 13-hour/day.  [Inmate Toolasprashad and another
inmate performed the work of 10 inmate workers.]  Based on the work he has
performed, the institution has significantly saved on both monetary and
materials resources

If my opinion means anything to the Commission, this inmate is better suited
in society rather than in a correctional institution.

OPTIONAL FORM NO. 10
(REV. 1-80)
GSA FPMR (41 CFR) 101-11.6
5010-114

```
 FTDME           *           INMATE EDUCATION DATA          *      11-05-2006
 PAGE 001        *               TRANSCRIPT                 *      08:59:00

 REGISTER NO: 10975-056     NAME..: TOOLASPRASHAD        FUNC: PRT
 FORMAT.....: TRANSCRIPT    RSP OF: FTD-FORT DIX FCI

 --------------------------- EDUCATION INFORMATION -------------------------
 FACL ASSIGNMENT DESCRIPTION                   START DATE/TIME STOP DATE/TIME
 FTD  ESL HAS    ENGLISH PROFICIENT            09-11-1991 1725 CURRENT
 FTD  GED HAS    COMPLETED GED OR HS DIPLOMA   06-01-1991 0712 CURRENT

 --------------------------- EDUCATION COURSES ----------------------------
 SUB-FACL   DESCRIPTION               START DATE  STOP DATE EVNT AC LV  HRS
 FTD GP     CORRESPND CL:SEE REV-SCHOOL/CL 05-08-2006 09-12-2006  P  C  P   130
 FTD GP     CORRESPND CL:SEE REV-SCHOOL/CL 04-10-2006 08-28-2006  P  C  P   140
 FTD GP     CORRESPND CL:SEE REV-SCHOOL/CL 03-19-2006 07-22-2006  P  C  P   132
 FTD GP     CORRESPND CL:SEE REV-SCHOOL/CL 01-14-2006 06-17-2006  P  C  P   160
 FTD GP     HIGH IMPACT AER S/S 7-8:30AM  05-05-2006 07-09-2006  P  C  P    36
 FTD GP     U.S MIL HISTORY - CIVIL WAR   10-02-2005 03-14-2006  P  C  P   108
 FTD GP     US MILITARY HISTORY/VIETNAM   09-25-2005 01-08-2006  P  C  P    80
 FTD GP     HIGH IMPACT AER S/S 7-8:30AM  11-04-2005 12-20-2005  P  C  P    36
 FTD GP     ADVANCE BEADERY S/TH/S 6-8PM  06-11-2005 09-15-2005  P  C  P    63
 FTD GP     BEG STEP AEROBICS M/W/F 6-8PM 04-11-2005 06-29-2005  P  C  P    33
 FTD GP     BEGINNER BEADERY S/TH/S 6-8PM 04-10-2005 06-26-2005  P  C  P    63
 FTD GP     CORRESPND CL:SEE REV-SCHOOL/CL 02-28-2005 04-08-2005  P  C  P    68
 FTD GP     CORRESPND CL:SEE REV-SCHOOL/CL 01-30-2005 04-11-2005  P  C  P    84
 FTD GP     COMPUTER SKILLS VT-2:00-3:30PM 02-09-2005 05-13-2005  P  C  M   120
 FTD GP     ADV ORIGAMI S/T/TH 6-8P       01-24-2005 04-11-2005  P  C  P    63
 FTD GP     CIRCUIT TRNG BEG M/W/F 6-8PM  01-10-2005 03-28-2005  P  C  P    36
 FTD GP     US MILITARY HISTORY/VIETNAM   09-26-2004 01-16-2005  P  C  P    60
 FTD GP     CORRESPND CL:SEE REV-SCHOOL/CL 09-23-2004 11-12-2004  P  C  P    40
 FTD GP     CORRESPND CL:SEE REV-SCHOOL/CL 06-30-2004 09-20-2004  P  C  P    40
 FTD GP     CORRESPND CL:SEE REV-SCHOOL/CL 05-03-2004 06-28-2004  P  C  P    40
 FTD GP     BEG ORIGAMI S/T/TH 6-8P       10-22-2004 12-22-2004  P  C  P    63
