UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
DEC 1 4 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

TOOLASPRASHAD,
    Plaintiff,

v.

BUREAU OF PRISONS,
    Defendant

CIVIL NO. 06-1187-ESH

PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL,
OR IN THE ALTERNATIVE AN AMICUS

    Plaintiff respectfully files this motion seeking the Court's consideration for appointment of counsel, or in the alternative an amicus.

    Plaintiff has been a prisoner for the past 21 years, he does not have any legal training, nor any resources to hire counsel, and this case is taking a turn in which explanation of the issues becoming complex and plaintiff unable to explain and challenge the U.S. Parole Commission (USPC) and/or review their records.

I.

    Plaintiff has medical problems, ie, physical injuries of both knees and lower back (from military parachute jumps), and a "combat injury" of his right ankle, an extremely bad chronic sinus problem inherited from military service -- all of which are extremely painful and plagued with discomfort. Additionally, plaintiff has vision (focusing) problem and was "recently" told by a medical guard that the waiting list to be examined by the optometrist is about one year, notwithstanding plaintiff was allegedly placed on this waiting list back in February 2005; however, plaintiff's medical records from 1995 to January 2005 conveniently disappeared when he challenged medical guards of deliberately and knowingly falsifying the medical records concerning injuries inherited from service while assigned with the Army's 82nd Airborne Division.

II.

There is a grave problem with the law library hours in which the library supposed to open Monday-Thursday, 7:45 a.m. - 10:30 a.m.; 12:30 p.m. - 3:30 p.m.; and 6:00 p.m. - 8:30 p.m., with no evening library on Friday and no library on Sundays with a prison population of approximately 2,500 prisoners. The library on Saturday supposed to be from 8:00 a.m. - 9:30 a.m. and 12:30 p.m. - 3:30 p.m. However, the library is notorious for opening late, closes early and sometimes does not open at all without notice. Plaintiff will give the schedule for the past week to show the Court a pattern: Thursday, November 30, 2006, the hours was 8:00-10:30 a.m.; 12:35-1:55 p.m., and 6:15-7:35 p.m. or a total of 5½ hours when the education guards are working 10-hours/day; Friday, December 1, 2006, from 8:00-10:20 a.m., 12:30-3:30 p.m. or 5¼ hours of a 10-hour/day; Saturday, December 2, 2006 from 8:00-9:15 a.m. and 11:45 a.m. - 3:15 p.m. or 4-3/4 hours of a 10-hour/day; Monday, December 4, 2006 from 7:45-10:25 a.m., 12:30-3:30 p.m., and 6:35-8:15 p.m. or 7¼ hours of a 10-hour/day; Tuesday, December 5, 2006 from 7:40-10:20 a.m., 12:35-3:15 p.m., 6:00-8:15 p.m. or 7½ hours of a 10-hour/day; Wednesday, December 6, 2006, from 7:45-10:15 a.m., 12:35-1:55 p.m., and 6:30-6:40 p.m.(10 minutes), or 4-hours of a 10-hour/day; Thursday, December 7, 2006, from 7:45-10:15 a.m., 12:30-3:15 p.m., no guard even showed up for the evening hours and closed without notice, or 5¼ hours of a 10-hour/day.

As the Court can see the law library hours is quite erratic and plaintiff is required to work in the Food Service department from 7:00 a.m. - 3:00 p.m., Monday - Friday. During his leisure hours in the evenings plaintiff attends a counseling group on Tuesday evenings, and tries to utilize the law library during Monday, Wednesday, Thursday evenings and on Saturdays; however, the Court can see the limited hours merely because the prison administration does not care and, in fact, many times plaintiff overheard guards talking how they do not care if the library ever opens. Additionally, there is about seven working typewriters for a population of about 2,500 prisoners. Then within the past three weeks the law

2

library stops providing printwheels for the typewriters without notice, so it is impossible to get anything done. The law library doe not open without the presence of the inmate law clerks and almost daily they show up to work late during the evening hours and closes the library before 8:30 p.m., sometimes as early as 8:05 p.m. and the education guards do nothing to correct this activity.

All the materials and law books are behind a window with all the books arranged in such a way totally impossible to see any titles. That is, plaintiff must ask the so-called inmate law clerks for research materials that plaintiff doesn't even know what he's looking for. Plaintiff is not allowed to go behind the window, thumbing through the books in an effort to free-hand research; he either knows exactly what he's looking for or does not.

In order to get one of the working typewriters plaintiff must miss the evenin meal in order to rush over to the law library and wait for one to one-and-a-half hours before the library opens. That is, plaintiff must chose between the law library or eating.

There is a grave problem in the law library wherein it is extremely noisy, the inmate law clerks are charging anywhere from $300-$3,000 for rendering assistance when it is a prohibited activity. The prison administration openly allows this conduct by the law clerks and are not doing anything to curb the behavior. The law clerks would reserve the few working typewriters for paying customers or their buddies. In fact, plaintiff was told he'd have to pay two law clerks a total of $,000 to get any help in this action because it deals with a parole issue, money plaintiff does not have, as he has been in prison 21 years. Moreover, plaintiff had to even pay to have this few pages typed.

