<u>**Latchmie Toolasprashad v. BOP, et al.**</u>
**Case No. 06-1187 (ESH)**

**Opinion in Civil Action No. 04-3219**

**Exhibit 3**

NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

LATCHMIE TOOLASPRASHAD,    :

                               :    Civil Action No. 04-3219 (JBS)

           Plaintiff,    :

                               :

        v.             :    **OPINION**

                               :

BUREAU OF PRISONS, et al.,    :

                               :

        Defendants.    :

APPEARANCES:

Latchmie Toolasprashad, Plaintiff pro se
F.C.I. Fort Dix
#R10975-056
P.O. Box 7000
Fort Dix, NJ 08640

**SIMANDLE**, District Judge

    Plaintiff Latchmie Toolasprashad, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, seeks to bring this action in forma pauperis, alleging violations of his federal constitutional and statutory rights and seeking declaratory and injunctive relief for those violations. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a).

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915, 1915A; 42 U.S.C. § 1997e.

## I.    BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff is currently incarcerated at the Federal Correctional Institution at Fort Dix, New Jersey, pursuant to conviction for a crime committed in December 1985.

On November 2, 1998, Plaintiff appeared for a parole hearing.  In its Notice of Action dated December 10, 1998, the U.S. Parole Commission (the "Commission") requested that the Bureau of Prisons ("BOP") provide a current psychological report to the Commission by May 1, 1999.  Plaintiff was scheduled for an interim hearing during November 2000.[1]

A psychologist at the Federal Correctional Institution at Fort Dix, New Jersey, defendant Dr. Drew Kerr, repeatedly assured Plaintiff that he was preparing the BOP psychological report, but he did not prepare the report.  Plaintiff repeatedly complained to the warden and to Kerr's superior, chief psychologist Dr.

---

[1] In its Order dated June 4, 1999, the National Appeals Board later amended the earlier order by requesting that the BOP provide the psychological report by the time of the interim hearing in November 2000.

Marcia Baruch. After Plaintiff utilized the BOP administrative remedy procedure, he was transferred on June 6, 2000, without advance notice, to the Federal Correctional Institution at Petersburg, Virginia.

At FCI Petersburg, Plaintiff was told that he had been sent there for preparation of the BOP psychological report. A Dr. Ax told Plaintiff that the psychology department at FCI Fort Dix could have prepared the report, which would have been more beneficial for Plaintiff because the staff there knew his conduct, programming, overall demeanor, etc. Psychology intern Defendant Dr. Jaime Berry prepared the BOP psychological report, under the supervision of psychologist Defendant Dr. Kindra Pugh. Plaintiff contends that the assessment was conducted improperly and that the resulting BOP psychological report does not accurately report Plaintiff's behavior or psychological condition. For example, Dr. Pugh told Plaintiff that she did not want to see him in the law library preparing any complaints against prison staff and, on two occasions, went to the law library and took Plaintiff out of the law library when he was working on post-conviction motions, which he then abandoned out of fear of Dr. Pugh.[2] In addition, Plaintiff contends that the

---

[2] As Plaintiff does not seek any relief with respect to these events, the Court construes these allegations as mere background information and not as a claim that Dr. Pugh deprived Plaintiff of his right of access to the courts.

diagnosis of mental illness (Narcissistic Personality Disorder) and other conclusions and recommendations contained in the report are not supported by the assessment and are incorrect. Finally, Plaintiff contends that the assessment was influenced by the conditions in which he was held during the assessment period, in a cell with a total of six prisoners, in temperatures reaching 110 degrees Farenheit, in a unit without chairs to sit on, infested with roaches that crawled on Plaintiff's face during the night, and in conditions that generally left him extremely tired and sleep-deprived.[3]

After receiving the BOP psychological report, Plaintiff's counsel arranged for a second report by a private psychologist, Dr. Daniel Schwartz. Because prison staff delayed approving Dr. Schwartz's visit with Plaintiff, the November 2000 interim hearing was delayed until August 2001. Dr. Schwartz appeared at that hearing and testified in favor of granting Plaintiff parole. Dr. Schwartz also disputed Dr. Berry's diagnosis of Narcissistic Personality Disorder. Plaintiff was again denied parole and that denial was upheld on appeal to the National Appeals Board of the Commission.

---

[3] Again, as Plaintiff does not seek relief with respect to these events, the Court construes these allegations as background information and not as an attempt to state a claim for unconstitutional conditions of confinement.

Plaintiff contends that the BOP psychological report prepared by Dr. Berry and Dr. Pugh is flawed and contains inaccurate information. He contends that, while it could be construed as generally favorable, it is internally inconsistent and the Commission seized on certain of those inconsistencies to deny him parole. Plaintiff contends that the Commission did not consider Dr. Schwartz's report.

Following this second denial of parole, Plaintiff filed an Administrative Remedy with the BOP requesting that the BOP psychological report be amended to correct its various flaws. His requests were denied at all levels of review within the BOP.

