UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

MAR 0 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

TOOLASPRASHAD,
   Plaintiff,

  v.

BUREAU OF PRISONS, et. al.,
   Defendants

:
:  CASE NO. 06-1187 (ESH)
:
:
:
:
:
:

### PLAINTIFF'S OBJECTIONS TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER

Plaintiff respectfully files this objections and states the following:

On Wednesday, February 7, 2007, about 3:15 p.m., plaintiff received the Court's Order of February 1, 2007 directing plaintiff to file a response to defendants' motion for summary judgment or to transfer venue by March 6, 2007. However, it is worth noting that plaintiff did not received "Defendants' Motion to Dismiss Amended Complaint or, in the Alternative, to Transfer" dated January 31, 2007 until Tuesday, February 13, 2007. Now this timely objections follows.

Defendants assert that plaintiff's claims should be dismissed for numerous procedural deficiencies including lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service of process. Plaintiff disagree because plaintiff does not have any legal training, relied on the Court to assist him with service of process, the Court does have jurisdiction and in Haines v. Kerner, 404 u.S. 519 (1972), plaintiff's amended Complaint should be held to less standards than those expected of lawyers.

Plaintiff's amended Complaint ("Complaint") is well pleaded with facts and points directly that the false, inaccurate and misleading psychology-intern-guard Berry's report was used to deny parole when it was contradicted by two leading forensic specialists, a Privacy Act violation, as the false, inaccurate and misleading report was written in retaliation. The Complaint is well pleaded and sets forth the facts outlined to support pro se claims that the psychology-intern-guard's report was in retaliation -- a clear Privacy Act violation.

## PLAINTIFF'S CLAIMS ARE NOT BARRED BY RES JUDICATA
## AND COLLATERAL ESTOPPEL

Indeed plaintiff filed a previous action in the District of Columbia in 2004 which was transferred to the District of New Jersey. However, the opinion rendered by Honorable Joseph B. Simandle, was dismissed with prejudice in which the Court erred as a matter of law. Plaintiff then filed a motion pursuant to Rule 60(b), informing the Court that approximately 90% content wise of the Rule 60 was lifted from Professor Steven H. Goldblatt, Georgetown University Law Center, appointed in a previous case of plaintiff Toolasprashad v. Bureau of Prisons, 286 F3d 576 (D.C.Cir. 2002), and Martinez v. Bureau of Prisons, No. 04-5343. And, still the Court ignored plaintiff's request for counsel and held plaintiff to a higher standard than those of lawyers because the District of New Jersey does not take prisoners' actions seriously. The Court indicated that plaintiff's Rule 60 was untimely because the District of New Jersey does not look favorable on prisoners" actions.

Res Judicata must fail because only on June 2, 2006, plaintiff was examined by a forensic expert, James Hilkey, PhD, who contradicted the intern's report as well as the United States Parole Commission ("USPC") decision of denying plaintiff parole. Thus, this is an ongoing matter in which the false, inaccurate and misleading psychology-intern's report was used adversely against plaintiff to deny parole, most recently June 5, 2006. (See, Amended Complaint for discussion and profession experties of Dr. Hilkey.)

Thus, res judicata has no bearing on this action as long as adverse determination is taken against plaintiff in light that the adverse determination would not have been taken but for the false, inaccurate and misleading psychology-intern's report. Plaintiff's claims are well laid-out showing a continuing pattern of adverse  actions based on the false, inaccurate and misleading psychology-intern's report to cause plaintiff irreparable injury. Dr. Hilkey, of June 2, 2006, which was the most recent challenge to the psychology-intern's

report clearly and unequivocally pointed out that the intern-guard and USPC made adverse determinations against plaintiff. Dr. Hilkey's report is attached as **Exhibit 1.** Also, See the Amended Complaint for details.

Plaintiff's Privacy Act claim is well grounded in this Court, although his previous action may contain similarities -- as this is an ongoing issue and plaintiff has to challenge same as often as defendants make adverse determination against plaintiff with the same false, inaccurate and misleading report. Plaintiff asserts that the District of New Jersey is not the proper jurisdiction as defendant-Bureau of Prisons Headquarters is located in Washington, DC -- which makes Washington, DC the proper jurisdiction -- and the District of New Jersey does not take prisoners pro se actions seriously.

Defendants is incorrect in its fn 4 at page 6 that the record is exempt from the amendment and accuracy provisions of the Privacy Act. (See below for discussion.) Defendants are further incorrect as the report is grossly false, inaccurate and misleading which was used adversely to deny plaintiff. (See the Amended Complaint for details with two leading forensic experts for facts contradicting the intern's report.)

There is no basis for dismissal or even transfer when it is possible for the BOP/USPC to discretionary waiver by the agencies-defendants under 28 C.F.R. § 16.97(j) - (k) (2002). That is, neither defendants-BOP nor USPC stated that it considered and rejected waiving the exemption under (e)(5), leaving it open, as defendants never invoked its exemption -- and BOP is subject to the Privacy Act requirements under 28 C.F.R. § 16.97(k). Further, the psychology-intern-guard's report under controversy was conducted in 2000; the implementation of the exemption was in 2002. Therefore, even applying the exemption would be an ex post facto violation in terms of plaintiff's rights, as an adverse determination was made against him with the false, inaccurate and misleading report.