 FTD GP     MON/WED/FRI 7-8:BUILD ENDURANC 10-12-2004 12-19-2004  P  C  P    33
 FTD GP     CLASSIC CINEMA CLASS          07-01-2004 09-21-2004  P  C  P    63
 FTD GP     500 MILE WALK FOR LIFE        05-04-2004 08-31-2004  P  C  P   100
 FTD GP     CLASSIC CINEMA CLASS          04-04-2004 06-17-2004  P  C  P    63
 FTD GP     CORRESPND CL:SEE REV-SCHOOL/CL 03-12-2004 03-31-2004  P  C  P    25
 FTD GP     CORRESPND CL:SEE REV-SCHOOL/CL 02-23-2004 03-15-2004  P  C  P    25
 FTD GP     CORRESPND CL:SEE REV-SCHOOL/CL 01-22-2004 02-17-2004  P  C  P    25
 FTD GP     CORRESPND CL:SEE REV-SCHOOL/CL 12-20-2003 01-27-2004  P  C  P    25
 FTD GP     HATHA YOGA ADV M/W/F 6-8PM    09-17-2003 02-17-2004  P  C  P    60
 FTD GP     ADV ORIGAMI S/T/TH 6-8P       10-20-2003 12-09-2003  P  C  P    30
 FTD GP     NUTRITION CLASS               10-12-2003 01-29-2004  P  C  P    40
 FTD GP     CIRCUIT TRNG ADV S/T/TH 6-8PM 09-28-2003 12-14-2003  P  C  P    54
 FTD GP     YOGA MEDITATION, W-F 8-9PM    03-28-2003 05-23-2003  P  C  P    40
 FTD GP     AEROBIC 1                     12-04-2002 04-16-2003  P  C  P    32
 FTD GP     ABDOMINAL TRAINING            12-10-2002 02-14-2003  P  C  P    28
 FTD GP     ADV CALLIGRAPHY S/W 6-8P      10-13-2002 01-07-2003  P  C  P    32
 FTD GP     HEALTHY LIVING CLASS          01-13-2003 05-09-2003  P  C  P    54
 FTD GP     YOGA CLASS                    10-29-2002 03-25-2003  P  C  P    58
 FTD GP     NUTRITION CLASS               12-15-2002 03-29-2003  P  C  P    32

 G0002       MORE PAGES TO FOLLOW . . .
```

EXHIBIT 33

```
FTDME          *          INMATE EDUCATION DATA         *      11-05-2006
PAGE 002       *              TRANSCRIPT                *      08:59:00

REGISTER NO: 10975-056      NAME..: TOOLASPRASHAD           FUNC: PRT
FORMAT.....: TRANSCRIPT     RSP OF: FTD-FORT DIX FCI
```

```
----------------------------- EDUCATION COURSES -----------------------------
SUB-FACL   DESCRIPTION                    START DATE  STOP DATE  EVNT AC LV   HRS
FTD GP     CPR                            03-17-2003 03-21-2003   P   C  P     4
FTD GP     CIRCUIT TRAINING               12-12-2002 03-13-2003   P   C  P    22
FTD GP     CIRCUIT TRNG SU & TH 7 - 8 PM  10-13-2002 01-05-2003   P   C  P    60
FTD RDAP   YOGA MEDITATION, W-F 8-9PM     05-11-2002 10-11-2002   P   C  P    72
FTD RDAP   ADVANCED ELECT VT 1400-1530    01-28-2002 05-03-2002   P   C  M   120
FTD RDAP   HEALTHY LIVING CLASS           02-11-2002 04-07-2002   P   C  P    45
FTD RDAP   PERSONAL TRNG CERTIFICATION    01-13-2002 09-20-2002   P   C  P   525
FTD RDAP   PERSONAL TRNG CERTIFICATION    10-29-2001 01-13-2002   P   C  P    60
FTD RDAP   BEGINNING AEROBICS             11-16-2001 01-13-2002   P   C  P    48
FTD RDAP   NUTRITION CLASS                01-20-2002 03-20-2002   P   C  P    18