### III.

In fact, on October 11, 2005, a prisoner (Bendyna #40866-050) began with a series of requests regarding the conduct of the law clerks charging to do legal work, reserving the few working typewriters and printwheels, etc,, and the various responses are outright lies and cover-ups **(Exhibit 1)**. By response of February 19,

3

2006, Mr. Bendyna made a follow-up to Warden Samuels, and Samuels' response reiterate that the matter is documented **(exhibit 2)** and, still, more than a year later nothing has been done to remove those law clerks..

Yet, another prisoner (Williams #40710-018) began a series of grievances on February 21, 2006 and concluded September 1, 2006 to expose the problems at the law library. The counselor who responded and prison administration are merely covering up the problems and doing nothing to have the inmate law clerks who are charging to do legal work removed. Mr. Williams further pointed out that there is no supervision of these inmate law clerks, and the Warden (Samuels), Supervisor of Education (Watford)_, and education guards are promoting this conduct **(exhibit 3)**.

Additionally, Mr. Bendyna went as far as to send letters of complaints to Mr. Thomas McLaughlin, Assistant Inspector General, and to the Honorable Robert Mendez, U.S. Senator, concerning how the prison staff are allowing the corruption at the law library without oversight or supervision **(exhibit 4)**.

Plaintiff has been confined at FCI Ft. Dix more than eight years and see the guards would only open the law library door then disappear, return at close up time, wherein the inmate law clerks have absolutely no supervision and the statement by Counselor Thompson to Mr. Bendyna complaint that the inmate law clerks have "effective supervision" by the education guards is an outright lie. Hence, when plaintiff first arrived at FCI Ft. Dix, he worked in the education department as a clerk/tutor for the GED and "then" college program and had absolutely no supervision; plaintiff had access to inmates' college transcripts and other privacy documents but never compromised same. Because of the unprofessional conduct of the care-not attitude of the education guards, plaintiff quit the education job and went to the institution laundry.

To further show how the prison administration does not care points to a letter by Mr. Peter J. Schaffer, Attorney, regarding his client Hooten #14881-014, in which Mr. Schaffer was appointed counsel after Hooten motioned that Court about problems at the law library. Mr. Schaffer indicated in a letter to Mr. Hooten dated March 29,

4

2006, "... Ft. Dix is the most difficult prison I have ever dealt with...."
(Exhibit 5).

IV.

On January 2, 2003, plaintiff filed an FOIA with the Parole Commission in order to obtain a U.S. Parole Commission Manual for the years 1985, 1986, or 1987 (exhibit 6), and by response from the USPC informed about the current manual, not the requested (exhibit 7). The appropriate manuals of the specified years relate to this action.

Plaintiff even contacted Georgetown University Law Center (exhibit 8), Prison Self Help Legal Clinic (exhibit 9), as well as Viewpoint Gallery of rare books (exhibit 10), and the parole manuals for 1985, 1986, or 1987 cannot be found. Additionally, plaintiff had written to at least 15 other organizations but with no luck of getting the parole manuals. Just on December 6, 2006, plaintiff wrote to the NJ Federal Public Defender (exhibit 11).

The USPC has used current procedures to deny parole, along with the false, inaccurate and mischaracterized intern's report as mentioned in plaintiff's recent amended complaint (Doc # Unknown).

V.

In a previous case Toolasprashad v. Bureau of Prisons, 286 F.3d 576 (D.C.Cir. 2002), the D.C.Cir. had appointed Professor Steven H. Goldblatt, Georgetown University Law Center, as amicus. Plaintiff was unable to present his issues at the district court, and upon appointment of amicus plaintiff was able to get effective help from the University and, in fact, even later tried to locate the required Parole Manual but to no avail.

VI.

This Court can see plaintiff is faced with a very difficult predicament and stone wall here at the prison law library, with the BOP/USPC regarding his parole.

Plaintiff respectfully requests of the Court to appoint counsel or in the alternative an amicus and, if possible, plaintiff would be grateful if the Court appoint Professor Steven Goldblatt, Georgetown University Law Center, or any counsel or amicus.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

*/s/ Latchmie Toolasprashad*
Latchmie Toolasprashad
#10975-056
Building 5803
PO Box 7000
FT. Dix, NJ  08640

CERTIFICATE OF SERVICE

I hereby certify that a copy of "Plaintiff's motion for Appointment of Counsel, or in the Alternative an Amicus" has been mailed postage prepaid by depositing same in the U.S. Mail on this the 9th day of December, 2006, addressed as:

Marian L. Borum
Assistant U.S. Attorney
555 Fourth Street, NW
Room 481
Washington, DC  20530

*/s/ Latchmie Toolasprashad*
Latchmie Toolasprashad