The named defendants are the Bureau of Prisons, the U.S. Parole Commission, and psychologists Drs. Drew Kerr, Marcia Baruch, Jaime Berry,[4] and Kindra Pugh.

Plaintiff requests injunctive relief, in the form of (1) correction of the psychological report prepared by Dr. Berry and Dr. Pugh, (2) a new parole hearing giving "equal weight" to the testimony and report of Dr. Schwartz, (3) preparation of a new psychological report at FCI Ft. Dix, where the staff are familiar with Plaintiff. Plaintiff does not seek release or monetary damages. This Court construes the Complaint as asserting claims that Plaintiff was denied due process in the preparation of the

---

[4] The Clerk of the Court will be directed to correct the docket to reflect that Jaime Berry is a named defendant.

5

BOP psychological report and in his parole hearing[5] and claims

under the Privacy Act, 5 U.S.C. § 552a(g)(1)(A), for correction

of records of the BOP and the Commission.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time,

certain in forma pauperis and prisoner actions that are

frivolous, malicious, fail to state a claim, or seek monetary

relief from a defendant who is immune from such relief.  See 28

U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C.

§ 1915A (actions in which prisoner seeks redress from a

governmental defendant); 42 U.S.C. § 1997e (prisoner actions

brought with respect to prison conditions).

A complaint is frivolous if it "lacks an arguable basis

either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,

325 (1989) (interpreting the predecessor of § 1915(e)(2), the

former § 1915(d)).  The standard for evaluating whether a

complaint is "frivolous" is an objective one.  Deutsch v. United

States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a

claim only if it appears "'beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle

him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v.

_____

[5] It is appropriate for Plaintiff to bring these claims in a
civil action for declaratory and injunctive relief, as opposed to
a habeas action.  See Wilkinson v. Dotson, 125 S.Ct. 1242 (2005).

Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.  ANALYSIS

A.  The Due Process Claims

There is no constitutional right to parole or to an error-free parole decision-making process.

> There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."

> Decisions of the Executive Branch, however serious their impact, do not automatically invoke due process protection; there simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations. This is especially true with respect to the sensitive choices presented by the administrative decision to grant parole release.

Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citations omitted).

7

In Greenholtz, accepting that the state parole statute at issue[6] created an "expectancy of release ... entitled to some measure of constitutional protection," the Court nevertheless rejected the suggestion that parole hearings should be full-scale adversary hearings. 442 U.S. at 12, 14. Instead, the Court found sufficient the Nebraska procedures that afford the prisoner an opportunity to be heard and, when parole is denied, that notify the prisoner in what respects he fell short of qualifying for parole. 442 U.S. at 16.

In addition, in a ruling not appealed to the Supreme Court in that same case, the Court of Appeals for the Eighth Circuit

---

[6] The Nebraska Statute at issue provided:

Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:
    (a) There is a substantial risk that he will not conform to the conditions of parole;
    (b) His release would depreciate the seriousness of his crime or promote disrespect for law;
    (c) His release would have a substantially adverse effect on institutional discipline; or
    (d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.

Neb. Rev. Stat. § 83-1,114(1) (1976). The statute also provided a list of 14 explicit factors and one catchall factor that the Board was obligated to consider in reaching a decision. Neb.Rev.Stat. §§ 83-1,114(2)(a)-(n) (1976).

held that, in the absence of exceptional circumstances, a
prisoner at a parole hearing has no constitutional right to call
witnesses in his behalf or to confront and cross-examine adverse
witnesses.  576 F.2d 1274, 1284 (8th Cir. 1978), rev'd in part on
other grounds, 442 U.S. 1 (1979).

Assuming that the Federal Parole Act[7] creates the same
"expectation" of parole created by the Nebraska statute at issue
in Greenholtz, Plaintiff has failed to state a claim that he was
denied due process in the creation of the BOP psychological
report or in the procedures employed by the Parole Commission.
According to the allegations of the Complaint, Plaintiff

---

[7] As the crime for which Plaintiff is incarcerated was
committed in December 1985, the Federal Parole Act, 18 U.S.C.
§ 4201 et seq., sets forth the applicable parole standards.
Section 4206 provides, in pertinent part:

    (a) If an eligible prisoner has substantially observed
    the rules of the institution or institutions to which
    he has been confined, and if the Commission, upon
    consideration of the nature and circumstances of the
    offense and the history and characteristics of the
    prisoner, determines:
        (1) that release would not depreciate the
        seriousness of his offense or promote
        disrespect for the law; and
        (2) that release would not jeopardize the
        public welfare;
    subject to the provisions of subsections (b) and (c) of
    this section, and pursuant to guidelines promulgated by
    the Commission ..., such prisoner shall be released.
    ...
    (c) The Commission may grant or deny release on parole
    notwithstanding the guidelines referred to in
    subsection (a) of this section if it determines that
    there is good cause for so doing ... .