3

Plaintiff's claims that he is entitled to money damages under subsection (g)(1)(C) and (g)(4) of the Privacy Act must proceed. He survives any transfer or dismissal againt BOP or USPC because liberally construed, he states all elements of claim under Deters v. United States Parole Commission, 85 F.3d 655, 657 (D.C.Cir. 1996). He states: 1) victim of adverse determinations affecting his parole status; 2) BOP and USPC failed to maintain his record with the degree of accuracy reasonably necessary to assure fairness in the determination made about him; 3) the false, inaccurate and misleading unauthorized information in the psychology-intern-guard's report was the proximate cause of the adverse determinations; and 4) the BOP and USPC acted intentionally and willfully in failing to maintain accurate documents/records pertaining to him because they took absolutely no steps to verify whether the psychology-intern-guard's report prepared by a psychology-intern-guard (Berry) was inaccurate after it was contradicted by a forensic psychiatrist of 40 plus years' experience who personally examined more than 1,000 (one thousand) murderers. Also, most recently, or June 2, 2006, a retired BOP Chief Forensic Psychologist of FCI Butner, Dr. James Hilkey, with more than 30 years' experience indicated the USPC made incorrect decision and plaintiff should be immediately paroled, contradicted the intern's report. In fact, the BOP and USPC took absolutely no steps to verify challenged information.

Plaintiff's Amended Complaint has sufficiently alleged that BOP and USPC violated his rights to due process even if he is ineligible for relief under the Privacy Act because they used a psychology-intern-guard's false, inaccurate and misleading report that was indeed contradicted by a forensic psychiatrist and forensic psychologist with combined 70 plus years' experience, and failed to adequately respond to his claims through the so-called BOP administrative remedy process to either correct the psychology-intern-guard's report or to have a new report prepared, as in the BOP so-called administrative remedy plaintiff requested a new report prepared by the BOP. (See, Amended Complaint for facts

4

and details.)

To states a due process violation, a prisoner must prove that he or she has
a protected liberty interest which the government has interfered, that he was not
afforded due process in the denial of this interest and, as a result, has suffered
an atypical and significant hardship in comparison to the normal
privations of prison life.  Plaintiff has protected  liberty interest in gaining
parole with an accurate psychology-intern report that complies with the law
because the Parole Commission and Reorganization Act ("Parole Act"), 18 U.S.C. §
4207(3)(1976), requires that USPC use the report in their parole  decisions.
Once the psychology-intern's report was used adversely against plaintiff it
becomes a Privacy Act issue under (e)(5).

BOP and USPC failed to even investigate plaintiff's claims that the
psychology-intern's guard (Berry) report was false, inaccurate and misleading that
was contradicted by a forensic psychiatrist of 40 plus years' experience  and a
forensic psychologist with 30 plus years' experience -- to wit the psychology-
intern-guard effectively re-tried plaintiff's criminal case.  That is, a
"typica;" claim under the Privacy Act, the minimum process due plaintiff required
BOP and USPC to verify the information -- which they completely ignored.

It is well settled law that pro se pleadings are entitled to liberal
construction to ensure that protentially meritorious claims are not defeated
because the pro se litigant is unfamiliar with procedural requirements.  See,
Haines v. Kerner, 404 U.S. 519, 520 (1972).  The rules of liberal construction
apply to § 1915(e)(2)(B)(ii) dismissals for failure to state a claim.  Taylor,
409 F.3d at 428.  The Court was obliged to consider the constitutional claims
even if they were not well-developed.  See, Anyanwutaku v. Moore, 151 F.3d 1053,
1058 (D.C.Cir. 1998) (citing Haines and requiring liberal construction of pro se
pleadings "however inartfully pleaded").

The Court's power to recharacterized a pro se litigant's cause of action is
generally used to place it in a different legal category for the benefit of the

5

pro se litigant. See, Castro v. United States, 540 U.S. 375, 382 (2003). This power does not, however, allow court to ignore inartfully articulated claims in pro se pleadings. At this early state, where the Amended Complaint constitutes the only submission before the Court, it should not be dismissed or transferred.

Plaintiff seeks relief from the Court that would direct the BOP/USPC agencies to correct the psychology-intern's report, or adopt the two leading forensic specialists reports with more than 70 plus years experience versus the psychology-intern-guard, and stated that the USPC used the report adversely and incorrectly against plaintiff. It is incumbent on the Court, therefore, to consider the substance of Plaintiff's claims and at whom they are directed. Moreover, in the Amended Complaint plaintiff was trying to state a claim against the BOP and USPC, under the Privacy Act, showing how the individually-named defendants and parole examiner(s) utilized the false, inaccurate and misleading psychology-intern's report against plaintiff to deny parole.

This Court, conducting its review and applying the governing standards for construction of pro se pleadings should conclude that these claims survive dismissal or transfer against the defendant-agencies: BOP and USPC.

Subsection (e)(5) of the Privacy Act requires that an agency "maintain all records which are used by the agency in making a determination about any individual with such accuracy ... as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). Subsection (g)(1)(C) permits an individual to bring a civil action an agency for violations of subsection (e)(%), and subsection (g)(4) provides for monetary damages, costs, and attorney fees where the agency is found to have acted intentionally or willfully in failing to maintain accurate records. 5 U.S.C. §a(g)(1)(C), (g)(4); see Sellers v. Bureau of Prisons, 959 F.2d 307, 310 (D.C.Cir. 1992) ("Section (g) of the [Privacy] Act provides civil remedies for violations of section (e)(5).")

Agencies may promulgate regulations exempting any system of records from the amendment, accuracy, and civil remedies provisions of the Act.  5 U.S.C. § 552a(j). Effective August 9, 2002, BOP promulgated regulations conditionally exempting its Inmate Central Record System[1] from subsection (e)(5), subject to discretionary waiver by the agency **"[w]here compliance would not appear to interfere with or adversely affect the law enforcement process, and/or where it may be appropriate to permit individuals to contest the accuracy of the information collected**, e.g. public source materials, or those supplied by third parties."  28 C.F.R. § 16.97(j)-(k).