FTD RDAP   PERSONAL TRNG CERTIFICATION    10-29-2001 01-29-2002   P   C  P    60
FTD RDAP   COMPUTER SKILLS VT-7:30-9:00AM 10-29-2001 05-14-2002   P   C  E   120
FTD RDAP   ACE-STARTING A BUSINESS   W    02-07-2002 04-04-2002   P   C  P    23
FTD GP     CPR                            11-20-2000 11-20-2000   P   C  P     4
PET        REALESSTATE ACE                08-07-2000 09-28-2000   P   C  P    70
FTD GP     COMPUTER SKILLS VT-2:00-3:30PM 03-20-2000 06-12-2000   P   W  I    90
FTD GP     ACE- REAL ESTATE; TU 7-8:30PM  07-24-1999 11-06-1999   P   C  P    20
FTD GP     ELECT 0900-1030                08-13-1999 11-24-1999   P   C  M   120
FTD GP     THINK&GROW ACE 6:30-7:30PM M-F 01-15-1999 04-16-1999   P   C  P    11
FTD GP     ACE STRUCTURAL PAINT SELF STDY 01-19-1999 02-19-1999   P   C  P    30
FTD WEST   PLUMBING SELF STUDY CL         01-06-1998 01-20-1998   P   C  P    30
FTD WEST   POWER PLANT/SELF STDY CL       10-19-1998 01-07-1999   P   C  P    45
FTD WEST   SCHEMATIC DRAWING/SELF STDY CL 10-03-1998 11-05-1998   P   C  P    30
FTD WEST   BLUEPRINT READING/SELF STDY CL 09-01-1998 10-19-1998   P   C  P    30
FTD WEST   LAND MAINT/SELF STUDY          09-16-1998 09-18-1998   P   C  P    30
CUM        BASIC PARENTING                05-28-1998 07-23-1998   P   C  P    18
MNA M      BEGIN SPANISH M&F 0630-0730    03-16-1998 04-24-1998   P   C  P    12
ALM        RELEASE PREPARATION PROGRAM    02-28-1997 03-14-1997   P   C  P    40
ALM        RELEASE PREPARATION PROGRAM    08-13-1996 09-19-1996   C   C  P    32
ALM        NATIVE AMERICAN HISTORY ACE CL 02-12-1996 04-22-1996   P   C  P    24
ALM        ASTRONOMY (ACE)                01-19-1996 03-28-1996   P   C  P    22
ALM        CINEMA ACE (SAT)               12-07-1995 01-11-1996   P   C  P    22
ALM        ASTRONOMY ACE CLASS(TUE)       10-07-1995 01-11-1996   P   C  P    22
ALM        ASTRONOMY (ACE)                06-01-1995 08-29-1995   P   C  P    24
ALM        PARK COLLEGE SATURDAY          05-16-1995 08-03-1995   P   C  P    30
ALM        RELEASE PREPARATION PROGRAM    01-09-1995 03-22-1995   P   C  P    28
FAI        PRERELEASE/PHASE I             05-11-1994 06-20-1994   P   C  P    18
FAI        WORLD HISTORY                  06-08-1994 07-08-1994   P   C  P    10
LEW        MANAGEMENT                     09-07-1993 12-07-1993   P   C  P    36
LEW        MANAGEMENT COLLEGE CLASS       09-07-1993 12-07-1993   P   C  P    36
LEW        HISTORY                        09-07-1993 12-07-1993   P   C  P    36
LEW        INTRO TO GEOGRAPHY             09-07-1993 12-07-1993   P   C  P    36
LEW        AM.FRGN.POLICYINTHE20THCENT.   05-10-1993 09-07-1993   P   C  P    36
LEW        MANAGEMENT                     05-10-1993 09-07-1993   P   C  P    36
LEW        RUSSIA IN THE 20TH CENTURY     05-10-1993 09-07-1993   P   C  P    36

G0002        MORE PAGES TO FOLLOW . . .