participated in the testing used to create the BOP psychological
report, he was given a copy of the BOP psychological report in
advance of the parole hearing, he was permitted to present both
the live testimony and the report of his own psychological
expert, he was permitted to appear and be heard at the parole
hearing, he was given a statement of the reasons why he was
denied parole, and he was permitted to appeal that decision.
Thus, the Commission's procedures met the Greenholtz due process
requirements of an opportunity to be heard and a statement of
reasons for the Commission's decision.  Cf. Furnari v. U.S.
Parole Commission, 2005 WL 535390, *2 (3d Cir. March 8, 2005)
(Commission has broad discretion in materials it can consider in
making parole decision, and reliance on materials describing
conduct other than the offense of conviction to set offense
severity level does not implicate due process rights).

     In addition, to the extent the Complaint could be construed
as asserting a claim that Plaintiff has a due process right to
have false information expunged from his parole file, cf. Paine
v. Baker, 595 F.2d 197 (4th Cir.), cert. denied, 444 U.S. 925
(1979), the Court of Appeals for the Third Circuit has never
recognized such a cause of action, see Williams v. Federal Bureau
of Prisons, 85 Fed.Appx. 299, 304, 2004 WL 507779, **4 (3d Cir.
2004) (unpubl.), and it is not clear that the Paine case remains
good law even in the Fourth Circuit, see Johnson v. Rodriquez,

110 F.3d 299, 309 n.13 (5th Cir.), cert. denied, 522 U.S. 995 (1997).

In any event, Plaintiff fails to state a claim even under the rule announced in Paine. Under Paine, a prisoner must allege three elements in order to state a due process claim for expungement: (1) that particular information exists in his file, (2) that the information in his file is false, and (3) that the information is relied on to a constitutionally significant degree. 595 F.2d at 201. With respect to the second element, the Paine court stated,

> [I]t is not sufficient that the inmate disputes evaluations and opinions regarding him. E.g., Williams v. Ward, [556 F.2d 1143 (2d Cir.), cert. dismissed, 434 U.S. 944 (1977)] (inmate disagreed with psychiatric evaluations contained in file). ... The federal courts will not oversee the discretionary decisions of prison administrators and second-guess their evaluations.

595 F.2d at 201. As Plaintiff presents the type of claim explicitly excluded by the Paine court, a challenge to a psychological evaluation, he does not state a due process claim for expungement of records contained in his BOP or parole file. The due process claims must be dismissed.

B.   The Privacy Act Claims

The Privacy Act provides that, except as otherwise exempted, each federal agency that maintains a system of records shall "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance,

timeliness, and completeness as is reasonably necessary to assure
fairness to the individual in the determination." 5 U.S.C.
§ 552a(e)(5). Each such federal agency shall permit any
individual to request amendment of a record pertaining to him. 5
U.S.C. § 552a(d)(2). If, after review of such request, a
reviewing official refuses to amend the record in accordance with
the request, the individual may bring a civil action against the
agency for such amendment. 5 U.S.C. § 552a(g)(1)(A). In any
such suit, "the court may order the agency to amend the
individual's record in accordance with his request or in such
other way as the court may direct." 5 U.S.C. § 552a(g)(2)(A).

        Pursuant to 5 U.S.C. § 552a(j), however, the head of any
correctional or parole authority may promulgate rules exempting
any system of records within the agency from subsections (d),
(e)(5), and (g) of § 552a.

        The BOP has exempted the Inmate Central Record System and
the Inmate Physical and Mental Health Record System from
subsections (d), (e)(5) and (g) of § 552a. 28 C.F.R. § 16.97(a),
(j), (n). Similarly, the Commission has exempted its records
from the Privacy Act's amendment requirements, § 552a(d), and its
provision permitting injunctive relief against the agency
§ 552a(g). 28 C.F.R. § 16.85, see Deters v. U.S. Parole
Commission, 85 F.3d 655, 658 n.2 (D.C. Cir. 1996). Moreover, by
accepting Dr. Schwartz's psychological report and testimony, in

addition to the BOP psychological report, the Commission has met the fairness requirement of § 552a(e)(5).  See Fendler v. U.S. Bureau of Prisons, 846 F.2d 550, 552-54 (9th Cir. 1988). Accordingly, Plaintiff's Privacy Act claims must be dismissed.

### IV.  CONCLUSION

For the reasons set forth above, the Complaint must be dismissed for failure to state a claim.  See 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); 42 U.S.C. § 1997e(c)(1). Because it does not appear that Plaintiff could amend the Complaint to cure the deficiencies noted herein, the Complaint will be dismissed with prejudice.  An appropriate order follows.


                                   s/ Jerome B. Simandle
                                  Jerome B. Simandle
                                  United States District Judge

Dated:  **April 4, 2005**

13