BOP promulgated 28 C.F.R. § 16.97(k) that "the Bureau of Prisons is subject to the Privacy Act requirement that agencies maintain accurate records...."

Moreover, had BOP/USPC actually invoked its exemption from subsection (e)(5), this exemption is subject to a qualification. See, 28 C.F.R. §§ 16.79(j)-(k). Under 28 C.F.R. 16.97(k), BOP provided that the exemption of its Inmate Central Record System from subsection (e)(5) may be waived where "compliance would not appear to interfere with or adversely affect the law enforcement process." Because plaintiff meets this standard, the Court should require BOP/USPC to establish that it at least considered waiving its exemption from subsection (e)(5) in this case. See, United States ex. rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954) (holding that the Board of Immigration Appeals impermissibly failed to exercise its

---

[1]

The Court should take note that the psychology-intern's report in question was prepared in 2000 prior to August 9, 2002 effective date.  Hence, the psychology intern's report is maintained in plaintiff's Central File, which is part of the BOP's Inmate Central Record System.  See, Bureau of Prisons Program Statement 5800.11, Inmate Central File, Privacy Folder, and Parole Mini File, at 4, 7-8 (September 8, 1997).  The psychology-intern-guard's report was fabricated in 2000 and the BOP conditionally promulgated regulations effective August 9, 2002, and failure to allow plaintiff to proceed would be an ex post facto violation.  In a similar sense on September 8, 1997, defendant-BOP guards openly fabricated and falsified a transfer memorandum used to "Midnight 'retaliatory' transfer" plaintiff across the country in retaliation.  Plaintiff's claims was well grounded in the District of Columbia. See, Toolasprashad v. Bureau of Prisons, 286 F.3d 576 (D.C.Cir. 2002).

independent discretion in deciding deportation cases as required by agency regulations, regardless of the manner in which that discretion was exercised).

USPC has not exempted its Inmate and Supervision Files System from subsection (e)(5). See Almahdi v. United States Parole Commission, 2005 U.S. Dist. LEXIS 7074, at * 1 (D.D.C. Apr. 19, 2005) (unpublished) ("Although [USPC] is not obligated to comply with the amendment provisions of the Privacy Act, it still is obligated to address the accuracy of records before considering such records in making a determination affecting the prisoner.") USPC may, therefore, be subject to liability under subsections (g)(1)(C) and (g)(4) for violating subsection (e)(5).

BOP/USPC have also exempted their prison records system from subsection (g). See 28 C.F.R. 16.97 (a)(4) (exempting BOP); 28 C.F.R. 16.85(a)(2) (exempting USPC). Where an agency has not exempted itself from subsection (e)(5) of the Privacy Act, however, courts have found that the agency's exemption from section (g) does not encompass subsection (g)(1)(C). See, e.g. Fendler v. Bureau of Prisons, 846 F.2d 550, 553-54 (9th Cir. 1998) (holding that where BOP was not exempt from subsection (e)(5), its exemption from subsection (g) did not include an exemption from subsection (g)(1)(C) because that subsection exclusively enforces subsection (e)(5). Therefore, if BOP and USPC are not exempt from subsection (e)(5) in this case, plaintiff may bring a civil action against both agencies to enforce subsection (e)(5).. Here the Court is required to allow plaintiff to proceed without dismissal or transfer against the two agencues (BOP/USPC) and, perhaps, the individually-named defendants.

Accepting plaintiff's allegations as true, providing him with the benefit of all inferences that may be drawn from the facts alleged, see Kingman Park Civil Assoc. v. Williams, 348 F.3d 1033, 1039-1040 (D.C.Cir. 2003), and affording him liberal construction because of his pro se status, see Estelle v. Gamble, 429 U.S. 97, 106 (1976), he states a claim under subsections (g)(1)(C) and (g)(4) that BOP and USPC intentionally or willfully failed to maintain accurate psychological report pertaining to him prepared by a psychology-intern-guard (student) and was

8

contradicted by a forensic psychiatrist of 40 plus years experience and a forensic psychologist of 30 plus years experience in violation of subsection (e)(5).

In order to state a claim for money damages under subsection (g)(1)(C) and (g)(4) plaintiff must allege that: 1) he has been the victim of an adverse determination; 2) BOP and USPC failed to maintain his record with the degree of accuracy necessary to ensure a fair determination; 3) the reliance of BOP/USPC on the record was the proximate cause of the adverse determination; and 4) agency intent.

In Deters, supra, at 659 the court defined an "adverse determination" as one affecting "the inmate's rights, benefits, entitlements, or opportunities;" see OMB Privacy Act Guidelines, 40 Fed.Reg. 28, 948, 28, 969 (July 9, 1975) ("An adverse action is one resulting in the denial of a right, benefit, entitlement, or employment by an agency which the individual could reasonably have been exempted to have been given if the record had not been deficient.")[2]

Plaintiff meets this standard. He alleges in the Amended Complaint how the defendants repeatedly lied, spun, deceived and retaliated against him for filing grievances in order to get the psychological report written which was initially due May 1, 1999, but was not written until July 2000 after several requests/ grievances and was then prepared by an psychology-intern-guard (a student) with inaccuracies, false, misleading, and inaccurate information -- retried his criminal

---

[2]

In plaintiff's previous action when guards deliberately, intentionally, knowingly and maliciously falsified and fabricated his records, Toolasprashad v. Bureau of Prisons, 286 F.3d 576 (D.C.Cir. 2002), that Court held "in the prison context, 'adverse determination' denotes, at least, a decision that negatively 'affect[s an] inmate's rights....'" (Quoting Deters, 85 F.3d at 659). Although this language suggests a more narrow interpretation of "adverse determination" in the prison context, the court in Deters followed the phrase "inmate's rights" with "benefits, entitlements, or opportunities." Deters at 659 ("If [a preliminary parole assesment] is not binding on the hearing officer, can it really be deemed an 'adverse determination,' i.e., one affecting the inmate's rights, benefits, entitlements or opportunities?")

case of more than two decades ago -- actions taken in retaliation for
grieving the matter and challenging the corrupt psychology department's guards'
open lies and corruption. (See Amended Complaint for facts and details.)