```

```
FTDME            *          INMATE EDUCATION DATA        *     11-05-2006
PAGE 003 OF 003 *              TRANSCRIPT                *       08:59:00

REGISTER NO: 10975-056    NAME..: TOOLASPRASHAD         FUNC: PRT
FORMAT.....: TRANSCRIPT    RSP OF: FTD-FORT DIX FCI
```

```
---------------------------- EDUCATION COURSES ----------------------------
SUB-FACL    DESCRIPTION                 START DATE  STOP DATE  EVNT AC LV  HRS
LEW         THE HUMAN BODY              05-10-1993 09-05-1993   P   C  P    36
LEW         MANAGEMENT CLASS            01-11-1993 05-10-1993   P   C  P    45
LEW         SR SEMINAR IN MANAGEMENT    01-13-1993 05-10-1993   P   C  P    45
LEW         HISTORY CLASS               01-11-1993 05-10-1993   P   C  P    45
LEW         MANAGEMENT                  09-07-1992 12-18-1992   P   C  P    36
LEW         HISTORY OF EUROPE           09-07-1992 12-18-1992   P   C  P    36
LEW         ENGLISH-201                 09-07-1992 12-18-1992   P   C  P    36
LEW         ECONOMICS-301               09-02-1992 12-18-1992   P   C  P    36
LEW         ALGEBRA - 131               05-11-1992 08-30-1992   P   C  P    36
LEW         HISTORY 215                 05-11-1992 08-30-1992   P   C  P    36
LEW         U.S. HISTORY II             05-11-1992 08-30-1992   P   C  P    36
LEW         ACCOUNTING II               05-11-1992 08-30-1992   P   C  P    36
LEW         BUSINESS MGT - 390          01-13-1992 04-24-1992   P   C  P    36
LEW         ENGLISH                     01-13-1992 04-24-1992   P   C  P    36
LEW         ACCOUNTING                  01-13-1992 04-24-1992   P   C  P    36
LEW         PRINCIPLES OF MARKETING     09-09-1991 01-07-1992   P   C  P    45
LEW         BUSINESS LAW 11             09-09-1991 01-07-1992   P   C  P    45
LEW         MANAGEMENT                  09-09-1991 01-07-1992   P   C  P    45
LEW         CONCEPTS OF COMPUTERS       09-09-1991 01-07-1992   P   C  P    45
LEW         MATHEMATICS COLLEGE CLASS   05-13-1991 09-04-1991   P   C  P    45
LEW         ECONOMICS - 141             05-13-1991 09-04-1991   P   C  P    45
LEW         BUSINESS MGT - 260          01-16-1990 05-10-1990   P   C  P    36
LEW         ENGLISH - 221               01-16-1990 05-10-1990   P   C  P    36
LEW         ECONOMICS - 142             01-16-1990 05-10-1990   P   C  P    36
LEW         ENGLISH ROOM 102            09-11-1989 01-24-1990   P   C  P    45
LEW         MATH106                     09-11-1989 01-24-1990   P   C  P    45
LEW         PSYCHOLOGY 101              09-11-1989 01-24-1990   P   C  P    45
ASH         AUTO MECHANIC 1 PM          01-27-1989 03-10-1989   P   C  U   127
SPG         VT-MOTORCYCLE REPAIR        07-25-1988 10-13-1988   P   C  M   102
SPG         VT-TRANSAXLES               06-20-1988 07-19-1988   P   C  M   105
SPG         VT-DIESEL                   04-29-1988 05-25-1988   P   C  M   103
SPG         VT-SMALL ENGINE REPAIR      03-31-1988 04-29-1988   P   C  M   112
BUT MH      ADULT BASIC EDUCATION - FY87 11-16-1987 12-04-1987  P   W  I    19
BUT MH      BLDG MAINTENANCE/CUST, NON-COL 04-06-1987 06-03-1987 P  C  M   150
BUT MH      ADULT BASIC EDUCATION - FY87 02-02-1987 03-30-1987  P   W  V    26
```

```
G0000       TRANSACTION SUCCESSFULLY COMPLETED
```