For purposes of dismissal or transfer plaintiff's allegations in the Amended
Complaint are sufficient to establish that the BOP/USPC/defendants made adverse
determinations affecting him and this action must not be dismissed or transferred
to any other venue or jurisdiction. The District of Columbia Circuit has already
decided cases in plaintiff's favor of this nature.

The Privacy Act further requires plaintiff to show that the agency "failed to
maintain his records with the degree of accuracy necessary to ensure a fair
determination." Deters at 657. The documents submitted in this action, at least
to the false, misleading and inaccurate and contradictory psychology-intern's report,
plaintiff's Privacy Act claim is "typical," and therefore, BOP/USPC must verify the
accuracy of the psychology-intern'guard's report versus two forensic experts of
more than 70 plus years' experience, one of whom, examined more than 1,000 (one
thousand) murderers and contradicted the psychology-intern's report. This
information was verified by submittal of the forensic reports versus the intern's
report and several other supporting documents.

In typical Privacy Act cases where "the information contained in the agency's
files is capable of being verified ... the agency must take reasonable steps to
maintain the accuracy of the information to assure fairness to the individual."
Sellers v. Bureau of Prisons, 959 F.2d at 312. In atypical cases where the
information contained in an agency's files is not readily provable, the agency need
only "adjust [the] file equitably to reveal actual uncertainty." Doe v. United
States, 821 F.2d 701 (D.C.Cir. 1978).

Plaintiff states a claim that BOP/USPC/defendants did not act reasonably to
assure the accuracy of the psychology-intern's report. Sellers at 312 ("As long as
the information contained in an agency's files is capable of being verified, then,
under subsections (e)(5) and (g)(1)(C) of the Act, the agency must take reasonable

steps to maintain the accuracy of the information."); Toolasprashad, 286 F.3d 583
("In typical cases, where the truth can readily be ascertained, it is feasible,
necessary, and proper, for the agency and, in turn, the district court to determine
whether each filed item of information is accurate.")  Here, the BOP/USPC/defendants
never conducted an inquiry into the accuracy of plaintiff's psychological report
prepared by an psychology-intern-guard that was contradicted by two leading forensic
experts with combined 70 plus years' experience versus a student-psychology-intern
and the USPC gave more weight to the psychology-intern.

    A number of cases addressing atypical Privacy Act claims established that,
although an agency need not verify the truth of a disputed record, the agency must
nevertheless supplement the record to show uncertainty as to its accuracy in order
to satisfy subsection (e)(5).  Doe, 821 F.2d at 701 (holding that in atypical
cases, an agency need only adjust an individual's file equitably "to reveal actual
uncertainty"); Deters, 85 F.3d at 660 (holding that USPC satisfied its duty to
maintain accurate records under subsection (e)(5) of the Privacy Act by
supplementing the appellant's file with his rebuttal to the disputed ... and
offering him a hearing in order to address the accuracy of the report); Fendler,
846 F.2d at 554 (holding that BOP satisfy subsection (e)(5) by including ...
rebuttal to the alleged inaccurate records).

    Here, there is nothing in the record to show that BOP/USPC/defendants included
in plaintiff's Central File/Parole Mini File any documentations revealing
uncertainty as to the inaccuracies, false and misleading information contained in
the psychology-intern's report that was used against plaintiff to deny him parole,
although contradicted by two leading forensic specialists with more than 70 years c
combined experience.  **(Exhibits 1 and 2).**  In fact, plaintiff was never given a
hearing on the challenged false, inaccurate and misleading report.  Including in
the BOP so-called administrative remedy, plaintiff requested a new report written
which was denied, nor was he given an opportunity at a hearing to include his
rebuttal - the so-called administrative remedy.  Here, the administrative remedies

weren't even  included in the Parole Mini File with the psychology-intern-guard's
report to show that the intern's report was challenged.

Plaintiff must establish that the agency acted "intentionally" or "willfully"
in failing to maintain accurate records. Deters at 657.  In Deters the court
reiterated that a plaintiff must establish that the agency "acted with something
greater than gross negligence" in order to prove an intentional or willful failure
to maintain accurate records. 85 F.3d at 660 (quoting Tijerina v. Walters, 821
F.2d 789, 799 (D.C.Cir. 1987); but see Albright v. United States, 732 F.2d 181, 189,
n. 25 (D.C.Cir. 1984) (noting that "congress stated, and the courts have recognized,
that an agency is liable for [Privacy Act] violations caused by its gross negligence.")
An agency acts in an intentional or willful manner "wither by committing the act
without grounds for believing it to be lawful, or by flagrantly disregarding other's
rights under the Act." Deters, 85 F.3d at 660 (internal quotation marks and
citations omitted).  Agency officials, however, need not "set out purposely to
violate the Act" in order to establish an intentional or willful failure to maintain
accurate records. Tijerina, 821 F.2d at 799.

Plaintiff alleges that he sought correction of the psychology-intern-guard's
report using the BOP so-called administrative remedy process which failed to
yield any fruits, although supporting documentations revealed that indeed the
psychology-intern-guard's report is false, inaccurate and misleading -- which was
written falsely based on retaliation for plaintiff grieving about getting that report
written.  The BOP/USPC/Defendants flagrantly disregarded plaintiff's rights under
the Privacy Act and used the false, misleading and inaccurate psychology-intern's
report to deny parole. (See Amended Complaint for facts.)

Plaintiff alleges sufficient facts challenged the report's accuracy and alleges
facts sufficient in the Amended Complaint to establish that BOP/USPC/defendants
intentionally or willfully relied on other inaccuracies to make adverse
determinations against him because the BOP/USPC/defendants failed to maintain
accurate records and/or supplement the record to show uncertainty. See,

Toolasprashad, 286 F.3d at 583 (holding that in atypical Privacy Act case, "it suffices to adjust [the] file equitably to reveal uncertainty") (internal quotation marks and citations omitted). Despite plaintiff's persistent attempts to correct the inaccuracies (see the Amended Complaint) there is nothing in the records to establish that BOP/USPC/defendants included any of the challenged information in the parole files to demonstrate actual uncertainty that plaintiff challenged the inytern's report. Plaintiff's claims in the Amended Complaint that BOP/USPC/ defendants explicitly refused his request to have the record corrected.

Plaintiff in his Amended Complaint, explicitly claims that the inaccurate psychology-intern's report was used by USPC to deny parole -- although there was no basis for same as the intern's report was contradicted by tow leading forensic experts with combined 70 plus years' experience. (See Amended Complaint for facts).

Plaintiff alleges that USPC made adverse determinations based upon the false, inaccurate and misleading psychology-intern-guard's report contained in his files. Thus plaintiff alleges sufficient facts to state a claim under subsections (g)(1)(C) and (g)(4). Plaintiff alleges that USPC made, and will continue to make, adverse determinations affecting his parole status based on the false, inaccurate and misleading psychology-intern's report. although plaintiff has now been in confinement almost 22 years.

It bears mentioning that psychology reports are also critical documents for USPC purposes. Federal law and USPC regulations require that USPC consider psychological reports, to the extent that they are available and relevant, in determining a prisoner's parole eligibility. See 18 U.S.C. § 4207(3) ("In making a determination under this chapter (relating to release on parole) the Commission shall consider, if available and relevant....") Therefore, USPC is liable to subsection (e)(5) without reservation and this Court must allow plaintiff to proceed without dismissal or transfer of venue.

If plaintiff could obtain full relief under the Privacy Act there would be no need to address many of his due process claims because whatever process is due would be "encompassed within the Privacy Act's comprehensive remedial scheme." Griffin v. Ashcroft, 2003 U.S. App. LFXIS 18321, * 4-5   (D.C.Cir. Sept 3, 2003) (unpublished) (affirming the district court's dismissal of the prisoner's constitutional claims regarding BOP's alleged maintenance of inaccurate information since those claims were subsumed under the Privacy Act). See, Wolffv. McDonnell, 418 U.S. 539, 555-56 (1974) (finding that although an inmate's "rights may be diminished is not wholly stripped of constitutional protections  when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the  prisons of this country.")

Courts have  recognized that damages are also available where agency personnel willfully or intentionally create an inaccurate record, which is subsequently reasonably relied upon, either by the same or a different agency, in making an adverse. See White v. Office of Pers. Mgmt., 840 F.2d 85, 87-88 (D.C.Cir. 1988) (considering  whether the agency acted in bad faith in creating an inaccurate job application record that it subsequently relied upon in making an adverse determination Dickson v. Office of Pers. Mgmt., 828 F.2d 32, 36-37 (D.C.Cir. 1987) (willful creation and maintenance of an inaccurate record is sufficient even though another agency had no knowledge of this willful conduct and thus reasonably relied upon the record in making the adverse determination); See also Webb v. Magaw, 880 F.Supp. 20, 25 (D.D.C. 1995) (determining agency  did not act willful because the inaccuracy was merely a misstatement by the official creating the record).  A contrary approach would fail to provide a remedy in the common situation where the personnel creating a record are different from those who later make a decision based on that record. See Dickson, 828 F.2d at 39 (rejecting argument that Privacy Act permits civil actions only when the same agency that maintains the inaccurate record makes the adverse determination, explaining that such as reading "would be inconsistent with the general purpose of the Act to promote fairness in record keeping").  Thus, the

14

reasonableness of the BOP/USPC's reliance on the false and inaccurate psychology-intern's report is not dispositive and this action must be allowed to proceed.

Plaintiff has presented more than "some factual basis to support his allegations" that the record was inaccurately maintained. White, 840 F.2d at 87.

Even applying an atypical framework, plaintiff has still stated a claim entitling him to relief because even under an atypical analysis BOP/USPC must comply with the requirements set forth in Doe, 821 F.2d at 699-701, and they have not done so. Doe, requires BOP/USPC to do more than merely maintain a file with conflicting viewpoints. 821 F.2d at 699-701. More specifically, Doe requires that BOP/USPC must have: 1) resolve the accuracy of all "typical" elements in the psychology-intern-guard's; 2) had no reason to doubt the reliability of the psychology-intern's report authors; and 3) taken action without adopting one of the viewpoints as truthful. See Id. BOP/USPC/defendants have not satisfied this standard and actually done nothing to document the challenged inaccuracies by plaintiff even though through contradicted by a leading forensic psychiatrist of 40 plus years, and a leading forensic psychologist of more than 30 plus years (and a retired BOP employee).

Nonetheless, the BOP/USPC/defendants have deliberately maintained the inaccurate psychology-intern-guard's report out **of bureaucratic habit**, as BOP/USPC/defendants have taken no steps to even correct the false, inaccurate and misleading psychology-intern's report which was contradicted by two leading forensics experts with more than 70 plus years' experience versus an intern, **(Exhibit 1 and 2)**, nor is it documented anywhere in the record Parole Mini-File via the so-called administrative remedy that the psychology-intern's report was challenged as being false, inaccurate, misleading and based on retaliation and other factors as mentioned in the Amended Complaint.

Plaintiff also has a liberty interest in the conditions of his confinement that he contends have resulted from the false, inaccurate and misleading psychology-intern's report, the only reason plaintiff is still in prison after more than two

decades.  In Sandin v. Conner, 515 U.S.

the Court stated that liberty interest exist when "freedom from restraint which,

while not exceeding the sentence in such an unexpected manner as to give rise to

protection by the Due Process Clause of its own force, nonetheless imposes an

atypical and significant hardship on the inmate's in relation to the ordinary

incidents of prison life.  515 U.S. at 484.  The Sandin Court took the duration of

the restraint on the prisoner's liberty into account, noting that the prisoner's

confinement "did not exceed similar ... confinement in either duration or degree of

restriction" and that "the State's actions in placing [the prisoner in

confinement] for thirty days did not work a major disruption in his environment."

Id at 486.

    When applying Sandin, courts should look "not only on the nature of the

deprivations (e.g., loss of priviliges, loss of out-of-cell time) but also to

its length in evaluating its "atypicality' and 'significe.'" Hatch v. District of

Columbia, 184 F.3d 846, 856 (D.C.Cir. 1999) (reversing grant of summary judgment to

government where prisoner's nine-month period of severe administrative segregation

could constitute an atypical and significant hardship).  In Hatch the court also

recognized that "atypicality" "depends in part on the length of the sentence the

prisoner is serving."  Id. See, Taylor v. Rodriguez, 238 F.3d 188, 195 (2d Cir.

2001) (noting the Second Circuit's emphasis on the "duration of the claimed

deprivation" when ascertaining whether an atypical and significant hardship exists).

In determining what constitutes an atypical and significant hardship, courts also

consider  the effect of the restraint on the length of prison confinement, the

extent to which the prisoner's confinement is altered from routine prison conditions,

and the duration of restraint.  See, Jones v. Baker, 155 F.3d 810, 814 (6th Cir.

1988).

Plaintiff psychological report was initially due May 1, 1999, and the defendants failed to perform their statutory duties through deception and lies to plaintiff, plaintiff's family and guards who intervened on his behalf that the report was submitted before the May 1, 1999 deadline, when it was an outright lie as the report was never written until late-2000. Thus, when applying <u>Sandin</u> the "duration of the claimed deprivation" from May 1, 1999 to present and still on-going is "significant hardship." Plaintiff had to file numerous Inmate Requests to Staff Member ("copouts"), as well as, grievances in order to get the report written. That is, in November 1998 the one-person parole "board" ordered that the BOP submitted the report by May 1, 1999. Because the defendants repeatedly lied the report wasn't actually written until July 2000, and plaintiff was retaliated against for exercising his First Amendment rights to grieve the matter and spoke up about the lies by the psychology department guards who was supposed to write the report -- as they were too preoccupied to cover-up their own corruption. (See the Amended Complaint for details and facts). Then the psychology-intern-guard re-tried plaintiff's criminal case, although plaintiff said very little to almost nothing to the psychology-intern-guard, other than answering the few questions, the psychology-intern extracted contents from the criminal case that is now almost 22 years ago. (See the Amended Complaint for details).

Plaintiff has asserted a liberty interest related to the lengthly restraints BOP/USWPC defendants have imposed on him based on the false, inaccurate and misleading psychology-intern-guard's report that was completely contradicted by two leading forensic experts. The extent and duration of the burdens of plaintiff's confinement -- almost 22 years -- makes them atypical and significant under <u>Sandin</u>, at least to the extent that they are adequate to avoid any dismissal or transfer.

Like "typical" complaints of inaccuracy under the Privacy Act, "it is feasible, necessary, and proper for the agency and, in turn the district court, to determine whether each filed item of information is accurate." <u>Doe</u>, 821 F.2d at 699; see also <u>Sellers v. Bureau of Prisons</u>, 959 F.2d at 311 (finding that "typical" Privacy Act

17

cases involves factual disputes which are "clearly provable.") The Due Process Clause should require no less in this situation, and the process due plaintiff is correction of the psychology-intern-guard's report, strike the report, a new report written and/or a hearing conducted immediately on the issues as the contents of the psychology-intern-guard's report have been contradicted by a forensic psychiatrist who personally examined more than 1,000 (one thousand) murderers himself; as well as a retired BOP forensic psychologist who most recently examined plaintiff on **June 2, 2006.** Both forensic experts contradicted the psychology-intern-guard and recommended plaintiff's immediate release. It is clear that the BOP explicitly refused plaintiff's request to have the report corrected, strike, or overcome by the two forensic experts with combined 70 plus years' experience.

Biven v. Six Unknown Named Agents of Fed. Bureau of Nar., 403 U.S. 388 (1971) (holding federal actors subject to suit in their individual capacities for violating plaintiff's constitutional rights.) Bivens actions are available when: 1) Congress has not already provided an exclusive statutory remedy; 2) there are n special factors counseling hesitation in the absent of Congress' affirmative action; 3) there is no explicit congressional declaration that money not be awared. Id. at 396-97. In alleging that BOP/USPC/defendants failed to properly investigate his complaints about the use of the inaccurate psychology-intern-guard's report, plaintiff has stated a valid substantive due process claim because the use of the false, inaccurate and misleading psychology-intern-guard's report by BOP/USPC/defendants and its officers constitutes arbitrary governmental action.

At defendants' fn of page 6 indicated that plaintiff's claim is barred under the Privacy Act two year statute of limitations because the report was "between June 23, 2000 and July 11, 2000." Defendants are not only out-of-touch with reality -- as long as the false, inaccurate and misleading document is being used against plaintiff adversely and, most recently, June 5, 2006 to deny parole, plaintiff's claims are ripe for disposition. Plaintiff has adequately explained

his  arguments above and in the Amended Complaint to overcome any dismissal or

transfer.  Hence, two leading forensic experts: Dr. Daniel Schwartz, retired

professor of forensic psychiatry **(Exhibit 1)**; and Dr. James hilkey, retired BOP

forensic psychologist **(Exhibit 2)** contradicts the psychology-intern-guard's report.[3]

Also, see Amended Complaint, specifically pages 15-17 and 21-23, Doc # Unknown.)

The two year statute of limitations claimed by defendants does not apply and, even

if it does, it does not begin to run until **June 5, 2006** when plaintiff had his

parole hearing before Examined Kathleen Pinner.  Moreover, as long as adverse

determination is being made against plaintiff based on the false, inaccurate and

misleading psychology-intern-guard's report, a statute of limitation does not

apply in this Privacy Act action.  Therefore, the statute of limitations scheme by

defendants is just another way of undermining plaintiff which must fail.

<u>PLAINTIFF'S CLAIMS ARE NOT BARRED FOR PROCEDURAL DEFAULT</u>

   Plaintiff does not have to show that any of the defendants live in the

District of Columbia, the fact that this is a Privacy Act action, defendant-Bureau

of Prisons' headquarters is located in the District of Columbia, who is the lead

---

3
     Dr. Schwartz, a leading retired professor of forensic psychiatry personally
examined more than 1,000 (one thousand) murderers  clearly indicated plaintiff
should be paroled.  And, Dr. Hilkey, a retired professor of forensic psychology
 and retired chief forensic psychologist of FCI Butner, NC, who initially examined
plaintiff more than 20 years ago with a team of mental health experts, most
recently June 2, 2006 examined plaintiff and noted he should be released.  Dr.
Hilkey was one of the experts on the case of John Hinkley, who had shot President
Ronald Reagan.  Combined Dr. Schwartz 40 plus years and Dr. Hilkey's 30 plus years'
forensic experience totaling more than 70 plus years could hardly be ignored.
(See, also Amended Complaint, fn 3 at page 21).

defendant in this action.[4]   If the Court does not agree with plaintiff, to remedy
the jurisdiction issue, the Court should terminate the individually-named
defendants and allow the Privacy Act to proceed against the agencies:   defendants-
BOP and USPC.   That is, the BOP is located in the District of Columbia.
Additionally, the "long arm" jurisdiction still saves plaintiff's action although
not necessary.   If necessary, this Court should terminate the individually-named
defendants and allow this Privacy Act to proceed against the defendants-BOP and
USPC, which would allow these corrupt, racist, individually-named keepers of the
keys to get away with their open corruption and hold the agencies accountable.
Plaintiff asserts that during his almost 22 years in 14 of these gulags it
is not difficult to realize that the "keepers of the keys" (guards at all levels)
are worse criminals than  what they are keeping, the only difference is that they
haven't been caught as they have the entire U.S. government to protect them at
all levels.   Plaintiff may not be penalized for speaking freely in writing about
the corruption of guards.[5]

    If defendants are so concerned with jurisdiction, then plaintiff has no
objection with the Court dismissing the individually-named defendants and hold
defendant-agencies BOP which is located in the District of Columbia, and U.S.
Parole Commission which is located in Chevy Chase, Maryland, as the defendants.

---

[4]
    Previously when defendant-Bureau of Prisons' guards intentionally, knowingly,
willfully, maliciously, deliberately conspired and retaliated through open
falsification of plaintiff's records it was a Privacy Act action which was properly
litigated in the District of Columbia.  Toolasprashad v. Bureau of Prisons, 286 F.3d
576 (D.C.Cir. 2002).  Moreover, in a leading Privacy Act decision which also
strongly supports plaintiff relates to a parole decision wherein false information
was used to deny parole, defendant-BOP headquarters is located in the District of
Columbia.  See, Sellers v. Bureau of Prisons, 959 F.2d 307 (D.C.Cir. 1992).
[5]
    During plaintiff's almost 22 consecutive years in 14 gulags plaintiff watched
the proliferation of corruption in the BOP from the top to the bottom, from covering
up drug introduction, stabbing and murders of prisoners, prostitution of guards,
and a host of other criminal activities -- all by the guards.  Hinebaugh v. Wiley,
137 F.Supp.2d (N.D.N.Y. 2001) allows plaintiff to speak freely in writing without
fear of reprisal -- as the BOP and its guards are well known for retaliating.

There is no doubt that the Court has jurisdiction over defendants Bureau of Prisons and United States Parole Commission, as such of the FOIA part in this action. as defendants pointed out that defendant-parole examiner Kathleen Pinner is located in Maryland, not the District of Columbia, if need be the Court should dismiss Pinner although this is not what plaintiff wants, to allow this action to proceed against the two agencies.[6] Nonetheless, the records is well-developed against the two agencies and their out-of-control guards as established in the Amended Complaint - although plaintiff will accept the agencies as the defendants to allow this action to proceed.

## SERVICE UPON THE INDIVIDIAL DEFENDANTS

If the Court decided to allow plaintiff to proceed against the individually-named defendants, he respectfully requests of the Court to direct the U.S. Marshals to perfect service on his behalf. On the other hand, if the Court does not decide to allow him to proceed against the individually-named defendants, then the Court should allow plaintiff to proceed against the two agencies by dismissing the individually-named defendants (although this would allow the criminal keepers of the keys to get away with their corruption). In the declarations provided by the individually-named defendants indicated they weren't served with the Amended Complaint, it is obvious that counsel for defendants made them aware of same.

---

[6]
    Defendant Kathleen Pinner's decision was absolutely pre-decided before holding plaintiff's hearing on June 5, 2006. (See, Amended Complaint, page 26 fn 5 for details).

## JURISDICTION OVER THE U.S. PAROLE COMMISSION

Plaintiff respectfully requests of the Court to direct the U.S. Marshals to serve the Amended Complaint on the U.S. Parole Commission. That is, plaintiff requests of the Court to aid him with service on the U.S. Parole Commission.

## VENUE IS APPROPRIATE IN THE DISTRICT OF COLUMBIA

Venue is appropriate in the District of Columbia, as the BOP headquarters is located in the District of Columbia and, if plaintiff cannot litigate against the individually-named defendants, then the defendant-agency BOP is located within the District of Columbia and venue is appropriate in said District.

Plaintiff was never examined by any psychologist in Virginia nor at Ft. Dix. That is, a lying psychology-guard-Drew Kerr, at Ft. Dix in late-1998 and early-1999 questioned plaintiff **only** about his childhood days and the psychologist repeatedly lied that he (Kerr) had submitted a psychological profile to the USPC when in fact it was an outright lie. At petersburg an psychology-intern-guardd (Berry) prepared a report based on retaliation and no interviews of contents (See Amended Complaint). Prison guards are not required to do any work, but as long as they show up to the facility they get paid.

Indeed, the records of plaintiff's parole hearings are located in Maryland, defendant-agency-USPC. The psychology-intern-guard's report is located at the USPC in Maryland, wherein the USPC used same to deny parole, not New Jersey. Additionally, defendant-BOP is maintaining the false, inaccurate and misleading psychology-intern-guard's report which has been adversely used against plaintiff to deny parole.

PLAINTIFF OPPOSE ANY CLAIMS TRANSFERRED TO NEW JERSEY

If the Court wants to dismiss the individually-named-defendants plaintiff has no objections providing that the case proceed in the District of Columbia where appropriate as defendant-BOP headquarters is located.

Defendants are correct that the records regarding plaintiff's parole hearings are located in Maryland, which is the USPC headquarters, but the BOP headquarters is Washington, DC, wherein it is BOP guards who created the false, inaccurate, and misleading document used by USPC Examiner Pinner to deny parole. [7]

The psychology-intern-guard (Berry) was located at FCI Petersburg, Virginia.

The District of New Jersey does not take pro se prisoners' actions seriously and New Jersey would be inappropriate for this multi-jurisdiction action, when the District of Columbia has already decided numerous cases in favor of plaintiff. It would be a travesty of justice if this case is to be transferred which plaintiff oppose. If this Court decide to transfer this action to the District of New Jersey, then this action should be dismissed, as plaintiff oppose any transfer to New Jersey.

Defendant Marcia Baruch made comments documented in plaintiff's file, as well as, her corrupt department covering up for her guards (See Amended Complaint). The amended Complaint is clear how Baruch's only concern at the time of plaintiff's plight was to cover-up a sex scandal in her department between a psychologist and prisoner. (See, Amended Complaint, page 4 fn 1).

Plaintiff oppose any transfer of this action to District of New Jersey and, if the Court decides to do so, then the Court should dismiss this action.

The District of Columbia has previously decided a Privacy Act case in Sellers v. Bureau of Prisons, 959 F.2d 307 (1992) dealing with a report being used against Mr. Sellers by USPC. Said action was correctly brought against the Bureau of Prisons in the District of Columbia involving USPC.

---

[7] See Amended Complaint, Page 26 fn 5.

Thus, the psychology-intern-guard's report was based on retaliation and
retaliatory fabrication of records is a clear violation of the Privacy Act.
Toolasprashad v. Bureau of Prisons, 286 F.3d 576 (D.C.Cir. 2002).  Plaintiff
brought this action in the District of Columbia while confined at Fort Dix, NJ.

Moreover, defendants never states who would be more culpable or responsible
for this multi-jurisdiction action, never claimed what agency is accountable.
That is, they have not refuted that plaintiff's claims and that the BOP's
headquarters is in the District of Columbia.  Therefore, the District of Columbia
is the correct venue in this scattered jurisdiction.  Again, if necessary the
Court should dismiss the individually-named defendants and hold defendants
agencies: BOP and USPC accountable for the open violations.

Plaintiff opposes any transfer of this action as it can and could be
litigated properly in the District of Columbia against the two defendant-agencies:
BOP and USPC.  On the other hand, if the Court decided to transfer this case it
should be to the appropriate District Court in Virginia where plaintiff was
retaliatory transferred to and where the psychology-intern-guard fabricated the
report, or to the District of Maryland.  Plaintiff oppose any transfer to District
of New Jersey and, if the Court decided to do so, dismiss this action.  Moreover,
this Court is the proper jurisdiction/venue of the two agencies:  BOP and USPC
and this action should proceed within the District of Columbia.  Plaintiff has
given defendants numerous occasions to correct the records by striking the
intern's report and substitute same with that of the two forensic experts: Dr.
Schwartz and Dr. Hilkey with combined 70 plus years' experience. [8]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the
foregoing is true and correct.

---

[8]
    See page 19 fn 3 of this document.  Also, see Amended Complaint at pages
15-19 and 21-23.

Respectfully submitted,

Latchmie Toolasprashad
#10975-056
FCI Ft. Dix
Building 5803
PO Box 7000
Ft. Dix, NJ 08640

Dated: February 26, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document, "Plaintiff's Objections to Defendants' Motion to Dismiss the Amended Complaint or, In the Alternative, to Transfer" has been mailed postage prepaid by depositing same in the U.S. Mail on this the 26th day of February, 2007, addressed as:

Marian L. Borum
Assistant U.S. Attorney
555 Fourth Street, NW, Civil Division
Washington, DC  20530

Latchmie Toolasprashad